IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JUN 2 4 2024

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

C. HOPE BARRINGER-BROWN, Ph.D.　）
　）
　　　Plaintiff:　）
　）
v　）　Civil Action No.: 3:24cv465
　）
SOUTHSIDE VIRGINIA COMMUNITY　）
COLLEGE, et al.　）
　）
　　　Defendants.

## COMPLAINT

Plaintiff C. Hope Barringer-Brown, Ph.D. ("Dr. Barringer-Brown"),  by *pro se*, states as follows for her Complaint against defendants Southside Virginia Community College ("SVCC," "Southside," or the "College"), Quentin Johnson, Ph.D. (Dr. Johnson), Keith Harkins Ph.D. ("Dr. Harkins), Shannon Feinman ("Mrs. Feinman), and Stephen Walker ("Mr. Walker"), and Chad Wollenberg ("Mr. Wollenberg") (collectively, the "Defendants").

## NATURE OF ACTION

This is an action for Title VII discrimination, Title VII retaliation, and common law defamation. In a nutshell, SVCC, mainly through the actions of Dr. Harkins, the Vice President of Academic Affairs and Workforce Programs at SVCC, discriminated, retaliated, and defamed Dr. Barringer-Brown, a black African American female, on the basis of her color, race, and gender in violation of Title VII. SVCC also retaliated against Dr. Barringer-Brown by terminating her employment contract for the exercise of protected rights by reporting the actions of Dr. Harkins and others. SVCC, Drs. Johnson and Harkins, Mrs. Feinman, Mr. Walker, and Mr. Wollenberg defamed Dr. Barringer-Brown, and she was denied access to due process of a grievance against Dr. Harkins for violation of the VCCS Faculty Evaluation policy. As a result of these unlawful actions, Dr. Barringer-Brown now files this action to hold Defendants liable for their wrongdoing.

---

"Title VII" refers to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *el seq.*

PARTIES

1.    Dr. Barringer-Brown is a black African-American female who was employed as the Dean of Humanities, Social Sciences, and Business, and she was hired at the rank of Professor with SVCC from December 5, 2022 through September 29, 2023.

2.    Established in 1970, Southside Virginia Community College (SVCC) Is one of twenty-three community colleges in Virginia that comprise the Virginia Community College System (VCCS). The College serves ten counties and one city. The College's main campus is located at 109 Campus Drive in Alberta, Virginia. SVCC has one extension campus located in Keysville, Virginia and also has five Educational Centers located across the service area. The College is accredited by the Commission on Colleges of the Southern Association of Colleges and Schools (SACSCOC) to award associate degrees. It employs more than 200 people and is an "employer" for purposes of Title VII.

3.    Dr. Quentin Johnson is a current SVCC employee. He is a black African-American male. From the fall of 2022 to the present, At all relevant times, Dr. Johnson is the President of the college. He is involved with the culminating incidents in this lawsuit.

4.    Dr. Keith Harkins is a current SVCC employee. He is a white Caucasian male. At all relevant times, Dr. Harkins was the Vice President of Academic Affairs and Workforce, which houses the Humanities and Social Sciences ("HSB"). He is involved in most of the incidents at issue in this lawsuit.

2

5. Mrs. Shannon Feinman is a current SVCC employee. She is a white Caucasian female. At all relevant times, Mrs. Shannon Feinman was the Vice President of Finance and Administration, who also supervises the SVCC Office of Human Resources. She is involved in most of the incidents at issue in this lawsuit.

6. Mr. Stephen Walker is a current SVCC employee. He is a white Caucasian male. At all relevant times, Mr. Walker was the SVCC Faculty Senate President, and an Assistant Professor (History) in Humanities. He is involved in most of the incidents at issue in this lawsuit.

7. Mr. Chad Wollenberg is a current SVCC employee. He is a white Caucasian male. At all relevant times, Mr. Wollenberg was the Chief Information Officer, and the Interim Vice President of Finance and Administration, who also supervises the SVCC Office of Human Resources. He is involved in most of the incidents at issue in this lawsuit.

## JURISDICTION AND VENUE

8. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Pendent and supplemental jurisdiction of the common law count (Count III) is conferred pursuant to 28 U.SC. § 1367.

9. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claim occurred.

FACTUAL BACKGROUND

**A.   DR. BARRINGER-BROWN'S  EXCEPTIONAL QULIFICATIONS AND SKILLS**

10.     Dr. Barringer-Brown is an exceptionally well-qualified program administrator (dean) and award-winning professor, notably in the areas of education, Public Policy Analysis, and administration with a specialization in Law. In 1996, she received her Bachelor of Arts degree from the Virginia Commonwealth University in Richmond, Virginia, where she majored in Psychology.

11.     In 1998, Dr. Barringer-Brown received her Masters of Education in Special Education from Virginia State University in Petersburg, Virginia. Dr. Barringer-Brown received a full scholarship and doctoral fellowship in Educational Leadership to pursue doctoral studies at Virginia Polytechnic Institute and State University (Virginia Tech) in Blacksburg, Virginia. While in Doctoral studies at Virginia Polytechnic Institute and State University she was elected by her peers as the Chapter Vice President for Kappa Delta Pi, which is an education honor society for teachers and educational leaders of excellence.

12.     Dr. Barringer-Brown pursued a second doctoral degree and received a Doctor of Philosophy degree in 2017 from Walden University in Public Policy and Administration with a specialization in Law.

13.     Dr. Barringer-Brown holds endorsements from the Virginia Department of Education and hold Post Graduate Professional licensure at the doctoral level in four areas: Administration and Supervisor K-12, Psychology, Learning Disabilities, and Serious Emotional Disturbance. Dr. Barringer-Brown have held tenured faculty positions at the rank of Professor, program management, and other administrative

positions successfully over the past 25 years at the local, state, and Federal levels. Dr. Barringer-Brown education, background, skillset, and years of experience exceed the qualifications needed for the job position and description of Dean of Humanities, Social Sciences, and Business.

14.     Dr. Barringer-Brown served in various roles as a department chair, dean, program director, project director, and director of research. She also taught numerous education, public policy, research methodology, administrative law, administration and supervision courses and was tenured at the rank of Professor prior to coming to SVCC.

15.     Notably in this regard as a testament to Dr. Barringer-Brown's leadership and achievement in the field, she was a recipient of the State Council of Higher Education of Virginia (SCHEV) Outstanding Faculty Administrator award for 2023. The (SCHEV) Outstanding Faculty Awards are the Commonwealth's highest honor for faculty at Virginia's public and private colleges and universities. These awards recognize superior accomplishments in teaching, research, and public service. She was nominated for this prestigious award through her employer immediately previous (VSU) to SVCC in December 2022. This honor was awarded to Dr. Barringer-Brown, on December 20, 2022, and presented through SCHEV as of March 7, 2023, after the start of her employment with SVCC.

16. Dr. Barringer-Brown was recognized for her accomplishments throughout the Commonwealth of Virginia by U.S. Senator Mark R. Warner. Senator Warner stated in his correspondence dated August 1, 2023, states that,

> *"this honor recognizes your tremendous contributions to the Commonwealth in teaching, research, mentoring, and public service". "(Charletta Barringer-Brown) have greatly contributed to the field of political science and the study*

*of policy analysis through your research endeavors and by training tomorrow's leaders"*

17. On July 1, 2023, Dr. Barringer-Brown was appointed by Governor Glenn Youngkin to the Board of Trustees for Fort-Monroe Authority (2023-2027). She was elected by her committee peers to serve as the Vice Chair of the Cemetery Board for the Commonwealth of Virginia (2022-2023).

18. She was elected as the Chair for the Regulatory Affairs for the Cemetery Board in 2023, among other honors. Also, during this period, Dr. Barringer-Brown received many awards and honors, including, but not limited to serving as a member of the National Humanities Center Teacher Advisory Council 2022-2023.

**19.** Additionally, previously, Dr. Barringer-Brown was recognized as a Visiting Scholar with the Educational Testing Service (ETS) and was appointed to the National Psychology Praxis Board in Princeton, New Jersey.

**20.** As well, Dr. Barringer-Brown was selected as a member for Epsilon Pi Tau (EPT). extends the honor of membership and advancement activities to outstanding practitioners such as Dr. Barringer-Brown in the technology professions, scholars with exemplary research interests in technology in society and/or persons who have significantly supported or advanced technology professions.

**B.     DR. BARRINGER-BROWN'S EMPLOYMENT AT SVCC**

21. In 2022, SVCC hired Dr. Barringer-Brown to be the Dean of Humanities, Social Sciences, and Business and (rank) Professor. At that time, Dr. Barringer-Brown was offered and accepted a pro-rated one-year contract that began on December 5, 2022 through June 30, 2023, for employment at the college. Dr. Barringer-Brown was not advised of any issues with her performance that would prevent renewal of

her contract prior to its renewal on or by March 15, 2023 or before July 1, 2023, when the second one-year contract commenced. Dr. Barringer-Brown was issued a second a one-year renewal contract effective dates July 1, 2023 through June 30, 2024.

22. During her employment at SVCC, Dr. Barringer-Brown, as she had been before, continued to be widely recognized for her scholarship and expertise in education, Public Policy Studies, and administration particularly with respect to the development of effective data assessments, and monitoring and evaluation of academic programs that focus on student success. Among other things, from 2022 to 2023, Dr. Barringer-Brown (i) published two peer-reviewed articles in this area, (ii) authored and served as a reviewer for chapters in research methodology textbooks, and (iii) spoke at conferences or workshops on four different occasions during this time frame. She also was invited to present at the Virginia Community College Association (VCCA) conference, which was held September 27, 2023 through September 29, 2023, in Richmond, Virginia. Dr. Barringer-Brown, but as explained below, she was placed on administrative leave by Dr. Harkins on September 26, 2023, after inquiring about her supplemental pay contract for a PHI 220, which was an eight-week course. This assignment to administrative leave prohibited her to attend the conference.

## C.   DESPITE HER SUCCESS AS AN ADMINISTRATOR AND SCHOLAR, DR. BARRINGER-BROWN WAS SUBJECTED TO BLANTANT DISCRIMINATION, RETALIATION, AND MALTREATMENT AT SVCC

### (a)   The Hierarchy And The Key Players At SVCC

23. Dr. Charletta Barringer-Brown was a Dean and served at the rank of Professor in Humanities, Social Sciences, and Business. She possesses a doctoral degree and credentials that are appropriate for the discipline. Dr. Barringer-Brown

supervised worked in Humanities, Social Sciences, and Business, which, as noted above.

24. Dr. Keith Harkins was hired as a Coordinator in the Workforce Program prior to Dr. Barringer-Brown's hire, Dr. Harkins was promoted to the position of Vice President of Academic Affairs and Workforce Programs at the rank of Associate Professor by SVCC President Dr. Quentin Johnson. Dr. Harkins reports directly to Dr. Johnson. He is a white Caucasian male. He does have doctoral degree.

25. When Dr. Barringer-Brown first began working at SVCC, Ms. Bethany Harris was the Director of Human Resources. Ms. Harris was transferred from the position of SVCC Director of Human Resources, as of March 2023, and reassigned to the title of Director of Department of Corrections Leadership Development and Initiatives. She is a white Caucasian female. She does not hold a bachelors, master or doctoral degree.

26. Thereafter, Mrs. Henderson became the SVCC Director of Human Resources. She has been the SVCC Director of Human Resources since that time. Mrs. Henderson is supervised by Mr. Chad Wollenberg. She is a black African American female. She does not hold a bachelors, master or doctoral degree.

27. Mr. Chad Wollenberg, who is the SVCC Chief Information Officer (CIO), was appointed to the position of Interim Vice President of Finance and Administration. This position was created in 2023, and supervises the SVCC Office of Human Resources. Mr. Wollenberg reports directly to Mrs. Shannon Feinman. He is a white (Caucasian) male. He does not hold a doctoral degree.

28. Mrs. Shannon Feinman who is the Vice President of Finance and

Administration. She has authority over the SVCC Office of Human for most of the incidents at issue in this lawsuit. Mrs. Feinman directly supervises Mr. Wollenberg, who is a white (Caucasian) Female. Mrs. Feinman is a cousin of Mr. Stephen Walker. She does not hold a doctoral degree.

29. Mr. Stephen Walker has served as the SVCC Faculty Senate President/Chair and is an Assistant Professor of History in "HSB" for most of the incidents at issue in this lawsuit. Dr. Barringer-Brown supervised Mr. Walker. Mr. Walker is a white (Caucasian) male, who is Mrs. Feinman's cousin. He does not hold a doctoral degree.

### (b) The February 28, 2023, Accusatory Email From Dr. Harkins While Dr. Barringer-Brown Was On Approved Leave

30. At many points in time during her employment at SVCC, Dr. Barringer-Brown experienced discrimination, especially based on her color (black), race (African American), and gender (female).

31. One notable incident occurred on February 28, 2023, when Dr. Barringer-Brown received a harsh, accusatory, and totally unfounded email communication from Dr. Harkins, while she was on an approved day of partial leave. The email was based on false and inaccurate statements reported that were made directly from Mr. Walker, as the SVCC Faculty Senate President, to Dr. Harkins with any clarity from Dr. Barringer-Brown before proceeding to Dr. Harkins.

32. In that email, Dr. Harkins engaged in numerous *ad hominem* and false attacks on Dr. Barringer-Brown. Among other things, Dr. Harkins falsely accused Dr. Barringer-Brown of **(i)** "Mandating the Use of Cengage", (ii) "Limiting faculty hours in the summer"; and (iii) "Program Leads". Dr. Harkins specifically falsely accused Dr. Barringer-Brown of moving forward without his knowledge in the areas of mandating Cengage

and the assignment of faculty leads. The limiting faculty summer hours was stated due to Dr. Barringer-Brown knowledge of policy regarding faculty overloads policy under the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC). SACSCOC is an institutional accreditor for quality assurance in higher education. SVCC has since been advised of areas of concern by SACSCOC within the area of Academic Affairs, which supervised by Dr. Harkins. These program deficiencies, as were cautioned by Dr. Barringer-Brown to Dr. Harkins in the email dated February 28, 2023. The areas of concern existed years prior to Dr. Barringer-Brown's employment with SVCC.

33. On February 28, 2023, Dr. Harkins made the following accusations against Dr. Barringer-Brown in an email,

> *"Some faculty members seem to think you are mandating the use of Cengage...we can't do that. We can encourage them to consider it, but that's about it. Please clarify that with them"*

> *"Limiting faculty hours in the summer--This needs more discussion as it has large repercussions across the college. This is something you should have run past me" "We can't do this for this summer".*

> *"Program Leads--the faculty needs to be more involved in this discussion (ask them for a workgroup and have them submit a plan to you, for instance), and a plan must be submitted to President's Council for review".*

> *"I appreciate the movement in these areas, but our shared governance mandate requires us to include faculty input in the process".*

34. Dr. Barringer-Brown explained to both Dr. Harkins via email on February 28, 2023, and Mr. Walker face-to-face on or about May 11, 2023 or May 12, 2023, that she had not made any such mandate for the use of Cengage instructional materials. SVCC did not provide any documentation to support the allegation that Dr. Barringer-Brown had mandated the use of *Cengage* instructional technology materials at SVCC. SVCC began use of Cengage instructional materials

"SACS" stands for the Southern Association of Colleges and Schools.

during 2014, eight years before Dr. Barringer-Brown started working with SVCC. During 2014, SVCC provided faculty and all similarly situated white (Caucasian) deans with *Cengage* product training, bookstore access, and an online textbook. Faculty, former and current similarly situated deans in each of the three units (1. Humanities, Social Sciences, and Business, 2. Career and Occupational Technologies, and 3. Nursing, Allied Health, and Natural-Sciences) used the program.

35.  Dr. Harkins statements were highly accusatory and false, Dr. Barringer-Brown had involved Dr. Harkins, SVCC Office of HR, all HSB faculty, and the similarly situated deans in the process for the discussion of the "Faculty Leads" from the beginning.

36. Dr. Barringer-Brown had not moved forward without having discussions with Dr. Harkins and any others that needed to be a part of the process.

37. Dr. Harkins most often took an assumptive position in the email correspondence toward Dr. Barringer-Brown that the allegations were completely true. Dr. Harkins stated "we can't do that" for each of the allegations that Mr. Walker had brought directly to his attention without first talking with Dr. Barringer-Brown to clarify the facts. Dr. Harkins nor Mr. Walker attempted to speak with Dr. Barringer-Brown before reporting the allegations to Dr. Harkins. and sending an accusatory email. Dr. Harkins treated Dr. Barringer-Brown far more harshly than the white (Caucasian) similarly situated deans. Dr. Harkins rarely met or communicated with Dr. Barringer-Brown in the office face-to-face and in contrast communicated with the Dr. Chad Patton "Dr. Patton", and Ms. Melissa

Arthur "Ms. Arthur" more regularly outside of email communication via cell phone
Communication or face-to-face.

38. There was no factual basis for the email dated February 28,
2023, and, instead, Dr. Harkins sent the email purely as a way of showing the "black"
African American female dean who was in charge in the academic unit (i.e., the "white"
(Caucasian) Vice President of Academic Affairs and Workforce Programs) and the selected
"white" (Caucasian) faculty members who had reported the false accusations to the
"white" (Caucasian), and the "white" (Caucasian) SVCC Faculty Senate President. The
SVCC Faculty Senate President, who then reported the false allegations to Dr. Harkins
without verifying the facts. Indeed, Dr. Harkins wrote and sent the email to Dr. Barringer-
Brown without (i) first speaking to her about any of the alleged problems at issue; and (ii) even
bothering to check any of the facts before, which would have been a matter of both protocol
and professional courtesy particularly for an employee that had been with the college less than
60 working days, at the time of the email was written by Dr. Harkins. Mr. Walker had not
attended any HSB meetings and had not introduced himself to his immediate supervisor,
who was Dr. Barringer-Brown. As well, Dr. Harkins' emails were far harsher than any
communication he had ever sent forward to any white (Caucasian) SVCC employees,
including the similarly situated white deans and or white faculty members.

### (c)    Nepotism and Collusion

39. The significant levels of nepotism and interpersonal relationships
amongst selected white (Caucasian) employees at SVCC have resulted in lowered
expectations, lack of ethics and trust, and decreased productivity employees. Selected
white (Caucasian) faculty, staff, and administrators at SVCC are protected with "job

security" for subpar performance.

40. Dr. Barringer-Brown is a black African American female, who is not a part of the organizational culture and suffered unfair treatment, racial bias, and exclusion because of this fact. It is because of Dr. Barringer-Brown's color, race, and gender that selected white (Caucasian) faculty and staff have shown a lack of respect, made intentionally false, negligent, and malicious allegations, and provided misleading information about her.

41. Selected white (Caucasian) faculty were encouraged to continue this pattern of discrimination, retaliation, defamation, and maltreatment by Dr. Harkins, Mrs. Feinman, Mr. Walker, and Mr. Wollenberg against Dr. Barringer-Brown.

### (d)    Reporting Discrimination, Retaliation, And Defamation To SVCC Office of Human Resources on May 17, 2023

**42.** On May 17, 2023, Dr. Barringer-Brown wrote an email to Mrs. Feinman, which discussed her concerns that the only issues that made selected white (Caucasian) faculty members and staff to include Dr. Harkins being "uncomfortable" with her were her "immutable" characteristics. Dr. Barringer-Brown also discussed this issue of her "immutable" characteristics, which are her color, race, and gender again during the face-to-face held on June 21, 2023 with Mrs. Feinman and Mrs. Henderson on the Keysville campus. Dr. Barringer-Brown raised the same issues on several different dates with SVCC HR representatives. She discussed with Mrs. Feinman, Mr. Wollenberg, and Mrs. Henderson that issue that the racial discrimination, retaliation, and defamation was being done to her because of her color, race, and gender. Moreover, in the law, an immutable characteristic is any attribute considered impossible or difficult to change, such as race,

national origin, or gender.

43. Dr. Barringer-Brown sent an email dated May 17, 2023, to Mr. Wollenberg with copies to Mrs. Henderson that addressed Mr. Wollenberg's false and defamatory notes that stated that Dr. Barringer-Brown "*looked at her personnel files and made comments about her having previously been in rehab*". Dr. Barringer-Brown stated that she had never seen the selected white (Caucasian) faculty members personnel files and that this could not be done without Dr. Barringer-Brown requesting Human Resources for these files. Dr. Barringer-Brown pointed out that there was no record of such a request by her nor any evidence presented by Mary Downing-Gardner (Ms. Downing) that could substantiate any of her claims.

44. Additionally, in fact, at no point had Dr. Barringer-Brown been made aware of any ADA and FMLA claims Ms. Downing.

45. Dr. Barringer-Brown had discussed the issues of her "immutable" factors and characteristics, which are her color, race, and gender with Mr. Wollenberg, Mrs. Henderson, and Mrs. Feinman, and Dr. Harkins due to the fact several selected white (Caucasian) faculty members stated they were "uncomfortable" with Dr. Barringer-Brown. These selected white (Caucasian) faculty members stated this about Dr. Barringer-Brown as a means of defamation and retaliation before they had ever attempted met her face-to-face or one-on-one with her as their immediate supervisor, which is standard protocol.

46. On May 17, 2023, Dr. Barringer-Brown also states to Mr. Wollenberg and with copies to Mrs. Henderson, and in a forwarded email copy to Mrs. Feinman, that she, as stated below:

*"did not feel "safe" or "protected" in any way from this attempt of "abuse",
"harassment" "defamation of character", and the creation of a "hostile work
environment" "This lack of protection has made me "feel as though I am at the
mercy of faculty members and any others who wish to add baseless distractions
to the request to review faculty work performance expectations or other related
issues within the academic unit of HSB at SVCC". The alleged claims that were
made against me are unethical and without any documented or substantiated
proof of facts. These are unethical and slanderous acts that may be further
considered as an attempt to defame my character with malicious intent".*

47. Mr. Wollenberg's grossly false and seriously defamatory "notes" also
stated that Dr. Barringer-Brown had engaged in retaliatory measures. SVCC is aware that
these allegations were false and unfounded, yet SVCC presented these statements to the
EEOC and other parties, as fact to attempt to justify her wrongful termination, in absence
of any reprimands or notice ever issued to Dr. Barringer-Brown.

48. It was further discussed with Mr. Wollenberg and Mrs. Henderson
April 2023, that at no point had Dr. Barringer-Brown told anyone that they could not
address their concerns with those above her or to HR. (Email dated March 2, 2023-
Subject: Protocol and Positive/Transparent Communication (HSB).

49. Dr. Barringer-Brown had advised all (HSB) faculty via email with
copies to Dr. Harkins and Mr. Walker that (directly quoted from email: March 2, 2023)

*"As we strive to build transparent lines of positive communication, any issues and
or concerns must be shared between you and your dean so that all parties have a
clear understanding of any and all expectations that have been communicated.
Building a positive working relationship with your dean will only serve to
strengthen the HSB unit, as a whole. To avoid circumvention of the dean, and
following protocol please make sure that you have communicated with your dean
and have addressed your concerns with her. Also, after addressing your
questions and or concerns allow the dean time to respond to the issues that have
or may be raised before contacting others outside of the HSB such as SVCC
faculty senate representatives and or senior level administration".*

50. Dr. Harkins, SVCC Office of HR advised selected white (Caucasian)

faculty members that if they did not feel comfortable with Dr. Barringer-Brown to come to him or the Office of HR. The selected white (Caucasian) faculty members who made claims of being "uncomfortable" with Dr. Barringer-Brown when in fact they had not made any attempt to meet with her or in some cases had not met or even introduced themselves to her before reporting directly to Dr. Harkins or the SVCC Office of HR. Dr. Harkins, SVCC Office of Human Resources did not encourage these selected white (Caucasian) faculty members to follow protocol with chain of command, and common curtesy with Dr. Barringer-Brown, their immediate supervisor because she is a black African American female. Dr. Harkins scrutinized Dr. Barringer-Brown very harshly and did not treat her fairly in comparison to the similarly situated white (Caucasian) deans.

51. While, Dr. Barringer-Brown was working off campus. Ms. Downing, a white (Caucasian) female English faculty member had reported to Dr. Harkins and SVCC Office HR that she was uncomfortable with Dr. Barringer-Brown. The selected white (Caucasian) faculty made false, defamatory, and unfounded allegations against Dr. Barringer-Brown to avoid discussion of her alleged unsatisfactory work performance and behavior, as was stated by Ms. Downing's departmental colleagues in the emails sent forward on or about March 20, 2023, addressed to Dr. Barringer-Brown.

52. Ms. Downing did not respond to the email request that Dr. Barringer-Brown sent to her on or about March 20, 2023, to schedule a meeting to discuss SVCC faculty expectations.

53. Dr. Kristine Smetana, a white (Caucasian) female Chemistry faculty member allegedly made false and defamatory allegations against Dr. Barringer-Brown that were unfounded. SVCC Office of HR and Ms. Downing, in retaliation after receiving an

email regarding summer course overloads. Ms. Downing and Dr. Smetana allegedly worked in concert against Dr. Barringer-Brown in retaliation for her following SVCC and SACSCOC academic and instructional policies regarding teaching faculty overloads.

54. SVCC took no action against Dr. Barringer-Brown regarding the unfounded allegations, and did not act to sanction the two white (Caucasians). Ms. Downing nor Dr. Smetana were sanctioned by SVCC for making the intentionally false, retaliatory, and malicious claims against Dr. Barringer-Brown, who is a black African American female.

(e)     **Fabricated Notes, Falsified Documents, and Defamatory Statements Made by SVCC to Attempt to Justify Wrongful Termination**

55. SVCC submitted Mr. Wollenberg's personal notes that he created notes for himself and these notes were provided in serious misrepresentation to EEOC, as factual statements of actions having been actually stated stated and or committed by Dr. Barringer-Brown instead of "personal notes" that were not part of any formal or informal file.

56. SVCC had the direct knowledge that these statements were unfounded and otherwise, false, yet they submitted them, as fact to the EEOC and other entities, as though Dr. Barringer-Brown had stated or committed these actions. SVCC used these "personal notes" as a means of termination. These "notes" drafted by Mr. Wollenberg and the unfounded situations presented by the selected faculty members in direct retaliation and prejudice toward Dr. Barringer-Brown, as a black African American female. SVCC knows that these unfounded statements did not impede, effect, or prevent the issuance of Dr. Barringer-Brown's second one-year SVCC employment contract for the 2023-2024 academic year.

    **(f)**    **Mrs. Feinman Acknowledged In An Email That Dr. Barringer-Brown Had No Disciplinary Actions or Reprimands on May 23, 2023**

57.  In an email dated May 23, 2023, which was after this particular incident regarding Mr. Wollenberg, Mrs. Feinman stated that *"There has been no disciplinary action of any sort"* regarding Dr. Barringer-Brown. She further stated there were no actions against Dr. Barringer-Brown and there were no issues to report in her file.

58. Dr. Barringer-Brown met face-to-face with Mrs. Feinman and Mrs. Henderson on June 21, 2023, as a follow up to email communications held during the month of May 2023, regarding her concerns with Dr. Harkins and several selected white (Caucasian) faculty members.

59. Mrs. Feinman did not follow up with Dr. Barringer-Brown at any point from June 21, 2023 forward, regarding her reporting of Dr. Harkins lack of support, discrimination, and retaliation against her.

60. Dr. Barringer-Brown was dumbfounded by Mrs. Feinman's presence at the brief  meeting called under false pretense by Dr. Harkins, that stated it was for a performance evaluation on July 26, 2023. Dr. Barringer-Brown was not informed that Mrs. Feinman would be present on July 26, 2023. Dr. Harkins, nor Mrs. Feinman gave any reason for her presence. Mrs. Feinman sat as a witness to the excessively harsh, unprofessional, and unwarranted verbal tirade of Dr. Harkins with no explanation.

61. Mrs. Feinman sat a witness for Dr. Harkins and knew that Dr. Barringer-Brown had no reprimands in her file and had not committed any actions that would warrant this type of treatment from her or Dr. Harkins other than Dr. Barringer-Brown's complaint of Dr. Harkins' discrimination, retaliation, and mistreatment of her on

June 21, 2023, to Mrs. Feinman and Mrs. Henderson.

62. Dr. Barringer-Brown was intimidated and taken off guard by this interaction on July 26, 2023, because Dr. Harkins had not been forthright in his intentions in calling a meeting under false pretenses in retaliation against Dr. Barringer-Brown's reporting of his lack of support, discrimination, retaliation, and mistreatment in May 2023 and June 2023, to Mrs. Feinman and Mrs. Henderson via email and face-to-face.

### (g)   Retaliation By Dr. Harkins Against Dr. Barringer-Brown For Reporting Discrimination To SVCC Office Of Human Resources On June 21, 2023

63.   Mrs. Feinman was clearly aware that Dr. Barringer-Brown had no notices or reprimands concerning her performance.

64. Mrs. Feinman was aware that Dr. Barringer-Brown had no issues or concerns to prevented the issuance of her second one-year contract with SVCC. Dr. Barringer-Brown was discriminated against by Dr. Harkins and Mrs. Feinman because of her color, race, and gender. Dr. Barringer-Brown had no reprimands, or and no disciplinary actions of any kind to warrant this meeting called by Dr. Harkins on July 26, 2023.

65. Dr. Harkins did not provide Dr. Barringer-Brown with any documentation or discussion regarding the specific areas of concern.

66. Dr. Barringer-Brown and Dr. Harkins had not meet face-to-face at any point to discuss concerns of any kind between the time she made the complaint to the SVCC Office of HR during the months of May 2023 and June 2023. Dr. Harkins and Mrs. Feinman took retaliatory action against Dr. Barringer-Brown after she informed Mrs.

Feinman of her concerns regarding Dr. Harkins' lack of support, discrimination, retaliation, and maltreatment after their meeting on June 21, 2023.

67. Dr. Harkins threatened Dr. Barringer-Brown with the use of the Faculty Senate through a "Vote of No Confidence" after reporting discrimination, retaliation, and maltreatment to Mrs. Feinman and Mrs. Henderson. Mrs. Feinman was present while Dr. Harkins stated this to Dr. Barringer-Brown and did not say a word just watched Dr. Barringer-Brown's reactions to Dr. Harkins unwarranted tirade.

68. Dr. Barringer-Brown had reported not "feeling safe" and "at the mercy of these baseless attacks" via email to Mrs. Henderson, Mr. Wollenberg, and Mrs. Feinman on May 17, 2023, and this was why Dr. Barringer-Brown placed the original concerns in a written communication. There was no Resolve with Dr. Harkins regarding the ceasing of these issues. 2023, the intimidation, retaliation, and bullying had continued.

69. Dr. Barringer-Brown followed up with an email to Dr. Harkins on July 30, 2023 at 6:54 PM Subject: Concerns with the Evaluation Process.

> *"Dr. Harkins, As I reflect from the meeting with you and Mrs. Feinman on July 26, 2023, I am struck by the fact that I was advised that I was meeting with you for an evaluation regarding my work performance for the annual review. I was blindsided that this meeting was not to discuss my performance evaluation or any performance goals".*

70. There was no response from Mrs. Feinman regarding the reason for her presence at the meeting called by Dr. Harkins under false pretense on the date of July 26, 2023, Mrs. Feinman did not mention Dr. Barringer-Brown's complaint of lack of support, discrimination, retaliation, or maltreatment, as was stated during the June 21, 2023, with her and Mrs. Henderson.

71. Mrs. Feinman did not provide any follow-up to Dr. Barringer-Brown

from the meeting on June 21, 2023, where she had previously expressed concerns to Mrs. Feinman and Mrs. Henderson regarding "feeling unsafe" and the discrimination, retaliation, and defamation of character she had been subjected by Dr. Harkins, Mr. Wollenberg, and selected white (Caucasian) faculty members.

      **(h)**      **Grossly False Statements Provided By Drs. Harkins and Johnson Regarding Dr. Barringer-Brown's Alleged Failure To Meet with the SVCC Faculty Senate President**

72. Dr. Barringer-Brown served as Mr. Walker's immediate supervisor. He made no attempts to meet face-to-face or to even introduce himself to Dr. Barringer-Brown his "new" immediate supervisor from December 5, 2023 through May 1, 2023. Dr. Barringer-Brown requested to meet with him via email on May 1, 2023. Mr. Walker was the only HSB faculty member who had not meet face-to-face with Dr. Barringer-Brown prior to the last day of the spring 2023 semester. The request for end of the semester meetings with HSB faculty was sent via email on May 1, 2023.

73. Mr. Walker responded to the May 1, 2023, email and arranged for a meeting on May 11 or May 12, 2023. The meeting with Mr. Walker occurred in Dr. Barringer-Brown's office at the SVCC Keysville campus. Mr. Walker was evasive and referred to Dr. Barringer-Brown as a "DEI Hire". The term "DEI Hire" has been used in a manner that has weaponized the term and discriminated against me. Dr. Barringer-Brown asked Mr. Walker if there were any concerns that he knew of, and he said "no".

> *"Dr. Barringer-Brown advised Mr. Walker that if he wanted to talk, that she was "available and to just call, come to the office, or email her to discuss anything, concerns, questions, and or suggestions".*

74. Mr. Walker did not call, come by the office, or email any faculty concerns to Dr. Barringer-Brown before or after this date.

75. Dr. Harkins and SVCC were aware that were no SVCC Faculty Senate meetings held or scheduled from May 15, 2023, through September 29, 2023, the date of Dr. Barringer-Brown's termination. The SVCC Faculty Senate President/Chair is a nine-month faculty member. Nine-month faculty members were not on contract from May 15, 2023, through August 16, 2023, and were not contracted to engage in any SVCC Faculty Senate functions while off contract to plan, attend, or schedule any meetings or other college activities. Additionally, no SVCC Faculty Senate meetings occurred during August 16, 2023, through Dr. Barringer-Brown's date termination on September 29, 2023. this reason for termination provided by Dr. Harkins was pretext.

      **(i)    Inaccurate and Misleading Statements Provided By Dr. Johnson To Cover Up The True Retaliatory Motive For Dr. Barringer-Brown's Termination**

76. Dr. Johnson continued Dr. Harkins' false narrative as presented in his Consideration of Appeal dated November 8, 2023. Dr. Johnson stated that,

> *"I believe that within the limited context of the beginning of the fall semester, this claim is true. However, I believe that Dr. Harkins statement must be taken within a broader timeframe and context regarding your engagement, specifically with faculty senate over time".*

77. Dr. Johnson statement demonstrates that Dr. Barringer-Brown was treated differently, no evaluation was conducted, and progressive discipline was not applied by Dr. Harkins and SVCC in the immediate adverse decision to terminate Dr. Barringer-Brown's employment. It can be demonstrated that Dr. Johnson had no regard for the time frames of excessively harsh discipline that was dispensed due to no other cause than retaliation.

78. Dr. Barringer-Brown was issued a "Letter of Intent to Terminate" three days after reporting discrimination, retaliation, and maltreatment to Dr. Johnson.

79. Dr. Johnson did not investigate the timeframes as specified for VCCS Administrative Faculty notification of non-renewal, and or termination, and the fraudulent documents and dates that Dr. Harkins had provided.

80. Dr. Johnson's response demonstrates that he has chosen to (i) disregard the facts that Dr. Harkins treated Dr. Barringer-Brown differently because of her color, race, and gender; and (ii) Dr. Harkins and Mrs. Feinman violated the VCCS Administrative Faculty Evaluation polices and procedures; (iii) along with submission of falsified documents; (iv) provided untrue statements about the underlying facts that formed the predicate for Dr. Barringer-Brown's adverse employment decision; (v) and no mention that Dr. Barringer-Brown advised Dr. Johnson during the office visit in October 2023, that she had met with Mr. Walker one-on-one, who is the SVCC Faculty Senate President during the month of May 2023, at the end of the spring 2023, semester before his contract time ended for the summer session, which was May 15, 2023, through August 15, 2023.

81. Dr. Johnson inaccurately stated in his Response to Dr. Barringer-Brown's Consideration of Appeal dated November 8, 2023, that he (Johnson) was not aware of any formal complaint being filed outside the college at the time of her initial complaint was filed with SVCC. Dr. Barringer-Brown's initial appeal submitted to Dr. Harkins via email dated September 19, 2023, was sent to Dr. Johnson, Mrs. Henderson, and Mr. Alex Wing an EEOC. Dr. Johnson and Mrs. Henderson were copied at the end of Dr. Barringer-Brown's Response to the Letter of Intent document.

82. This demonstrates that Dr. Harkins and Mrs. Feinman were the decision makers at SVCC. Dr. Johnson held animosity toward Dr. Barringer-Brown

and followed the false narratives stated by Dr. Harkins and Mrs. Feinman in response to Dr. Barringer-Brown's termination as a means of "covering up" the true retaliatory motive for her termination from SVCC.

### (d) Dr. Harkins Violated The VCCS Administrative Faculty Evaluation Policy 3.6.1.4. (A) (iv)

83. SVCC is aware that Dr. Harkins violated the *VCCS Administrative Faculty Evaluation policy 3.6.1.4. (a) (iv),* Dr. Harkins, as Dr. Barringer-Brown's immediate supervisor, must collaborate or negotiate with her as an Administrative Faculty member to set up the performance domains to be evaluated. SVCC falsely stated that, *"on August 2, 2023, Dr. Harkins met with Dr. Barringer-Brown and delivered her six-month performance evaluation".* Dr. Harkins did not deliver a complete evaluation nor did he work collaboratively with Dr. Barringer-Brown, on August 2, 2023, before, and or after. Dr. Harkins fabricated notes and an Administrative Faculty Evaluation form that had erroneous dates, missing and inaccurate information, and allegations that were unfounded. Dr. Harkins completed this bogus and defective document in isolation without input from Dr. Barringer-Brown. In addition, the intentional misrepresentation of the statements made by SVCC regarding a purported 6-month evaluation, the policies, and timeframes, would demonstrate that this is pretext.

84. Dr. Harkins handed Dr. Barringer-Brown an incomplete and erroneous, two-page,1-sided document on August 2, 2023. Dr. Barringer-Brown emailed Dr. Harkins on August 2, 2023, to state that he had given her only two 1-sided pages in his office. Dr. Harkins did not give Dr. Barringer-Brown a full document, nor did he review or collaborate any part of the document in his office, or at any time afterward. Dr.

Barringer-Brown informed Dr. Harkins that he handed her two pages, he then emailed a document on August 3, 2023, with the same erroneous dates, inaccurate information, allegations that were unfounded with no input or participation from Dr. Barringer-Brown in the process. Dr. Barringer-Brown and Dr. Harkins discussed her preparation of a self-evaluation then would work together on development of the goals for the performance domains.

85. Dr. Harkins purposely discriminated and retaliated against Dr. Barringer-Brown by denying her of due process. Additionally, the policy states that the VCCS/SVCC Self-Assessment: Evaluation plans must require that evaluative input be provided by the faculty member in the form of a self-assessment.  The self-assessment must include analysis of activities within each performance domain as well as progress toward achievement of annual goals. SVCC Dr. Harkins intentionally omitted including and or reviewing Dr. Barringer-Brown's Self-Evaluation, as part of *the VCCS Administrative Faculty Evaluation policy*, which provides documentation of her actual satisfactory job performance and accomplishments during the timeframe of December 5, 2022 through August 9, 2023, when the document was submitted via email to Dr. Harkins, as of August 10, 2023.

86. Dr. Barringer-Brown contacted the Virginia Department of Human Resource Management on Friday, August 11, 2023, to question the bogus evaluation that Dr. Harkins sent to her via email on August 3, 2023, without her input in the evaluation process.

> **(e) Dr. Barringer-Brown Was Purposefully Denied Due Process In The SVCC Administrative Faculty Evaluation by Dr. Harkins and SVCC**

87. There was no investigation of the issues, or next steps provided from Mrs. Henderson or Dr. Harkins, or any representative from the SVCC Office of Human Resources regarding Dr. Barringer-Brown's stated concerns with Dr. Harkins' bogus and defective Administrative Faculty Evaluation. Dr. Harkins' refusal to follow *VCCS Administrative Faculty Evaluation policy 3.6.1.4. (a) (iv)* policy. Dr. Barringer-Brown was excluded from the evaluation process by Dr. Harkins willfully fabricated a bogus and defective document, that accompanied his false and deliberately misrepresented statements. Dr. Harkins false statements, fabricated documents, and denial of due process with Dr. Barringer-Brown were not investigated by the SVCC Office of HR. Dr. Harkins and SVCC had treated Dr. Barringer-Brown differently based on her color, race, and gender, as a black African American female. She was discriminated and retaliated against by Dr. Harkins and SVCC in retaliation of her complaints regarding discrimination and retaliation because color, race, and gender. She had been denied a fair evaluation process and access to the grievance procedure Dr. Harkins and SVCC. Dr. Harkins gave intentionally false statements regarding an evaluation that he knowingly had not conducted with Dr. Barringer-Brown. Dr. Harkins and Mrs. Feinman worked in concert with Dr. Harkins and deliberately failed to provide Dr. Barringer-Brown equal access to the VCCS Administrative and Professional Faculty policy evaluation process, as was provided to the white similarly situated white (Caucasian) deans.

**(f)  Dr. Barringer-Brown was Denied Procedural Due Process Relating to the Termination of Her Employment**

88. Dr. Harkins discriminated and retaliated against Dr. Barringer-Brown

by deliberately excluding her and denying her the same opportunity for input in the Administrative Faculty Evaluation process, as he provided Dr. Patton and Ms. Arthur the white (Caucasian) similarly situated deans. Dr. Harkins did not exclude or deny Dr. Patton or Ms. Arthur from an opportunity for their input in the Administrative Faculty Evaluation process.

89. Dr. Harkins' falsely provided <u>July 31, 2020</u>, as the date of the Administrative Faculty Evaluation. Dr. Barringer-Brown began her employment with SVCC on December 5, 2022, not July 31, 2020. Dr. Harkins deliberately provided a false evaluation date of <u>December 21, 2022,</u> as the first evaluation date. Dr. Barringer-Brown did not complete an evaluation less than two weeks after her start date of December 5, 2022. SVCC has no documentation to support these intentional misrepresentations of the facts by Dr. Harkins. These are direct examples of some of the discriminatory and retaliatory actions that Dr. Harkins deliberately did in violation to the *Virginia Community College (VCCS) Administrative Evaluation policy (3.6.1.1-3.6.1.9)*. SVCC has no documentation to support any such first performance evaluation took place on the date of December 21, 2022, which was twelve days after Dr. Barringer-Brown's start date, as SVCC was preparing for the winter holiday break. Additionally, SVCC falsely provided the date of June 31, 2023, as the date of the evaluation. <u>June 31, 2023, not an actual date</u>. SVCC did not conduct any such Administrative Faculty Evaluation with Dr. Barringer-Brown on any day in December 2022, June 2023, July 2020, and or August 2, 2023, or afterwards. The dates that SVCC provided on the six-month evaluation are false, incomplete, and highly inaccurate, deliberately erroneous.

90. Dr. Barringer-Brown had a brief meeting during the opening

SVCC Convocation on August 16, 2023, with Dr. Johnson and Mrs. Henderson to discuss the defective performance evaluation emailed and absence of a formal evaluation, in addition to other concerns regarding lack of support, racial discrimination, and retaliation from Dr. Harkins and others.

91. Dr. Barringer-Brown sent a list of concerns via email to Mrs. Henderson and Dr. Harkins, as instructed by Mrs. Henderson on the same date of August 16, 2023.

92. A face-to-face meeting was scheduled for August 22, 2023, to discuss these issues with Mrs. Henderson and Dr. Harkins on the SVCC Keysville campus.

93. Dr. Barringer-Brown specifically outlined that Dr. Harkins had threated Dr. Barringer-Brown on July 26, 2023, that he would work with the SVCC Faculty Senate to issue a vote of "no confidence" against her.

94. Dr. Barringer-Brown addressed Dr. Harkins' violation VCCS-SVCC personnel evaluation policy (Administrative Faculty). Dr. Barringer-Brown outlined for discussion the bogus and defective evaluation that Dr. Harkins had completed in isolation. Dr. Harkins provided discriminatory, highly inaccurate, incomplete, and grossly unfair information and descriptions on a bogus and defective personnel evaluation without agreed upon goals and objectives being established.

95. During the August 22, 2023, Dr. Harkins did not address the bogus evaluation he had created in isolation, nor did he discuss the fact that no evaluation, goals or objectives were collaborated or agreed upon on or before August 2, 2023, and thereafter. Dr. Barringer-Brown and Dr. Harkins had not completed the evaluation process, he had not reviewed or collaborated on the goals and objectives, and Dr.

Harkins had not reviewed Dr. Barringer-Brown's self-evaluation with her, as required per the VCCS Administrative Faculty Policy.

96.  Dr. Harkins began an attempt to divert attention from the lack of adherence to the VCCS Administrative Faculty Evaluation policy to a demand for a selected white (Caucasian) student's unwarranted grade change.

97. Dr. Harkins with deliberate intention defamed Dr. Barringer-Brown by providing false statements that Dr. Barringer-Brown "*refused to sign the evaluation*". The evaluation was a bogus document and he excluded Dr. Barringer-Brown from participation in the Administrative Faculty Evaluation process to create a basis for her wrongful termination.

98. Dr. Harkins SVCC did not adhere to the 3.6.1.8  Evaluation Cycle and Frequency of Evaluations in the case of Dr. Barringer-Brown, which differed from the treatment of Dr. Patton and Ms. Arthur white (Caucasian) similarly situated deans.

99. The dates provided by SVCC of performance evaluations conducted for Dr. Barringer-Brown by Dr. Harkins are grossly false. Dr. Harkins provided falsely stated dates on the bogus evaluation that he created in isolation. The document and the information created by Dr. Harkins is fraudulent and highly inaccurate. According to the VCCS Administrative Faculty Evaluation Policy 3.6.1.8 Evaluation Cycle and Frequency of Evaluations, First-year faculty hired before January 1 should be evaluated during the fiscal year. Dr. Barringer-Brown was hired to start on December 5, 2022, which was before January 1. Dr. Barringer-Brown was not evaluated during the evaluation cycle that ends on June 30.  Dr. Harkins did not conduct any such evaluation on December 21, 2023, as he had deliberately misrepresented and Dr. Barringer-Brown's

evaluation should have occurred approximately mid-way between commencement of employment and the end of the fiscal year; the second evaluation must occur at end of the fiscal year. It is recommended that first-year objectives be established upon commencement of employment.  Dr. Harkins and Dr. Barringer-Brown did not meet to establish any objectives. The VCCS Administrative Evaluation Policy states that "Notification of Non-reappointment should have be provided at least six (6) months prior to termination of employment".

100.     Dr. Barringer-Brown was issued a second-year faculty contract for 2023-2024 and should have been evaluated in December of 2023, the objectives for the 2023-2024 academic year should have been established in June 2023. The date of December 21, 2022, that Dr. Harkins provided was deliberately false, no such "first evaluation" or any other evaluation took place between Dr. Barringer-Brown and Dr. Harkins that Dr. Harkins approximately 12 calendar days after her start with SVCC. Thus, "notification of non-reappointment should have be provided at least six (6) months prior to termination of employment".

101.     Dr. Barringer-Brown was deliberately denied an opportunity for a fair and collaborative evaluation process by Dr. Harkins and Mrs. Feinman. Dr. Harkins and Mrs. Feinman denied Dr. Barringer-Brown access to the grievance procedure because Dr. Harkins purposefully did not complete the actual evaluation process with her. Dr. Harkins treated Dr. Barringer-Brown differently than Dr. Patton and Ms. Arthur the two white (Caucasian) similarly situated deans by denying her a fair, collaborative, and complete administrative faculty evaluation.

102.     Dr. Harkins created a bogus evaluation due to Dr. Barringer-

Brown's complaints of discrimination and retaliation against him. In contrast, Dr. Harkins conducted fair and collaborative administrative faculty evaluations with the two white (Caucasian) similarly situated deans.

103.    Dr. Barringer-Brown was not provided with the process for any grievance from Mrs. Feinman, or Dr. Harkins about the absence of the proper Administrative Faculty evaluation policies and procedure being followed, as was required according to the VCCS (3.6.1.1-3.6.1.9) policy.

102.    Dr. Harkins deliberately ignored that Dr. Barringer-Brown submitted a self-evaluation document via email attachment on August 10, 2023, per email correspondence. This document contained over seventy-five pages of documentation that supported her excellent work performance and exceeds expectations in comparison to her similarly situated white (Caucasian) peer deans. SVCC has deliberately provided false accusations, misleading statements, and incorrect dates without any regard for the facts within their allegation of unsatisfactory work performance, and other damaging accusations as a misleading basis of pretext. SVCC has not provided documentation to substantiate their claims and the alleged claims have no basis in fact. SVCC Dr. Harkins created an intentionally subpar, incomplete, and factually invalid performance evaluation that was presented to SVCC, EEOC, and other entities in complete disregard to the Virginia Community College System (VCCS) Administrative Faculty Evaluation Manual Policies and the SACSCOC regulations.

104.    Drs. Harkins intentionally failed to address the issue of the defective evaluation that was used as basis for Dr. Barringer-Brown's termination in his written response "Notice of Dismissal" dated September 29, 2023.

31

105.     Dr. Johnson intentionally failed to address the issue of the defective evaluation that was as basis for Dr. Barringer-Brown's termination in his written response "Consideration of Appeal" dated November 8, 2023.

106.     Dr. Johnson did not investigate the bogus and defective evaluation dates, missing and inaccurate information contained within the documents, nor did he consult  the appropriate VCCS Administrative Faculty Evaluation and timeframes for notification of termination polices that pertained to this appeal.

107.     Dr. Johnson did not sanction Dr. Harkins and Mrs. Feinman for deliberately violating the *VCCS Administrative Faculty Evaluation (3.6.1.1-3.6.1.9),* policy in Dr. Barringer-Brown's case.

### (g) SVCC Provided Fraudulent Documents Submitted to EEOC

108.     Dr. Harkins and SVCC have knowingly provided two different copies of an erroneous and fraudulent defective evaluation. The fraudulent copy of the bogus and defective administrative faculty evaluation submitted to EEOC differs from the document provided to Dr. Barringer-Brown via email on August 3, 2023, which is pretext for discrimination and retaliation against Dr. Barringer-Brown. SVCC HR has deliberately disregarded the effect of Dr. Harkins discriminatory and retaliatory behavior with Dr. Barringer-Brown, who is a black African American female. Dr. Harkins falsely stated that Dr. Barringer-Brown "flatly refused to sign the evaluation". Dr. Harkins was aware that this was an intentionally false statement. He had not collaborated or completed the VCCS Administrative Faculty Evaluation with Dr. Barringer-Brown for her to refuse any such document or formal review.

109.    Dr. Harkins and Mrs. Feinman deliberately failed to provide Dr. Barringer-Brown equal access to the VCCS Administrative and Professional Faculty policy evaluation process, as was provided to Dr. Patton and Ms. Arthur the white similarly situated white (Caucasian) deans.

### (h) Dr. Harkins and Mrs. Feinman Violated The VCCS Administrative and Professional Faculty Evaluation Policy (Policy: 3.13)

110.    Further, Dr. Harkins and Mrs. Feinman deliberately denied due process according to the VCCS Administrative and Professional Faculty policy (VCCS Policy: 3.13), to appeal the results of evaluation through the Faculty Grievance Procedure (VCCS Policy: 3.13), because Dr. Harkins did not include Dr. Barringer-Brown in the evaluation process. As the VCCS Administrative and Professional Faculty Evaluation (VCCS Policy: 3.13) policy states, throughout the appeals process, it will be incumbent upon the immediate supervisor to provide documentary evidence for the evaluation given to the faculty member.

111.    SVCC has provided no such documentation to support their clams that Dr. Barringer-Brown was included in the evaluation process on any of the bogus dates.

112.    SVCC denied procedural due process to Dr. Barringer-Brown. There were no remedies or grievance procedure provided to her related to her termination of employment or against Dr. Harkins or of the absence of the VCCS Administrative Faculty Evaluation policy being followed beyond the requested list of her concerns on August 16, 2023, for the incomplete and bogus evaluation that Dr. Harkins

had falsely presented, as being factually valid. Dr. Barringer-Brown received no follow up after reporting her concerns to SVCC HR on August 22, 2023.

### (i) No Action Taken By VCCS On Request for Discretionary Review Of Grievance

113. Dr. Barringer-Brown sent forward an email dated November 10, 2023, to the VCCS Associate Vice Chancellor, Human Resources per the VCCS Administrative Faculty Evaluation grievance process to review the matter of the discrimination, retaliation, and denial due process for the defective evaluation that was used as basis for Dr. Barringer-Brown's termination. The VCCS Associate Vice Chancellor, Human Resources responded via email with a letter dated November 14, 2023, with the first and last name of Dr. Barringer-Brown misspelled that stated,

> *"Southside Community College has retained an independent vendor to investigate your allegations. My Office cannot determine whether discretionary review of your grievance is appropriate until the investigation is concluded. Consequently, I defer a decision on whether my Office will entertain your request for discretionary review until that time".*

It is from November 14, 2023, to date, the VCCS Associate Vice Chancellor, Human Resources has not responded or taken action on the request for review of the consideration for an appeal for discretionary review by Dr. Barringer-Brown.

### D. DRS. JOHNSON AND HARKINS, AND MRS. FEINMAN'S WRONGFUL WORKPLACE PRACTICES

114. Dr. Barringer-Brown has no such track record of unsatisfactory performance with any previous employer. Dr. Barringer-Brown maintained a satisfactory level of performance and complied with SVCC and VCCS policies, procedures, and laws and excessively harsh adverse actions were taken against her at SVCC by Drs. Harkins and Johnson, and Mrs. Feinman were discriminatory and retaliatory because Dr,

Barringer-Brown exercised her rights to report the workplace abuses that she had suffered.

115.    Dr. Harkins, Mrs. Feinman, Mr. Wollenberg, and Mr. Walker are white (Caucasians) who used threats, personal assaults on Dr. Barringer-Brown's character, and intimidation against her. The threats, personal assaults on Dr. Barringer-Brown character, and intimidation were used to prevent her from *reporting unfair treatment* and *unethical acts* at SVCC. Dr. Harkins' *defamation of character* and *wrongful termination* was used to show other black African Americans what would happen to them if, they tried to pursue protected activities within the agency to guard their civil rights.

116.    SVCC is aware that Dr. Barringer-Brown did not receive any employee disciplinary notices or actions from Dr. Harkins or SVCC prior to complaining to Dr. Johnson on September 12, 2023 about Dr. Harkins' discrimination, retaliation, and maltreatment of her. Dr. Barringer-Brown received no response from Dr. Johnson.

117.    Dr. Harkins purposefully interfered in the hiring process in the HSB with Dr. Barringer-Brown. Dr. Harkins did not serve or request to chair or co-chair on hiring committees with Dr. Dixie Dalton "Dr. Dalton", who served as the (HSB) dean white (Caucasian) female. Dr. Harkins did not reprimand or seek to terminate Dr. Dalton, while full-time faculty and part-time adjunct faculty positions were not filled for several years prior to Dr. Barringer-Brown's hire.

118.    Dr. Harkins allowed the two similarly situated white (Caucasian) deans Dr. Patton and Ms. Arthur to create and hire more administrative support personnel positions within their units and stalled hiring processes and made the process

to secure individual difficult for Dr. Barringer-Brown, Dr. Patton and Ms. Arthur were not subjected to this treatment by Dr. Harkins.

119.    For example, Dr. Harkins provided the two similarly situated deans Dr. Patton" and Ms. Arthur with full-time administrative assistants, program coordinators, program directors, and credentialing specialists. Dr. Barringer-Brown was not given approval to hire an administrative assistant until April 2023, four months after she started. The administrative assistant was not hired until May 25, 2023. Dr. Barringer-Brown was a Dean that worked for five months with no day-to-day administrative support designated specifically to HSB.

120.    In contrast, Dr. Harkins stated to Dr. Barringer-Brown on her second day on the job, "*Sorry to have to do this you*"! In regards to the additional duties not mentioned in the job description or during the interview process. Dr. Barringer-Brown was tasked with completing all of these duties in addition to her role as Dean of Humanities, Social Sciences, and Business within her academic unit.

121.    Dr. Barringer-Brown was also credentialing faculty who taught HSB content courses and other cross-over programs, such as Campus without Walls (CWW), Governor's School, and Distance Education, which were not part of her job description. Additionally, Dr. Barringer-Brown certifying all area high school students enrolled in HSB and DE programs as the "Dean of Instruction".

122.    Multiple area school districts in Southside Virginia were sending credentials requests through Distance Education and these requests were forwarded to Dr. Barringer-Brown's attention to address because they did not have the personnel, which was extremely burdensome.

36

123.    Dr. Barringer-Brown experienced direct interference from Dr. Harkins about hiring within her unit. Dr. Harkins intentionally provided inaccurate and confusing information to her via email and through verbal communication. SVCC struggled with hiring in the academic units for years prior to Dr. Barringer-Brown's hire. SVCC insisted that she allow under credentialed white (Caucasian) faculty members to teach extra courses for overload pay and to hire selected full-time faculty without justification. Dr. Barringer-Brown sought to hire a diverse teaching slate of adjuncts that credentialed to teach within their disciplines.

124.    Dr. Harkins created unadvertised positions and hired white (Caucasian) friends and the recommended family of other employees at SVCC this workplace wrong doing was reported to the Office of the State Inspector General (OSIG).

125.    Often, Dr. Harkins hired white (Caucasian) instructors without the proper credentials to teach the courses that were family and friends of employees at SVCC. Dr. Harkins and Dr. Dalton had not carried out the fulfillment of hiring persons all positions in HSB years prior to Dr. Barringer-Brown's hire. In some cases, allegedly Dr. Harkins was aware that Dr. Dalton was paying selected white (Caucasian) adjuncts more than credentialed full-time black African American faculty members, which was highly discriminatory.

126.    Dr. Harkins did not inform Dr. Barringer-Brown or ask for any input from her about the addition of the unadvertised positions in the units of the similarly situated deans Dr. Patton and Ms. Arthur. Dr. Harkins permitted the similarly situated deans Dr. Patton and Ms. Arthur white (Caucasian) to hire support personnel for

their units without notifying Dr. Barringer-Brown of any of the positions or postings. Dr. Harkins instructed Dr. Barringer-Brown to provide notice of any drafts or proposed personnel changes to the similarly situated white (Caucasian) deans Dr. Patton and Ms. Arthur, Dr. Barringer-Brown reported these situations to Dr. Harkins, Mrs. Feinman, and SVCC HR because she started to feel the pressure of having extra projects forced upon her with no provision of a full-time administrative office assistant, which was in direct contrast to the level of support Dr. Harkins provided to the two (Caucasian) similarly situated deans Dr. Patton and Ms. Arthur. The former dean Dr. Dalton had a full-time administrative assistant in HSB. Dr. Harkins left the HSB administrative assistant position vacant upon Dr. Barringer-Brown's hire. Dr. Harkins was aware that Dr. Barringer-Brown had limited to no help in performing day to day HSB tasks in addition to the added workload of duties.

127.    There were two administrative assistants assigned to help with contracts for adjuncts and faculty that overlapped in the two other units. Contract completion occurs at certain times of the academic year.

128.    Dr. Harkins, Mrs. Feinman, Mr. Wollenberg, and Mr. Walker, used extremely character damaging, false, accusatory terms, such as "DEI hire" "intimidating," "confusing," "non-compliant," "toxic", "unsatisfactory job performance," and "non-transparent." They falsely accused Dr. Barringer-Brown of breaching the confidentiality of personnel. They stereotypically criminalized and demonized Dr. Barringer-Brown's character as a black African American female.

129.    In other words, ordinary prejudice is as much a part of the

oppressive equation, that led to Dr. Harkins', Mrs. Feinman's, Mr. Wollenberg's, and Mr. Walker's intentional reporting of alleged false events that are pretext for discrimination. Drs. Harkins, Johnson and Mrs. Feinman retaliated against Dr. Barringer-Brown's participation in protected activities within the agency and this led to her wrongful termination from SVCC.

130.    SVCC practices discriminatory methods of hiring, firing, and unequal personnel discipline action treatment of black African Americans. Mrs. Feinman's cousin Mr. Walker, racially weaponized the term "DEI" by referring to me as a "DEI hire", on several occasions. Dr. Harkins threatened the use of the SVCC Faculty Senate, Mr. Walker, to retaliate against Dr. Barringer-Brown for her complaints of discrimination at SVCC. Dr. Harkins allowed unfair and unethical treatment of her due to her race, color, and gender. Mrs. Feinman and Mr. Wollenberg remain in their positions without reprimand for their unethical, unprofessional, and abusive actions.

131.    Mr. Walker was a subordinate of Dr. Barringer-Brown in HSB (History). Mr. Walker is the (SVCC Faculty Senate President) and he did not make any effort to work in positive manner with Dr. Barringer-Brown. Mr. Walker continued to work in concert with Dr. Harkins to discriminate against Dr. Barringer-Brown.

132.    The SVCC President Dr. Johnson, an African American male, is used to mask the discrimination perpetuated by Dr. Harkins, Mrs. Feinman, Mr. Wollenberg, and Mr. Walker, who are white (Caucasians). Dr. Harkins and Mrs. Feinman are the ultimate decision makers at SVCC, Dr. Johnson has allowed the discriminatory and retaliatory actions to continue at the college against black African American females in leadership roles.

b. **Issue of Dr. Harkins' Demand for Preferential Treatment for a Selected White (Caucasian) Student Regarding an Unwarranted Student Grade Change**

133.     The issue of the defective evaluation was not resolved during the August 22, 2023, meeting. On August 23, 2023, things got far worse for Dr. Barringer-Brown, while at the Estes Center in Chase City, Virginia, Dr. Harkins, demanded an unwarranted grade change for the selected white (Caucasian) student a fourth time during the SVCC faculty training workshop. Dr. Barringer-Brown had organized the SVCC faculty training workshop for adjunct and full-time faculty members. The student, course instructor, and the similarly situated dean were also present. Dr. Harkins was rude and belligerent to Dr. Barringer-Brown in front of other adjunct and full-time faculty, and staff members after her refusal to engage in unlawful actions. Dr. Barringer-Brown informed Dr. Harkins that she would file a complaint of discrimination and retaliation against him with the EEOC for his continued discrimination actions.

134.     SVCC has detailed an intentionally misleading, false, and highly inaccurate narrative as Dr. Harkins states that,

> "*Dr. Barringer-Brown's ruling was based solely on the policy governing the student's timeline for requesting an "I" grade extension and disregarded the student's valid complaint about the faculty member's prolonged unavailability, resulting in nearly a two-week period without communication*".

135.     Dr. Barringer-Brown conducted a thorough review of this course, considered the student's performance, the instructor's communication, and the course expectations (SVCC policies) when deciding this issue. The student could not receive an "I" grade because she earned an "F" at a fail rate of 39.76% based on unsatisfactory performance. The instructor posted and graded the assignments as shown in the records shown in the SVCC CANVAS and Hawkes learning systems. The instructor allowed the

student extra time for completion of assignments. Fully online courses required only virtual office hours due to the 24/7 availability of course material and assignments.

136.    In this situation, Dr. Harkins made demands for unwarranted preferential treatment because the selected mathematics faculty member who was teaching the course is a black African American female. As evidenced in the MTH 154 course record the course instructor was attentive, knowledgeable of the course content, fulfilled her duties, followed the SVCC policies, provided extended time, as suggested, and the selected white (Caucasian) student earned an "F" grade.

137.    Dr. Harkins was angered and demanded preferential treatment for the selected white (Caucasian) Female student because she is an instructor with SVCC in the Career and Occupational Technology unit under Cosmetology. Dr. Barringer-Brown engaged in a fair and transparent process for resolving the grade dispute by verifying the student's grade, her attendance, and logins in the CANVAS and Hawkes learning systems. SVCC Dr. Harkins is aware that there was no need to provide coverage for the online MTH 154 course where the instructor can be anywhere during the summer to each their course. Nine-month faculty are not required to be on the campus during the summer if the course is online because they are off academic year contract. Instructors decide availability for virtual office hours.

138.    Overall, the selected white (Caucasian) student did not spend the time needed to complete the course activities or assignments to pass the course, which can be evidenced from a review of the documentation. Dr. Harkins created a highly false and misleading narrative to justify the demand for an improper grade change for the student based on her race and friendship with the Dr. Patton, Dean of

Career and Occupational Technology unit. Dr. Harkins harassed and retaliated against Dr. Barringer-Brown. Dr. Harkins, ultimately terminated Dr. Barringer-Brown's employment for two reasons: (i) Dr. Barringer-Brown completed a thorough review of selected student's grade appeal and did not take part in workplace wrongdoing by changing the selected student's grade to satisfy his request for preferential treatment based on race on August 22, 2023 and August 23, 2023. (ii), and Dr. Barringer-Brown had reported Dr. Harkins' mistreatment, lack of support, discriminatory acts, and retaliation to SVCC President Johnson on September 12, 2023.

139.    Dr. Harkins discriminated against Dr. Barringer-Brown and provided different expectations for Dr. Patton and Ms. Arthur similarly situated former and current white (Caucasian) deans. Dr. Harkins' set relaxed standards and disregard of adherence to program policies for the white (Caucasian) over the entire five-year period of review, which began before Dr. Barringer-Brown's employment and continued after her termination from the college. Dr. Harkins is responsible for the oversight of Academic Affairs. The lack of adherence to standards and lowered expectations shown by SVCC in the areas of Academic Affairs, regarding the five-year program review has been demonstrated through the notification of areas of difficulty within their recent SACSCOC five-year review notification.

II

140.    As another repercussion to Dr. Barringer-Brown's complaints of discrimination, retaliation, and mistreatment and her refusal to provide preferential treatment to the selected white (Caucasian) student, Dr. Harkins stalled the issuance of Dr. Barringer-Brown's supplemental employment contract to teach an eight-week

PHI 220 course at the college.

141.     When Mrs. Vivica Crenshaw "Mrs. Crenshaw", Dr. Barringer-Brown's Administrative Assistant who was hired May 25, 2023, inquired about the supplemental contract on Dr. Barringer-brown's behalf, she not given an answer that would correspond with the actual reason for no receipt of contract for payment.

142.     Dr. Barringer-Brown inquired about her contract with Mrs. Cindy Mason, Dr. Harkins' Administrative Assistant. Mrs. Mason sent a short email stating that they were trying to figure out my rate of pay. This was not an accurate reason for the stalled contract. Mrs. Henderson was also staling in response to Dr. Barringer-Brown's contract.

143.     As a final consequence of Dr. Barringer-Brown's refusal to engage in wrongdoing to change the selected student's grade, Dr. Harkins falsely stated that Dr. Barringer-Brown had "*flatly refused to sign the evaluation*". Dr. Harkins knows that he was providing an intentionally false statement because he had excluded Dr. Barringer-Brown from the evaluation process. Dr. Harkins discriminated and retaliated against Dr. Barringer-Brown and purposefully excluded Dr. Barringer-Brown from any opportunity for involvement in the evaluation process, as the VCCS Administrative Faculty Evaluation and Grievance policies state.

144.     SVCC the breached Dr. Barringer-Brown's employment contract by not following the stated timeframes for notification for renewal, and or termination. All of these acts of discrimination, retaliation, mistreatment occurred because Dr. Barringer-Brown is a black African-American female. Dr. Barringer-Brown was the only black African American female administrator at SVCC, No other dean white (Caucasian) (administrative faculty) or general faculty members had been terminated at SVCC under

Dr. Harkins supervision or authority had ever experienced any such severe acts of

discipline or such negative actions. Dr. Barringer-Brown was denied any opportunity for

success due to the discrimination, retaliation, and mistreatment that she endured from Dr.

Harkins. SVCC breached Dr. Barringer-Brown's employment contract, as a consequence

of making these complaints against Dr. Harkins' workplace wrongdoing at SVCC.

145.    Mr. Wollenberg and Mrs. Feinman are aware that SVCC have

presented these false statements, as factual to EEOC, and other entries against Dr.

Barringer-Brown. Dr. Barringer-Brown was shocked when she reviewed SVCC's

Position Statement dated February 9, 2024, that contained a copy of "personal notes" from

Mr. Wollenberg presented as fact to the EEOC. These "personal notes" of Mr.

Wollenberg were crafted based on discriminatory and retaliatory means against Dr.

Barringer-Brown with no factual basis. Dr. Barringer-Brown did not state or express

any of these alleged comments nor did she participate in any of the purported actions

that were falsely presented as factual.

146.    SVCC did not follow the VCCS Administrative Faculty Evaluation

policy and refused to address the bogus and defective evaluation used a basis for

termination of Dr. Barringer-Brown's employment.

147.    SVCC did not address the fact that the VCCS Administrative Faculty

Evaluation policy, nor had timeframes for notification for non-renewal or termination of

contract had not been followed. The external investigator hired by SVCC intentionally did

not address the issue that the VCCS Administrative Faculty Evaluation was bogus and

defective and contained multiple erroneous dates, and other falsely stated information by Dr.

Harkins. SVCC's Position Statement to EEOC dated February 9, 2024, did not provide any

documentation that Dr. Harkins and Dr. Barringer-Brown had met on any of the specified

dates that Dr. Harkins had falsely provided on the purported evaluation document, without Dr. Barringer-Brown's knowledge and any input in the process, as being completed according to the VCCS Administrative Faculty Evaluation policy.

148.    SVCC and the external investigator purposely did not provide the EEOC with VCCS Administrative Faculty Evaluation policy in their exhibits for their Position Statement dated February 9, 2024, which would demonstrate their knowledge that the policy was not followed by Dr. Harkins in Dr. Barringer-Brown's case, as pretext.

149.    In her Response to the Intent to Terminate letter, Dr. Barringer-Brown focused primarily on four points. First; she noted the complete lack of merit to the accusations that she had not performed the duties of her job satisfactory. To prove her point, Dr. Barringer-Brown attached (i) Dr. Harkins bogus and defective evaluation, (ii) she included her VCCS Administrative Faculty Self-Evaluation to document her activities while at the college, (iii) and she Included email correspondence showing no collaboration took place between Dr. Harkins and Dr. Barringer-Brown her concerns with Dr. Harkins violation of the VCCS Administrative Faculty Evaluation process (iv) and she included the selected student's course record activity with all relevant Correspondence.

150.    Through these four documents, Dr. Barringer-Brown explained that without a doubt Drs. Harkins, Johnson, and Mrs. Feinman, and Mrs. Henderson, and Mr. Wollenberg made grossly false allegations against her.

151.    Second, Dr. Barringer-Brown noted her total surprise that Mrs. Feinman was present for the July 26, 2023, meeting that was scheduled with Dr. Harkins. Dr. Barringer-Brown explained, for example, how no one had alerted her to any problems until after she complained about Dr. Harkins' discriminatory, retaliatory, mistreatment of her on June 21, 2023.

152.    Third, Dr. Barringer-Brown emphasized how she had been given

any previous reprimand or notice by Dr. Harkins.

153.    And fourth, Dr. Harkins, among other things: (i) threated her with the use

of a "vote of no confidence", *(ii)* Dr. Harkins stalled contract approval and payment after the

August 22, 2023, meeting with Mrs. Henderson; (ii) Dr. Barringer-Brown complained in an email

to Dr. Johnson on September 12, 2023, (iii) *within three days,* Dr. Barringer-Brown was issued a

"Intent to Terminate" letter from Dr. Harkins. Dr. Harkins had deliberately excluded Dr. Barringer-

Brown from the evaluation process. Dr. Harkins created a factually invalid bogus and defective

performance evaluation that was fraudulently presented as complete in disregard and

violation to the Virginia Community College System Administrative Faculty Evaluation

Manual Policies and the SACS regulations. Drs. Harkins and Johnson, and Mrs. Feinman

were workplace wrongdoers. Dr. Harkins and Mrs. Feinman were the ultimate decision

maker in the wrongful termination of Dr. Barringer-Brown's employment with SVCC. Dr.

followed the pervious actions any chose not to deviate from the path that Dr. Harkins and

Mrs. Feinman had set for Dr. Barringer-Brown.

## E.    OTHER ACTS OF DISCRIMINATION AGAINST DR. BARRINGER-BROWN

154.    Over and above the discriminatory and defamatory acts described

above, SVCC engaged in other discriminatory, and retaliatory acts against her.

155.    Due to Dr. Harkins' violation of the VCCS Administrative Faculty

Evaluation timeframes for notification; (ii) and violation of VCCS Administrative Faculty

Evaluation policy in the absence of a performance evaluation being conducted; (iii) Dr.

Barringer-Brown suffered a breach of her employment contract and is owed for the remainder

of the contract time period with SVCC.

46

156.     Finally, as result of SVCC's wrongful termination of Dr. Barringer-Brown's employment contract (as explained below), Dr. Barringer-Brown suddenly lost her income and employee benefits, which has caused a significant loss of income for her family and personal circumstances, Dr. Barringer-Brown has paid attorney's fees, medical and other expenses, to due to date that have been an undue burden to her.

## F. DR. BARRINGER-BROWN COMPLAINS TO SVCC PRESIDENT AND THEN SVCC RETAILATES AGAINST HER BY GIVING NOTICE OF INTENT TO TERMINATE HER EMPLOYMENT LESS THAN THREE DAYS LATER

157.     On August 11, 2023, Dr. Barringer-Brown contacted the Virginia Department of Human Resource Management (VDHRM) to discuss the bogus defective evaluation that Dr. Harkins had completed in isolation. On August 11, 2023, I received an email from LaDonna Judkins "Ms. Judkins", as a follow up in response to my phone conversation.

158.     The August 11, 2023, email from Ms. Judkins recommended that Dr. Baringer-Brown contact the Employment Dispute Resolution (EDR) department about Dr. Harkins' defective evaluation received via email on August 3, 2023.

159.     On August 16, 2023, Dr. Barringer-Brown reported discrimination, retaliation, and mistreatment to Mrs. Henderson and Dr. Johnson in a meeting. Dr. Johnson and Mrs. Henderson requested that Dr. Barringer-Brown outline her concerns in an email to Mrs. Henderson and Dr. Harkins.

160.     On August 22, 2023, Dr. Barringer-Brown informed Dr. Harkins of her concerns of discrimination and retaliation in a meeting with SVCC HR. Mrs. Henderson was present and Dr. Harkins stated that, "we don't need to follow policies",

when Dr. Barringer-Brown spoke about her bogus and defective evaluation and the process not being followed.

161.     On August 23, 2023, Dr. Barringer-Brown informed Dr. Harkins that she was going to file a complaint with EEOC, because he demanded for her to change a grade for a 4th time to provide preferential treatment to a selected (Caucasian) female student who is employed at SVCC and was a "subordinate" of Dr. Patton, who is a similarly situated (Caucasian) dean.

162.     On August 30, 2023, Dr. Barringer-Brown made initial contact with EEOC, and completed email verification to set up an intake interview.

163.     On September 2, 2023, Dr. Barringer-Brown filed a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

164.     On September 12, 2023, Dr. Barringer-Brown reported discrimination and retaliation to the President of SVCC, Dr. Johnson via email.

165.     On Thursday, September 14, 2023-Dr. Harkin) emailed Dr. Barringer-Brown) that he "would stop by her office on the Daniel campus" on tomorrow".

166.     Three days after Dr. Barringer-Brown had complained to Dr. Johnson on September 12, 2023, and received no response, on Friday, September 15, 2023, Dr. Harkins, served Dr. Barringer-Brown with a letter of "Intent to Terminate" from SVCC.

167.     No explanation and or documentation was given to Dr. Barringer-

Brown for the decision, but the "Intent to Terminate" occurred immediately after Dr. Barringer-Brown had complained about discrimination, retaliation, and maltreatment to Dr. Johnson on September 12, 2023.

168.    On Friday, September 20, 2023, a response to Letter of Intent to Terminate was emailed to Dr. Harkins with copies to Mrs. Henderson, Dr. Johnson, and EEOC. A statement was included by Dr. Barringer-Brown that she was involved in a protected activity with EEOC within the first paragraph on the first page of the response.

169.    The EEOC charge was drafted on September 25, 2023, and was the updated due to SVCC 's adverse employment decision of termination on September 29 2023.

170.    On September 26, 2023, at 8:50 AM Dr. Barringer-Brown submitted via email a grievance to the Virginia Department of Human Resources Management (VDHRM), to determine if, Dr. Barringer-Brown grievance procedure through VDHRM or SVCC, as an Administrative Faculty member (Dean).

171.    On September 26, 2023-Dr. Barringer-Brown emailed Mr. Wollenberg at 12:30 PM to inquire about the "hold status" of her supplemental contract for a course teaching (PHI 220) that had not been processed from August 22, 2023 through September 26, 2023. No response was provided from Mr. Wollenberg.

172.    On September 26, 2023, Dr. Harkins emailed a letter of Administrative Leave to Dr. Barringer-Brown) at 7:00PM. Dr. Barringer-Brown was advised to contact SVCC HR Mrs. Henderson for assistance and or questions.

173.    On September 26, 2023-Dr. Barringer-Brown emailed Mrs. Henderson regarding filing a complaint against immediate supervisor Dr. Harkins.

174.    Dr. Barringer-Brown did not get a response from Mrs. Henderson

regarding the procedure for filing a complaint against immediate supervisor Dr. Harkins.

175. On September 26, 2023-Dr. Barringer-Brown emailed the Virginia Community College Association (VCCS) to cancel her scheduled presentation at the conference for September 27-29, 2023, due to being placed on Administrative Leave.

176. On September 29, 2023, approximately 10:47 AM Dr. Barringer-Brown contacted a SVCC Board Member to ask what would they recommend in a situation where the person(s) who discriminated and retaliated against you are the persons who will be reviewing the case? Dr. Barringer-Brown asked what else could help her with this situation?

177. On September 29, 2023, at Approximately 10:00-10:30 AM-The SVCC Board member called and spoke with Dr. Johnson on Dr. Barringer-Brown's behalf.

178. On September 29, 2023, SVCC Approximately 10:47 AM The SVCC Board member stated in text message that "she could not advise me and Dr. Johnson stated let the administration handle that" regarding Dr. Barringer-Brown. Dr. Johnson deferred to the college decisions to Dr. Harkins and Mrs. Feinman.

179. On September 29, 2023-Approximately 11:10 AM SVCC email was suspended, and password changed by SVCC IT administrator. (No access)

180. On September 29, 2023, at approximately a Letter of Dismissal was sent via email to Dr. Barringer-Brown from Dr. Harkins. Dr. Harkins did not meet with Dr. Barringer-Brown prior to or after dismissal to discuss any of the issues with her Dismissal.

**E.    AFTERMATH**

181. Based on these and other continuing actions, Dr. Barringer-Brown

50

has suffered, among other things, financial loss, emotional distress and reputational harm.

**F.     EXHUSTATION OF REMEDIES**

182.     For purposes of her claims under Title VII, Dr. Barringer-Brown has exhausted her administrative remedies. Her lawsuit also is timely filed within 90 days of the EEOC's issuance of a right-to-sue letter (Dr. Barringer-Brown 's claim for discrimination and her claim of retaliation.

**COUNT I.:**
**TITLE VII**
**DISCRIMINATION CLAIM**
**(AGAINST SVCC)**

The allegations of paragraphs 1-181 are realleged as if fully set forth herein.

183.     By virtue of her status as a black African American female, Dr. Barringer-Brown is entitled to Title VII's protection against discrimination based on her color, race, and gender

184.     Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or *otherwise to discriminate* against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of her color, race, and gender.

185.     As is clear from the allegations stated herein, Dr. Barringer-Brown was discriminated against based on her color, race, and gender.

186.     As a direct result of the SVCC's discrimination, Dr. Barringer-Brown has been caused to suffer the loss of potential occupational opportunities. Additionally, Dr. Barringer-Brown has been caused to suffer personal injury, anxiety,

emotional distress, personal and professional humiliation and embarrassment as a result of the SVCC's actions.

187.     SVCC's actions also constitute gross, wanton, malicious, reckless, and/or intentional violations of Dr. Barringer-Brown 's rights, thus entitling her to punitive damages.

**COUNT** II:
**TITLE VII  RETALIATION
CLAIM
(AGAINST SVCC)**

188.     The allegations of paragraphs 1-186 are realleged as if fully set forth herein.

189.     Under Title VII, it is unlawful for an employer to retaliate against

an employee for engaging in protected activity under the Act.

190.     Here, Dr. Barringer-Brown engaged in protected activities when she reported Dr. Harkins' discrimination, mistreatment, and retaliation toward her, and filed her EEOC Charges regarding SVCC's conduct described herein.

191.     SVCC unlawfully retaliated against Dr. Barringer-Brown for engaging in the protected activities and terminating her employment contract.

192.     As a direct result of the SVCC's retaliation, Dr. Barringer-Brown has been caused to suffer the loss of potential occupational opportunities. Additionally, Barringer-Brown has been caused to suffer personal injury, anxiety, emotional distress, personal and professional humiliation and embarrassment as a result of the SVCC's actions.

193.     SVCC's actions also constitute gross, wanton, malicious, reckless,

and/or intentional violations of Dr. Barringer-Brown's rights, thus entitling her to punitive damages.

## COUNT III – DEFAMATION
### (AGAINST SVCC, DRS. JOHNSON AND HARKINS, MRS. FEINMAN, AND MR. WOLLENBERG)

194.    The allegations of paragraphs 1-192 are realleged as if fully set forth herein.

184. Dr. Barringer-Brown has been defamed by the statements of Drs. Johnson and Harkins, Mrs. Feinman, Mr. Walker, and Mr. Wollenberg acting for themselves and on behalf of SVCC, specifically referenced and set forth in paragraphs 32-33, 35-37, 42-44, 47-48, 51, 53, 55-56, 76-77, 83-85, 89, 101-104, 108, 113, 115, 141-143, 145, and 153 herein, which statements were published and were made with the intent to defame Dr. Barringer-Brown.

184. Importantly, Drs. Johnson's and Harkins', Mrs. Feinman, Mr. Walker, and Mr. Wollenberg's false and defamatory statements that are referenced herein were published on February 9, 2024, in such a manner as to create an entirely new publication of those statements, even though the original statements were made in 2023. Likewise, Dr. Johnson's and Harkin s', Mrs. Feinman's, Mr. Walker's and Mr. Wollenberg's false, misleading, and defamatory statements were not only published in 2023 as part of the continuing grievance process, Mr. Wollenberg's personal notes mentioned and the purported comments and actions regarding Dr. Barringer-Brown, upon information and belief, has served as the basis for rumors that were circulating as late as June 2024 around the SVCC campus that Dr. Barringer-Brown had been terminated due these

deliberately false accusations and grossly misrepresented statements that had been provided regarding her "performance" and false accusations regarding selected faculty members. at SVCC.

185.  The statements at issue in paragraphs 32-33, 35-37, 42-44, 47-48, 51, 53, 55-56, 76-77, 83-85, 89, 101-104, 108, 113, 115, 141-143, 145, and 153 are false and purport to be statements of fact, not statements of opinion.

186.  Moreover, the false statements at issue all involve defendants' efforts to demean and disparage Dr. Barringer-Brown, to falsely accuse her of unprofessional occupational activities and unfitness to perform the duties of her job and to prejudice her in her profession and trade. Thus, they are defamatory *per se*.

187.  Upon information and belief, the false and defamatory statements made by Drs. Harkins and Johnson were made on behalf of and as agents for SVCC. However, to the extent that the statements were not made on behalf of and as agents for SVCC, these individual defendants are personally liable for any damages arising from these statements.

188.  As a proximate cause of the defendants' conduct, Dr. Barringer-Brown has suffered substantial compensatory damages, including as severe mental and emotional distress, reputational harm, loss of sleep, loss of income, humiliation, embarrassment, loss of time, and other damages.

189. In addition, the statements by these defendants were made intentionally, willfully, and maliciously against Dr. Barringer-Brown and with utter and conscious disregard of her rights. The animosity of Dr. Harkins is already fully noted herein, but Dr. Johnson, Mrs. Feinman, Mr. Walker, and Mr. Wollenberg also harbored animosity toward Dr. Barringer-Brown. Importantly, on September 12, 2023, Dr. Barringer-Brown

made a complaint of discrimination, retaliation, and maltreatment to Dr. Johnson. Dr. Barringer-Brown then received a Letter of Intent to Terminate (Dismiss) three days later in direct retaliation for making the complaint.

190. September 29, 2023, Dr. Johnson told a SVCC board member to "just let the administration held that" when she inquired about the situation referring to Dr. Harkins' and Mrs. Feinman termination of Dr. Barringer-Brown's employment with the college. Here, the evidence in the record shows that Dr. Johnson did not thoroughly review or conduct a full and thorough investigation into Dr. Harkins' actions. Dr. Johnson purposefully denied any mention of the bogus and defective evaluation that Dr. Harkins had presented as being factual in his Consideration of the Appeal dated November 8, 2023, written to Dr. Barringer-Brown. Dr. Johnson failed to address the falsely stated and submitted documents that was used as the basis for Dr. Barringer-Brown's termination from the college. Dr. Johnson relied heavily on Dr. Harkins' and Mrs. Feinman's verbal statements with the absence of any substantiating evidence against Dr. Barringer-Brown before determining to uphold the previous decision to terminate her employment with SVCC. The record shows that Dr. Johnson merely relied upon the verbal statements and recommendations of his white (Caucasian) subordinates, Dr. Harkins and Mrs. Feinman, in making the ultimate decision to terminate Dr. Barringer-Brown's employment with the college. As such, no privileges attach to the statements at issue, mid, as well, Dr. Barringer-Brown is entitled to punitive damages

WHEREFORE, Plaintiff requests this Honorable Court to:

a.      Accept jurisdiction of this case.

b.      Declare that Plaintiff as suffered acts of discrimination and retaliation under Title VII at the hands of SVCC.

c.      As to Counts I and II, award Plaintiff compensation for loss of salary and other benefits, including all fringe benefits, to which she would have been entitled had she not been discriminated and retaliated against as to her employment. Such damages shall be in an amount in excess of five hundred thousand dollars ($500,000), the exact amount to be determined at trial.

d.      As to Counts I and II, award Plaintiff compensatory damages for the humiliation, damage to her reputation, mental and emotional distress, occupational losses, and pain and suffering that she has experienced and endured as a result of the unlawful actions of SVCC. Such damages shall be in an amount in excess of one hundred fifty thousand dollars ($150,000), the exact amount to be determined at trial.

e.      As to Counts I and II, award Plaintiff front pay and back pay in an amount in excess of five hundred thousand dollars ($500,000), the exact amount to be determined at trial.

f       As to Counts I and II, award Plaintiff punitive damages in the amount of five hundred thousand dollars ($500,000).

g.      As to Count III, award Plaintiff one million dollars ($1 million) in compensatory and presumed damages arising from SVCC's defamation;

h.      As to Counts III, award Plaintiff three hundred fifty thousand dollars ($350,000) in punitive damages arising from SVCC's defamation;

1.      Award Plaintiff pre-judgment interest;

J.      Award Plaintiff post-judgment interest;

k.      Award Plaintiff her costs and reasonable attorney's fees; and

I.      Award Plaintiff all such other further and appropriate equitable relief.

**A TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

CHARLETTA BARRINGER-BROWN, PH.D.,

Charletta Barringer-Brown, Ph.D., *Pro Se*
5818 Hereld Green Dr
Chesterfield, VA 23832-4050
(804) 909-2583 (telephone)
Email: charletta.barringer.phd@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24[rd] day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF systems which will send notification of such filing to the following to:

Greer Sanders, VCCS System Counsel
Virginia Bar Number_____
300 Arboretum Place
Suite 200
Richmond, VA 23236

Charletta Barringer-Brown, Ph.D., *Pro Se*
5818 Hereld Green Dr
Chesterfield, VA 23832-4050
(804) 909-2583 (telephone)
Email: charletta.barringer.phd@gmail.com

58