**IN THE UNITED STATE DISTRICT COURT**
**IN THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**



CHARLETTA BARRINGER-BROWN,
PH.D.

          **Plaintiff,**

          **v.**

**VIRGINIA COMMUNITY COLLEGE**
**SYSTEM, AND SOUTHSIDE VIRGINIA**
**COMMUNITY COLLEGE**
          **Defendants.**

**Case No. 3:24-cv-00465-RCY**

**FIRST AMENDED COMPLAINT**

<u>**JURY DEMAND REQUESTED**</u>

Plaintiff, Dr. Charletta Barringer-Brown, by *Pro Se*, for her First Amended Complaint files this pleading within twenty-one (21) days of the Defendants' dated July 31, 2024, Motion to Dismiss pursuant to Rule 12 (b) and in accord with Rule 15 (a) (1) (b), states as follows:

<u>**AMENDED COMPLAINT**</u>

Plaintiff, Dr. Charletta Barringer-Brown, by *Pro Se*, files this Amended Complaint against Defendants, the Virginia Community College System (VCCS), and Southside Virginia Community College (SVCC). The Complaint arises from Defendants' acquiescence, condonation, exacerbation, and ratification of a racially-hostile and discriminatory work environment created by SVCC against Plaintiff and, moreover, Defendants' discriminatory termination of Plaintiff's employment. Plaintiff, thus, claims discrimination, retaliation, common law defamation, and breach of contract pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

In support of this Complaint, the Plaintiff, Dr. Barringer-Brown alleges as follows:

## PARTIES

1.    The Plaintiff, Dr. Barringer-Brown is a black African-American female who was employed as the Dean of Humanities, Social Sciences, and Business, and she was hired at the rank of Professor with SVCC from December 5, 2022 through September 29, 2023.

2.    The Defendant Virginia Community College System ("VCCS") is a state agency of the Commonwealth and administers, controls, governs, and operates the Commonwealth's community colleges and educational institutions throughout the Commonwealth of Virginia.

3.    The Defendant, Southside Virginia Community College ("SVCC") is a state community college and education institution administered, controlled, governed, and operated by VCCS. SVCC's main campus, administration, officers, and employees are located in Alberta, Virginia.

4.    For ease of reference in this Complaint, Plaintiff, Dr. Barringer-Brown references the VCCS, and SVCC collectively as SVCC.

### JURISDICTION AND VENUE

5.    This Court possesses original jurisdiction over the Complaint, pursuant to 28 U.S.C. §§ 1331 and 1343, because the Complaint presents federal questions under Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

6.    This Court possesses supplemental jurisdiction over the Complaint, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

7.    This Court, namely the Richmond Division of the

Eastern District of Virginia, is the proper venue for the Plaintiff, Dr. Barringer-

Brown's Complaint, pursuant to 28 U.S.C. § 1391, because SVCC is located in

Alberta, Virginia and the events below occurred at that location.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.   On September 2, 2023, the Plaintiff, Dr. Barringer-Brown filed

an administrative complaint with the Equal Employment Opportunity Commission "EEOC" for

alleged discrimination and retaliation in violation of the Title VII.

9.   The EEOC drafted the Plaintiff, Dr. Barringer-Brown's charge on

September 25, 2023, against SVCC.

10. The EEOC updated the Plaintiff, Dr. Barringer-Brown's charge on

September 29, 2023, due to an adverse employment action (termination) from SVCC.

11. On September 29, 2023, the Plaintiff, Dr. Barringer-Brown

contacted the Virginia Department of Human Resource Management (VDHRM) regarding access

to the grievance procedure as an administrative faculty member (Dean) at SVCC. The Plaintiff,

Dr. Barringer-Brown was notified by the VDHRM Hearings Program Director, Office of

Employment Dispute Resolution that per section 2.3 of the *Manual*, administrative and

professional faculty do not have access.

12. On October 30, 2023, at the EEOC's request, the charge that the

Plaintiff, Dr. Barringer-Brown filed was identified as appropriate for early mediation. SVCC did

not respond to this request from the EEOC to mediate to resolve the issues with the Plaintiff, Dr.

Barringer-Brown.

13. The Plaintiff, Dr. Barringer-Brown filed a claim for

unemployment through the Virginia Employment Commission ("VEC") on November 2, 2023,

due to wrongful termination from SVCC. A finding of no misconduct was issued by the VEC

and benefits were awarded to the Plaintiff, Dr. Barringer-Brown.

14. On March 26, 2024, the EEOC issued the Plaintiff,

Dr. Barringer-Brown a right-to-sue letter.

15. Accordingly, the Plaintiff, Dr. Barringer-Brown has

exhausted all of the administrative requirements under Title VII.  Therefore, the Plaintiff,

Dr. Barringer-Brown timely filed the Complaint within ninety (90) days of her right-to-

sue letter from the EEOC.

## STATEMENT OF FACTS

16. The Plaintiff, Dr. Barringer-Brown, who is a black, African

American female, who commenced her employment with SVCC on December 5, 2022.

Barringer-Brown was issued a pro-rated one-year contract for the 2022-2023 academic year

dates (December 5, 2022, through June 30, 2023).

17. The Plaintiff, Barringer-Brown was offered and accepted a

second one-year contract for the 2023-2024 (contract dates July 1, 2023 through June 30, 2024)

academic year, which commenced on July 1, 2023.

18. During her employment with SVCC, The Plaintiff, Dr.

Barringer-Brown has received positive feedback from her immediate supervisor,

colleagues, and the community.

19. Barringer-Brown has also never been the subject of

disciplinary action at SVCC.

20. The Plaintiff, Dr. Barringer-Brown satisfactorily served in

various roles as a department chair, dean, program director, project director, and director of

research over the past twenty years. She also taught numerous education, public policy, research methodology, administrative law, administration and supervision courses and was tenured two previous state institutions at the rank of Professor prior to coming to SVCC.

21. Notably in this regard as a testament to Plaintiff, Dr. Barringer-Brown's leadership and achievement in the field, she was a recipient of the State Council of Higher Education of Virginia (SCHEV) Outstanding Faculty Administrator award for 2023. The (SCHEV) Outstanding Faculty Awards are the Commonwealth's highest honor for faculty members and faculty administrators at Virginia's public and private colleges and universities. These awards recognize superior accomplishments in teaching, research, and public service. She was nominated for this prestigious award through her employer immediately previous (VSU) to SVCC in December 2022. This honor was awarded to Barringer-Brown, on December 20, 2022, and presented through SCHEV as of March 7, 2023, after the start of her employment with SVCC.

22. The Plaintiff, Dr. Barringer-Brown was recognized for her accomplishments throughout the Commonwealth of Virginia by U.S. Senator Mark R. Warner. Senator Warner stated in his correspondence dated August 1, 2023, states that,

> *"this honor recognizes your tremendous contributions to the Commonwealth in teaching, research, mentoring, and public service". "(Charletta Barringer-Brown) have greatly contributed to the field of political science and the study of policy analysis through your research endeavors and by training tomorrow's leaders"*

23. On July 1, 2023, Dr. Barringer-Brown was appointed by Governor Glenn Youngkin to the Board of Trustees for Fort-Monroe Authority (2023-2027). She was elected by her committee peers to serve as the Vice Chair of the Cemetery Board for the Commonwealth of Virginia (2022-2023).

24. Also, during this period, Barringer-Brown received awards and honors, including, but not limited to be selected to serve as a member of the National Humanities Center Teacher Advisory Council 2022-2023.

25. In addition to her success as Dean, Plaintiff, Dr. Barringer-Brown's time at SVCC has included other positive contributions. For example, she was widely recognized for her scholarship and expertise in education, public policy studies, and administration particularly with respect to the development of effective data assessments, and monitoring and evaluation of academic programs that focus on student success. Among other things, from December 5, 2022 through September 29, 2023, the Plaintiff, Dr. Barringer-Brown (i) published two peer-reviewed articles in this area, (ii) authored and served as a reviewer for chapters in research methodology textbooks, and (iii) was invited to speak at conferences and workshops on four different occasions during this time frame. Additionally, the Plaintiff, Dr. Barringer-Brown organized and developed a successful training workshop for all adjunct and full-time faculty members held on August 23, 2023, which received positive feedback from faculty, staff, and Drs. Harkins and Johnson. No such training workshop had been organized or held at SVCC since 2016.

26. The hierarchy and the key players at SVCC, at all times during the Plaintiff, Dr. Barringer-Brown's employment were Dr. Keith Harkins, Dr. Quentin Johnson Ms. Bethany Harris, Mrs. Theresa Henderson, Mrs. Shannon Feinman, Mr. Chad Wollenberg, and Mr. Stephen Walker.

27. Dr. Charletta Barringer-Brown was a Dean and served at the rank of Professor in Humanities, Social Sciences, and Business. She possesses a doctoral degree and credentials that exceeded the requirements for the discipline. Dr. Barringer-Brown supervised Humanities, Social Sciences, and Business, which, is noted above.

28. Dr. Keith Harkins was hired as a Vice President of Academic Affairs and Workforce Programs. Dr. Harkins possessed limited experience in academic affairs prior to this position, Dr. Harkins was promoted to the position of Vice President of Academic Affairs and Workforce Programs at the rank of Associate Professor by SVCC President Dr. Quentin Johnson. Dr. Harkins reports directly to Dr. Johnson. He is a white Caucasian male. He does have a doctoral degree.

29. Dr. Quentin Johnson was hired as the President of SVCC in spring 2019. He was Vice President of Student Support Services at Guilford Technical Community College. He is a black African American male. He does have a doctoral degree.

30. When the Plaintiff, Dr. Barringer-Brown began working at SVCC, Ms. Bethany Harris was the Director of Human Resources. Ms. Harris was transferred from the position of SVCC Director of Human Resources, as of March 2023, and reassigned to the title of Director of Department of Corrections Leadership Development and Initiatives until September 2023. She is a white Caucasian female. She does not hold an associate degree. She does not possess a bachelors, masters or doctoral degree.

31. Thereafter, Mrs. Henderson became the SVCC Director of Human Resources. She has been the SVCC Director of Human Resources since that time. Mrs. Henderson is supervised by Mr. Chad Wollenberg. She is a black African American female. She does not hold an associate degree. She does not possess a bachelors, masters or doctoral degree.

32. Mr. Chad Wollenberg, who is the SVCC Chief Information Officer (CIO), was appointed to the position of Interim Vice President of Finance and Administration. This position was created in 2023, and supervises the SVCC Office of

Human Resources. Mr. Wollenberg reports directly to Mrs. Shannon Feinman. He is a white (Caucasian) male. He does not hold a doctoral degree.

33. Mrs. Shannon Feinman who is the Vice President of Finance and Administration. She has authority over the SVCC Office of Human for most of the incidents at issue in this lawsuit. Mrs. Feinman directly supervises Mr. Wollenberg, who is a white (Caucasian) Female. Mrs. Feinman is a cousin of Mr. Stephen Walker. She does not hold a doctoral degree.

34. Mr. Stephen Walker has served as the SVCC Faculty Senate President/Chair and is an Assistant Professor of History in "HSB" for most of the incidents at issue in this lawsuit. Dr. Barringer-Brown supervised Mr. Walker within HSB. Mr. Walker is a white (Caucasian) male, who is Mrs. Feinman's cousin. He does not hold a doctoral degree.

35. On February 28, 2023, Barringer-Brown received a harsh, accusatory, and unfounded email communication from Dr. Keith Harkins "Dr. Harkins". The email was sent to the Plaintiff, Dr. Barringer-Brown while she was on an approved day of partial leave. The email was based on false and inaccurate statements reported directly from Mr. Stephen Walker "Mr. Walker", as the SVCC Faculty Senate President and Assistant Professor of History, to Dr. Harkins. Neither Mr. Walker nor Dr. Harkins sought any clarity directly from the Plaintiff, Dr. Barringer-Brown before Dr. Harkins wrote the accusatory email to her.

36. In that February 28, 2023, email, Dr. Harkins engaged in numerous *ad hominem* and false attacks on the Plaintiff, Dr. Barringer-Brown. Among other things, Dr. Harkins falsely accused Dr. Barringer-Brown of **(i) "Mandating the Use of Cengage"**, (ii) "Limiting faculty hours in the summer "; and (iii) implementing "Faculty Program Leads" without input.

37. Dr. Harkins wrote and sent the email to Dr. Barringer-Brown without first speaking to her about any of the false allegations at issue; and (ii) without attempting to check any of the facts before, which would have been a matter of both protocol and professional courtesy particularly for an employee that had been with SVCC less than 60 working days, at the time of the email was written by Harkins.

38. Dr. Harkins did not meet with or speak to the Plaintiff, Dr. Barringer-Brown face to face on a regular or any consistent basis from December 5, 2022, through September 29, 2023. Although, the Plaintiff, Dr. Barringer-Brown provided Dr. Harkins with her weekly schedule for two campuses (Alberta and Keysville) from December 5, 2022, through September 29, 2023.

39. Mr. Walker had not attended any HSB meetings, or other faculty group activities/feedback sessions, and had not introduced himself to his immediate supervisor, who was the Plaintiff, Dr. Barringer-Brown from December 5, 2022, through May 4, 2023. As well, Dr. Harkins' emails were far harsher to the Plaintiff, Dr. Barringer-Brown than any communication he had ever sent forward to any white (Caucasian) SVCC employees, including the similarly situated white deans and or white faculty members.

40. The Plaintiff, Dr. Barringer-Brown sent an email dated March 2, 2023, to all Humanities, Social Sciences, and Business (HSB) faculty with copies to Dr. Harkins and Mr. Walker. Mr. Walker also received the email as a HSB faculty member. In short, SVCC was aware of the Plaintiff, Dr. Barringer-Brown's situation and the unwelcome and racially-motivated treatment she was experiencing. The Plaintiff, Dr. Barringer-Brown had advised all (HSB) faculty via email as follows: (directly quoted from email: March 2, 2023)

*"As we strive to build transparent lines of positive communication, any issues and or concerns must be shared between you and your dean so that all parties have a clear understanding of any and all expectations that have been communicated. Building a positive working relationship with your dean will only serve to strengthen the HSB unit, as a whole. To avoid circumvention of the dean, and following protocol please make sure that you have communicated with your dean and have addressed your concerns with her. Also, after addressing your questions and or concerns allow the dean time to respond to the issues that have or may be raised before contacting others outside of the HSB such as SVCC faculty senate representatives and or senior level administration".*

41. Dr. Harkins and the SVCC Office of HR advised selected white (Caucasian) faculty members that if they did not feel comfortable with Dr. Barringer-Brown to come to him or the Office of HR. The selected white (Caucasian) faculty members who made claims of being "uncomfortable" with Dr. Barringer-Brown when in fact they had not made any attempt to meet with her or in some cases had not met or even introduced themselves to her before reporting directly to Dr. Harkins or the SVCC Office of HR. Dr. Harkins, SVCC Office of Human Resources did not encourage these selected white (Caucasian) faculty members to follow protocol, chain of command, and or common curtesy with Dr. Barringer-Brown, their immediate supervisor because she is a black African American female. Dr. Harkins scrutinized the Plaintiff, Dr. Barringer-Brown very harshly and did not treat her fairly in comparison to the similarly situated white (Caucasian) deans.

42. The Plaintiff, Dr. Barringer-Brown's reporting of discrimination, retaliation, and defamation to SVCC on May 17, 2023. The Plaintiff, Dr. Barringer-Brown wrote an email to Mrs. Feinman, who also served as the EEO Coordinator for SVCC. The email discussed the Plaintiff, Dr. Barringer-Brown's concerns that the only issues that made selected white (Caucasian) faculty members and staff to include Dr. Harkins uncomfortable" with her were her "immutable" characteristics.

43. The Plaintiff, Dr. Barringer-Brown specifically discussed the

issue of her "immutable" characteristics, which are her color, race, and gender again during the face-to-face meeting held on June 21, 2023, with Mrs. Feinman and Mrs. Henderson on the Keysville campus. The Plaintiff, Dr. Barringer-Brown raised the same issues on several different dates with SVCC. She discussed with Mrs. Feinman, Mr. Wollenberg, and Mrs. Henderson that she was experiencing racial discrimination, retaliation, and defamation because of her color, race, and gender. Moreover, in the law, an immutable characteristic is any attribute considered impossible or difficult to change, such as race, national origin, or gender.

44. The email dated May 17, 2023, that the Plaintiff, Dr. Barringer-Brown sent to Mr. Wollenberg with copies to Mrs. Henderson that addressed Mr. Wollenberg's false and defamatory notes regarding a selected white (Caucasian) faculty member in English had allegedly stated that the Plaintiff, Dr. Barringer-Brown "*looked at her personnel files and made comments about her having previously been in rehab*". The Plaintiff, Dr. Barringer-Brown stated that she had never seen the selected white (Caucasian) English faculty members personnel files and she had never asked to review any such information. The Plaintiff, Dr. Barringer-Brown had no knowledge of any such events. The Plaintiff, Dr. Barringer-Brown pointed out that there was no record of such a request by her nor any evidence presented by the selected white (Caucasian) English faculty member that could substantiate any of her claims. Additionally, in fact, at no point had Plaintiff, Dr. Barringer-Brown been made aware of any such ADA and FMLA claims concerning the selected white (Caucasian) English department faculty member.

45. The selected white (Caucasian) English department faculty member in English made the alleged defamatory statements about the Plaintiff, Dr. Barringer-Brown after she was asked to meet with the Plaintiff, Dr. Barringer-Brown to review faculty expectations. The request to meet with the selected white (Caucasian) English department

faculty member was made by the Plaintiff, Dr. Barringer-Brown due to the alleged personality

conflicts, issues with students (financial aid/work study), and concerns that had been received

from other faculty members in the selected white (Caucasian) English faculty member's

department regarding her alleged behavior.

46. The selected white (Caucasian) English department faculty

member did not respond to the Plaintiff, Dr. Barringer-Brown's email requesting a meeting to

discuss faculty expectations. The selected white (Caucasian) English department faculty

member reported to Dr. Harkins that she felt "intimidated" by the Plaintiff, Dr. Barringer-Brown

before speaking or meeting with her about any issues.

47. On May 17, 2023, the Plaintiff, Dr. Barringer-Brown sent an

email to Mr. Wollenberg with copies to Mrs. Henderson. Additionally, the Plaintiff, Dr.

Barringer-Brown also forwarded a copy of the same email copy to Mrs. Feinman, as stated

below:

> "(Dr. Barringer-Brown) did not feel "safe" or "protected" in any way from this attempt
> of "abuse", "harassment" "defamation of character", and the creation of a "hostile work
> environment" "This lack of protection has made me (Dr. Barringer-Brown) "feel as
> though I am at the mercy of faculty members and any others who wish to add baseless
> distractions to the request to review faculty work performance expectations or other
> related issues within the academic unit of HSB at SVCC". The alleged claims that were
> made against me (Dr. Barringer-Brown) are unethical and without any documented or
> substantiated proof of facts. These are unethical and slanderous acts that may be further
> considered as an attempt to defame my character with malicious intent".

48. Mr. Wollenberg's grossly false and seriously defamatory

"notes" stated that the Plaintiff, Dr. Barringer-Brown had allegedly engaged in

retaliatory measures. SVCC is aware that these allegations were false and unfounded, yet SVCC

presented these statements to the EEOC and other parties, as fact to attempt to defame her

character and to provide a false justification of her termination, in absence of any reprimands

or notice ever issued to the Plaintiff, Dr. Barringer-Brown. These false statements and fabricated events are pretext for discrimination by SVCC.

49. The Plaintiff, Dr. Barringer-Brown contacted Mrs. Feinman SVCC's EEO contact via email; on May 17, 2023, and May 23, 2023, At no point, during the email communications nor the face to face meeting scheduled on June 21, 2023, between the Plaintiff, Dr. Barringer-Brown, Mrs. Feinman, and Mrs. Henderson did SVCC inform the Plaintiff of her rights and responsibilities with respect to her claim(s) of discrimination, retaliation, and or common law defamation. Mrs. Feinman did not attempt to resolve the claim(s). Mrs. Feinman did not provide a written notification of the employee's right to file an administrative discrimination complaint with SVCC. The Plaintiff was not advised how to file a formal EEO complaint with SVCC before or after any adverse actions took place.

50. SVCC violated the VCCS Administrative Faculty Evaluation Policy 3.6.1.4. (a) (iv). SVCC is aware that Dr. Harkins violated the *VCCS Administrative  Faculty Evaluation policy 3.6.1.4. (a) (iv),* Dr. Harkins, as the Plaintiff, Dr. Barringer-Brown's immediate supervisor, must collaborate or negotiate with her as an Administrative Faculty member to set up the performance domains to be evaluated. SVCC falsely stated that, *"on August 2, 2023, Dr. Harkins met with the Plaintiff, Dr. Barringer-Brown and delivered her six-month performance evaluation"*. Dr. Harkins did not deliver a complete evaluation, review, nor did he work collaboratively with the Plaintiff, Dr. Barringer-Brown, on August 2, 2023, before, and or after. It was later brought to the Plaintiff, Dr. Barringer-Brown attention that Dr. Harkins fabricated notes and a second Administrative Faculty Evaluation form that had erroneous dates, missing and inaccurate information, and allegations that were unfounded. Dr. Harkins completed these bogus and defective documents in isolation without any

input from the Plaintiff, Dr. Barringer-Brown. In addition, the intentional misrepresentation of the statements made by SVCC regarding a purported six-month evaluation, the policies, and VCCS for evaluation and notification timeframes, would demonstrate that this is pretext for discrimination.

51. Dr. Harkins handed the Plaintiff, Dr. Barringer-Brown an incomplete and erroneous, a two 1-sided page document on August 2, 2023. The Plaintiff, Dr. Barringer-Brown emailed Dr. Harkins on August 2, 2023, to state that he had given her only two 1-sided pages in his office. Dr. Harkins purposefully did not give the Plaintiff, Dr. Barringer-Brown a full document, nor did he review or collaborate any part of the document in his office, or at any time afterward. The Plaintiff, Dr. Barringer-Brown informed Dr. Harkins that he handed her two pages, he then emailed a document on August 3, 2023, with the same erroneous dates, inaccurate information, allegations that were unfounded with no input or participation from the Plaintiff, Dr. Barringer-Brown in the process. The Plaintiff, Dr. Barringer-Brown and Dr. Harkins discussed her preparation of a self-evaluation then would work together on development of the goals for the performance domains, this was followed up Dr. Harkins via email.

52. Dr. Harkins did not follow up with the Plaintiff, Dr. Barringer-Brown to complete the administrative evaluation process. Dr. Harkins purposely discriminated and retaliated against the Plaintiff, Dr. Barringer-Brown by denying her of due process. Additionally, the policy states that the VCCS Self-Assessment: Evaluation plans must require that evaluative input be provided by the faculty member in the form of a self-assessment. The self-assessment must include analysis of activities within each performance domain as well as progress toward achievement of annual goals. SVCC intentionally omitted including and or reviewing the Plaintiff, Dr. Barringer-Brown's Self-Evaluation, as part of *the VCCS Administrative Faculty*

*Evaluation policy*, which provides documentation of her actual satisfactory job performance and accomplishments during the timeframe of December 5, 2022 through August 9, 2023, when the document was submitted via email to Dr. Harkins, as of August 10, 2023, via email.

53. The Plaintiff, Dr. Barringer-Brown contacted the Virginia Department of Human Resource Management on Friday, August 11, 2023, to question the bogus and evaluation that Dr. Harkins sent to her via email on August 3, 2023, without her input in the evaluation process.

54. Dr. Barringer-Brown was purposefully denied due process in the SVCC Administrative Faculty Evaluation process by SVCC. There was no investigation of the issues, or next steps provided from Mrs. Henderson or Dr. Harkins regarding the Plaintiff, Dr. Barringer-Brown's stated concerns with Dr. Harkins' bogus and defective Administrative Faculty Evaluation. Dr. Harkins' refusal to follow *VCCS Administrative Faculty Evaluation policy 3.6.1.4. (a) (iv)* policy. The Plaintiff, Dr. Barringer-Brown was excluded from the evaluation process by Dr. Harkins, who willfully fabricated two different bogus and defective documents, that accompanied his false and deliberately misrepresented statements.

55. Dr. Harkins false statements, fabricated documents, and denial of due process with the Plaintiff, Dr. Barringer-Brown were not investigated by SVCC. Dr. Harkins and SVCC had treated the Plaintiff, Dr. Barringer-Brown differently based on her color, race, and gender, as a black African American female. The Plaintiff, Dr. Barringer-Brown was retaliated against by SVCC because of her complaints regarding discrimination because of color, race, and gender. She had been denied a fair evaluation process and access to the grievance procedure by SVCC. Dr. Harkins gave intentionally false statements regarding an evaluation that he knowingly had not conducted with the Plaintiff, Dr. Barringer-Brown.

56. The Plaintiff, Dr. Barringer-Brown was denied procedural due process relating to the termination of her employment. Dr. Harkins discriminated and retaliated against the Plaintiff, Dr. Barringer-Brown by deliberately excluding her and denying her the same opportunity for input in the Administrative Faculty Evaluation process, as he provided the white (Caucasian) similarly situated deans.

57. Dr. Harkins' falsely provided July 31, 2020, as the date of the Administrative Faculty Evaluation. The Plaintiff, Dr. Barringer-Brown began her employment with SVCC on December 5, 2022. Dr. Harkins provided the Plaintiff, Dr. Barringer-Brown with a document dated July 31, 2020, as being an evaluation date. Dr. Harkins deliberately provided a false evaluation date of December 21, 2022, as the first evaluation date. The Plaintiff, Dr. Barringer-Brown did not complete an evaluation less than two weeks after her start date of December 5, 2022. SVCC has no documentation to support these intentional misrepresentations of the facts by Dr. Harkins. These are direct examples of some of the discriminatory and retaliatory actions that Dr. Harkins deliberately did in violation to the *Virginia Community College (VCCS) Administrative Evaluation policy (3.6.1.1-3.6.1.9).*

58. Additionally, SVCC falsely provided the date of June 31, 2023, as the date of the evaluation. June 31, 2023, not an actual date. SVCC did not conduct any such Administrative Faculty Evaluation with Dr. Barringer-Brown on any day in December 2022, June 2023, July 2020, and or August 2, 2023, or afterwards. The dates that SVCC provided on the purported "six-month evaluation" are false, incomplete, and highly inaccurate, deliberately erroneous.

59. The Plaintiff, Dr. Barringer-Brown had a brief meeting during the opening SVCC Convocation on August 16, 2023, with Dr. Johnson and Mrs.

Henderson to discuss the bogus and defective performance evaluation emailed and absence of a

formal evaluation, in addition to other concerns regarding lack of support, racial discrimination,

and retaliation from Dr. Harkins and others.

60. The Plaintiff, Dr. Barringer-Brown sent a list of concerns

via email to Mrs. Henderson and Dr. Harkins, as instructed by Mrs. Henderson on the same date

of August 16, 2023.

61. A face-to-face meeting was scheduled for August 22,

2023, to discuss these issues with Mrs. Henderson and Dr. Harkins on the SVCC Keysville

campus. The Plaintiff, Dr. Barringer-Brown specifically outlined in her email dated August 16,

2023, that Dr. Harkins had threated her on July 26, 2023, that he would work with the SVCC

Faculty Senate to issue a vote of "no confidence" against her.

62. The Plaintiff, Dr. Barringer-Brown addressed Dr.

Harkins' violation SVCC personnel evaluation policy (Administrative Faculty). The Plaintiff, Dr.

Barringer-Brown outlined for discussion the first bogus and defective evaluation that Dr.

Harkins had completed in isolation erroneously dated July 31, 2020, emailed August 3, 2023.

Dr. Harkins provided discriminatory, highly inaccurate, incomplete, and grossly false

information and descriptions on a bogus and defective personnel evaluation without agreed upon

goals and objectives being established.

63. During the August 22, 2023, Dr. Harkins did not address

the bogus evaluation he had created in isolation, nor did he discuss the fact that no evaluation,

goals or objectives were collaborated or agreed upon on or before August 2, 2023, and

thereafter. The Plaintiff, Dr. Barringer-Brown and Dr. Harkins had not completed the evaluation

process, he had not reviewed or collaborated on the goals and objectives, and Dr. Harkins had

not reviewed the Plaintiff, Dr. Barringer-Brown's self-evaluation with her, as required per the VCCS Administrative Faculty Policy.

64. Dr. Harkins began an attempt to divert attention from the lack of adherence to the VCCS Administrative Faculty Evaluation policy to a demand for a selected white (Caucasian) student's unwarranted grade change, which was pretext.

65. Dr. Harkins SVCC did not adhere to the 3.6.1.8 Evaluation Cycle and  Frequency of Evaluations in the case of the Plaintiff, Dr. Barringer-Brown, which differed from the treatment of white (Caucasian) similarly situated deans.  The dates provided by SVCC of performance evaluations conducted for the Plaintiff, Dr. Barringer-Brown by Dr. Harkins are grossly false. Dr. Harkins provided falsely stated dates on the bogus evaluation that he created in isolation. The document and the information created by Dr. Harkins is fraudulent and highly inaccurate. According to the VCCS Administrative Faculty Evaluation Policy 3.6.1.8 Evaluation Cycle and Frequency of Evaluations, First-year faculty hired before January 1 should be evaluated during the fiscal year. The Plaintiff, Dr. Barringer-Brown was hired to start on December 5, 2022, which was before January 1. Dr. Barringer-Brown was not evaluated at any point during the evaluation cycle that ends on June 30, as the policy states during her first (1st Year contract pro-rated contract) December 5, 2022, through June 30, 2023.

66. Dr. Harkins did not conduct any such first evaluation on December 21, 2022, as he had deliberately misrepresented this information. The Plaintiff, Dr. Barringer-Brown's evaluation should have occurred approximately mid-way between commencement of employment and the end of the fiscal year; the second evaluation must occur at end of the fiscal year. It is recommended that first-year objectives be established upon commencement of employment.

67. No goals or objectives were ever not established between Dr. Harkins and the Plaintiff, Dr. Barringer-Brown, at any point in her employment with SVCC.

68. The VCCS Administrative Evaluation Policy states that "Notification of Non-reappointment should be provided at least six (6) months prior to termination of employment".

69. The Plaintiff, Dr. Barringer-Brown was issued a second-year faculty contract for 2023-2024 and should have been evaluated in December of 2023, not the false dates provided by Dr. Harkins as occurring in July or August. The objectives for the 2023-2024 academic year should have been established in June 2023.

70. The date of December 21, 2022, that Dr. Harkins provided was deliberately false, no such "first evaluation" or any other evaluation took place between the Plaintiff, Dr. Barringer-Brown and Dr. Harkins that Dr. Harkins approximately 12 calendar days after her start with SVCC. No evaluation took place on June 31, 2023, or any time during the month of June 2023, as Dr. Harkins falsely purports. No evaluation took place on August 2, 2023, between Dr. Harkins and the Plaintiff, Dr. Barringer-Brown as Dr. Harkins falsely states. Thus, "notification of non-reappointment and termination should have been provided at least six (6) months prior to termination of employment". SVCC terminated the Plaintiff's employment on September 29, 2023, which demonstrates disparate treatment toward the Plaintiff, Dr. Barringer-Brown by SVCC.

71. Dr. Harkins created a bogus and defective evaluation due to the Plaintiff, Dr. Barringer-Brown's complaints of discrimination and retaliation against him. In contrast, Dr. Harkins conducted fair and collaborative administrative faculty evaluations with former and current white (Caucasian) similarly situated deans,

demonstrating disparate treatment toward the Plaintiff, Dr. Barringer-Brown, which is pretext.

72. In addition to being excluded from participation in the evaluation process, the Plaintiff, Dr. Barringer-Brown was not provided with the process for any grievance from Mrs. Feinman, or Dr. Harkins about the absence of the proper Administrative Faculty evaluation policies and procedure being followed, as was required according to the VCCS (3.6.1.1-3.6.1.9) policy.

73. SVCC deliberately ignored that the Plaintiff, Dr. Barringer-Brown submitted a self-evaluation document via email attachment on August 10, 2023, per email correspondence. This document contained over seventy-five pages of documentation that supported her excellent work performance and exceeded expectations in comparison to her similarly situated white (Caucasian) peer deans. SVCC has deliberately provided an incomplete document, made false accusations, provided misleading statements, and erroneous dates without any regard for the facts within their allegation of unsatisfactory work performance, and other damaging accusations as a misleading basis of pretext. SVCC has not provided documentation to substantiate their claims and the alleged claims have no basis in fact. Dr. Harkins created an intentionally subpar, incomplete, and factually invalid performance evaluation that was presented to SVCC, EEOC, and other entities in complete disregard to the Virginia Community College System (VCCS) Administrative Faculty Evaluation manual policies and the Southern Association of Colleges and Schools Commission on Colleges "SACSCOC" regulations.

74. SVCC did not provide the Plaintiff, Dr. Barringer-Brown with a written follow up from the August 22, 2023, meeting nor did SVCC provide any notification of the employee's right to file an administrative discrimination complaint with

SVCC. The Plaintiff was not advised how to file a formal complaint or grievance against Dr.

Harkins with SVCC. The Plaintiff, Dr. Barringer-Brown's complaints to SVCC

concerning Dr. Harkins behavior were ignored.

75. Dr. Harkins intentionally failed to address the issue of

the bogus and defective evaluation that was used as basis for the Plaintiff, Dr. Barringer-

Brown's termination in his written response "Notice of Dismissal" dated September 29, 2023

76. Dr. Harkins was the individual that the Plaintiff, Dr. Barringer-

Brown had alleged to have engaged in prohibited conduct at SVCC to the EEOC, SVCC, OSIG,

and VDHRM. Dr. Harkins was aware of the EEOC complaint that was filed by the Plaintiff, Dr.

Barringer-Brown against SVCC, and he was allowed to investigate the issues that he was

alleged to have engaged in and failed to provide an unbiased, fair, and or accurate result in the

determination to terminate the Plaintiff. Dr. Barringer-Brown's employment, based on pretext.

77. A thorough review of the bogus and defective documents

that SVCC presented as a purported Administrative Faculty Evaluation do not support the

disparate treatment that resulted in the termination of the Plaintiff, Dr. Barringer-Brown. A

review of the fabricated documents demonstrates that SVCC did not intend to terminate the

Plaintiff, Dr. Barringer-Brown's employment. The adverse action that was taken against

Plaintiff, Dr. Barringer-Brown was in direct retaliation due to her complaint to Dr. Johnson on

September 12, 2023.

78. Dr. Johnson did not thoroughly review and or investigate the

bogus and defective evaluation dates, missing, and intentionally misleading, inaccurate

information contained within the documents, nor did he consult the appropriate VCCS

Administrative Faculty Evaluation and timeframes for notification of termination polices that

pertained to the Consideration of Appeal. Moreover, Dr. Johnson inaccurately stated in his
response to the Consideration of Appeal that the Plaintiff, Dr. Barringer-Brown did not make
him aware of the EEOC complaint in her initial appeal on September 20, 2023, addressed to Dr.
Harkins. Dr. Johnson was both copied via email and within the initial appeal document
addressed to Dr. Harkins with copies to Mrs. Henderson, Dr. Johnson, and Mr. Alex Wing "Mr.
Wing" with EEOC.

79. SVCC did not sanction Dr. Harkins and Mrs. Feinman for
deliberate violation of the *VCCS Administrative Faculty Evaluation (3.6.1.1-3.6.1.9),* policy in
the Plaintiff, Dr. Barringer-Brown's case, which demonstrates disparate treatment.

80. SVCC submitted fraudulent documents to EEOC, and
others. Dr. Harkins and SVCC have knowingly produced two different copies of an erroneous,
fraudulent, bogus and defective evaluation. The Plaintiff, Dr. Barringer-Brown discovered in
March 2023, that SVCC provided false evidence through a second copy of an Administrative
Faculty Evaluation document that was deliberately fabricated by the Defendant and submitted, as
factual to the EEOC, as part of SVCC's Position Statement dated February 9, 2024. This second
copy differs from the first fabricated bogus and defective document provided to the Plaintiff, Dr.
Barringer-Brown via email on August 3, 2023, which is pretext for discrimination and retaliation
against the Plaintiff, Dr. Barringer-Brown by SVCC.

81. SVCC HR has deliberately disregarded the effect of Dr. Harkins
discriminatory and retaliatory behavior with Dr. Barringer-Brown, who is a black African
American female. After, the Plaintiff, Dr. Barringer-Brown stated in her response to the Letter
of Intent dated September 20, 2023, that Dr. Harkins provided an Administrative Faculty
Evaluation document with the date of July 31, 2020, he then allegedly altered another document

by changing the 07/31/2023, date to 08/02/2023, and added falsified Docu-sign certifications, Docu-sign envelop and date stamps that are fraudulent to the document. Dr. Harkins added a designation of Does Not Meet at the bottom on the second fabricated copy, while still leaving all domain areas that would need to be checked as not meeting blank on the second bogus and defective version. Dr. Harkins provided deliberately false statements that the Plaintiff, Dr. Barringer-Brown "flatly refused to sign the evaluation".

82. Dr. Harkins was aware that this was a grossly false statement. He had not collaborated or completed the VCCS Administrative Faculty Evaluation nor had SVCC followed or adhered to the VCCS Timeframes for Notification process with the Plaintiff, Dr. Barringer-Brown for her to refuse any such document or formal review.

83. Dr. Harkins and Mrs. Feinman violated the VCCS Administrative and Professional Faculty Evaluation Policy (Policy: 3.13). SVCC deliberately failed to provide the Plaintiff, Dr. Barringer-Brown equal access to the VCCS Administrative and Professional Faculty policy evaluation process, as was provided to similarly situated white (Caucasian) deans, which demonstrates disparate treatment of the Plaintiff, Dr. Barringer-Brown.

84. SVCC deliberately denied the Plaintiff, Dr. Barringer-Brown due process according to the VCCS Administrative and Professional Faculty policy (VCCS Policy: 3.13), to appeal the results of evaluation through the Faculty Grievance Procedure (VCCS Policy: 3.13), because Dr. Harkins did not include the Plaintiff, Dr. Barringer-Brown in the evaluation process. As the VCCS Administrative and Professional Faculty Evaluation (VCCS Policy: 3.13) policy states, throughout the appeals process, it will be incumbent upon the

immediate supervisor to provide documentary evidence for the evaluation given to the faculty member.

85. SVCC has provided no such documentation to support their clams that the Plaintiff, Dr. Barringer-Brown was included in the evaluation process on any of the falsely purported dates. SVCC denied procedural due process to the Plaintiff, Dr. Barringer-Brown. There were no remedies or grievance procedure provided to her related to her termination of employment or against Dr. Harkins or of the absence of the VCCS Administrative Faculty Evaluation policy being followed beyond the requested list of her concerns on August 16, 2023, for the incomplete and bogus evaluation that Dr. Harkins had falsely presented, as being factually valid. The Plaintiff, Dr. Barringer-Brown received no follow up after reporting her concerns of discrimination, retaliation, and common law defamation to SVCC on August 22, 2023.

86. No action taken by SVCS on request for discretionary review of grievance. The Plaintiff, Dr. Barringer-Brown sent forward an email dated November 10, 2023, to the VCCS Associate Vice Chancellor, Human Resources per the VCCS Administrative Faculty Evaluation grievance process to review the matter of the discrimination, retaliation, and denial due process for the defective evaluation that was used as basis for Dr. Barringer-Brown's termination. The VCCS Associate Vice Chancellor, Human Resources responded via email with a letter dated November 14, 2023, with the first and last name of the Plaintiff, Dr. Barringer-Brown misspelled that stated,

> *"Southside Community College has retained an independent vendor to investigate your allegations. My Office cannot determine whether discretionary review of your grievance is appropriate until the investigation is concluded. Consequently, I defer a decision on whether my Office will entertain your request for discretionary review until that time".*

87. It is from November 14, 2023, to date, the VCCS Associate Vice Chancellor, Human Resources has not responded or taken any action on the request for review of the consideration for an appeal for discretionary review by the Plaintiff, Dr. Barringer-Brown.

88. The Plaintiff, Dr. Barringer-Brown has no such track record of unsatisfactory performance with any previous employer. The Plaintiff, Dr. Barringer-Brown maintained a satisfactory level of performance and complied with SVCC and VCCS policies, and procedures.

89. The excessively harsh non-progressive disciplinary and adverse actions were taken against her by SVCC were discriminatory and retaliatory because the Plaintiff, Dr. Barringer-Brown exercised her rights to report the workplace wrongdoing and The discriminatory abuses that she had suffered.

90. Dr. Harkins, Mrs. Feinman, Mr. Wollenberg, and Mr. Walker are white (Caucasians) who used threats, personal assaults on the Plaintiff, Dr. Barringer-Brown's character, and intimidation against her. The threats, personal assaults on the Plaintiff Dr. Barringer-Brown character, and intimidation were used in retaliation to her *reporting of unfair treatment* and *unethical acts* at SVCC.

91. Dr. Harkins' *defamation of character* and *wrongful termination* was used to show other black African Americans what would happen to them if, they tried to pursue protected activities within the agency to guard their civil rights.

92. SVCC is aware that the Plaintiff, Dr. Barringer-Brown did not receive any employee disciplinary notices or actions from Dr. Harkins or SVCC prior to complaining to Dr. Johnson on September 12, 2023 about Dr. Harkins' discrimination,

retaliation, and maltreatment of her. The Plaintiff, Dr. Barringer-Brown received no

response from Dr. Johnson after the complaint was made via email on September 12, 2023.

93. Dr. Harkins and Mrs. Feinman purposefully interfered

in the hiring processes in the HSB with the Plaintiff, Dr. Barringer-Brown. Dr. Harkins did

not serve on, or request to chair or co-chair on hiring committees, or make recommendations

with white similarly situated deans at SVCC. Dr. Harkins did not reprimand or seek to terminate

white (Caucasian) similarly situated deans for faculty positions that were left vacant for several

years prior to the Plaintiff, Dr. Barringer-Brown's hire.

Specifically, Dr. Johnson did not seek to terminate Dr.

Harkins or any other white (Caucasian) faculty, staff, similarly situated deans, and or

administrators when positions critical to the mission of the college were left vacant for

years prior to the Plaintiff, Dr. Barringer-Brown's hire in December 2022. The Dean of

Humanities, Social Science, and Business position was vacant for over a year before the

Plaintiff, Dr. Barringer-Brown had even applied in August or September of 2022.  Dr. Johnson

did not seek to terminate Dr. Harkins for leaving this critically important position vacant. The

Plaintiff, Dr. Barringer-Brown was employed with SVCC for ten months, which was less time

than the position has been unfilled in several years.

94. Dr. Harkins did not take non-progressive and adverse

action against the former Dean of HSB, a white (Caucasian) who allegedly left positions both

full-time and part-time vacant prior to the Plaintiff, Dr. Barringer-Brown being

employed with SVCC. SVCC did not seek harsh disciplinary actions against white

(Caucasian) similarly situated deans when far more serious actions that had occurred

regarding faculty and staff hiring.

95. Dr. Harkins stalled hiring processes and made the process to secure individual positions difficult for the Plaintiff, Dr. Barringer-Brown. Whereas, the two white (Caucasian) deans were not subjected to this disparate treatment by Dr. Harkins.

96. For example, Dr. Harkins provided approval for the two similarly situated deans with part-time and full-time support personnel, and a credentialing specialist in Workforce Programs. Dr. Barringer-Brown was not given approval to hire an administrative assistant until April 2023, four months after she started. The administrative assistant for HSB was not hired until May 25, 2023. Dr. Barringer-Brown was a Dean that worked for five months with no day-to-day administrative support designated specifically to HSB.

97. Dr. Barringer-Brown was also credentialing faculty who taught HSB content courses and other cross-over programs, such as Campus without Walls (CWW), Governor's School, and Distance Education, which were not part of her job description. Additionally, Dr. Barringer-Brown certifying all area high school students for graduation enrolled in HSB and DE programs as the "Dean of Instruction", without a full-time administrative assistant designated specifically to HSB.

98. Multiple area school districts in Southside Virginia were sending credentials requests through the Distance Education coordinators and these requests were forwarded to the Plaintiff, Dr. Barringer-Brown's attention to address because they did not have the personnel, which was extremely burdensome and disparate in nature.

99. Dr. Harkins wrongfully acted to circumvent the SVCC (Commonwealth of Virginia) employment process. Dr. Harkins created unadvertised positions for one of the similarly situated white (Caucasian) deans and one white (Caucasian) staff

member to avoid alleged performance difficulties in another division at SVCC. This workplace wrong doing was reported to the Office of the State Inspector General (OSIG). SVCC was advised that the position that Dr. Harkins had created for the similarly situated white (Caucasian) male dean must be formally advertised through the state agency recruitment process. Dr. Harkins had sought to appoint the similarly situated white (Caucasian) male dean to the position that he had created without going through a formal recruitment process.

100. Dr. Barringer-Brown experienced direct interference from Dr. Harkins about hiring within her unit. Dr. Harkins intentionally provided inaccurate and confusing information to her via email and through verbal communication. SVCC struggled with hiring in the academic units for years prior to the Plaintiff, Dr. Barringer-Brown's hire. Dr. Harkins and Mrs. Feinman insisted that she allow selected under credentialed white (Caucasian) faculty members to teach extra courses for overload pay and to hire selected white (Caucasian) part-time and full-time faculty without justification. the Plaintiff, Dr. Barringer-Brown sought to hire a diverse teaching slate of adjuncts that were credentialed to teach within their perspective disciplines.

101. SVCC did not hold white (Caucasian) faculty, staff, and students to the same standards. In some cases, allegedly Dr. Harkins was aware that some white (Caucasian) adjuncts in a particular discipline were being paid more than credentialed full-time black African American faculty members, while teaching in the same discipline, which was highly discriminatory. Dr. Harkins did not take non-progressive or adverse action against a former similarly situated white (Caucasian) dean for these seriously discriminatory actions.

102. Dr. Harkins did not require white (Caucasian) faculty and staff to record or document all leave when absent for significant periods of time with no activity

in their courses. The Plaintiff, Dr. Barringer-Brown discovered during her first week on the job at SVCC that Dr. Harkins had allegedly allowed one terminally ill faculty member to remain on the payroll when he was unable to complete the duties of his job.

103.    The selected white (Caucasian) male Math faculty member was also assigned as the Math assessment coordinator, and according to system records he had not logged in to complete any tasks since 2019, in either the Taskstream assessment system and or the Canvas or Hawks Learning course shell systems. Additionally, allegedly no assignments and or grades were issued throughout the assigned courses by the selected faculty member.

104.    Dr. Harkins did not seek to terminate the selected white (Caucasian) similarly situated dean or interim dean, or the white (Caucasian) faculty member's employment. No sanctions were taken when white (Caucasian) faculty member could not perform his job duties. Dr. Harkins stated to the Plaintiff, Dr. Barringer-Brown that one of the similarly situated white (Caucasian) deans allegedly had the "gradebooks at his house" for the selected faculty member. Dr. Harkins demanded that he handle the assignment of missing grades for this selected white (Caucasian) male faculty member in the Plaintiff, Dr. Barringer-Brown's HSB unit, during the first week of her employment with SVCC during fall 2022.

105.    Dr. Harkins had someone assign grades to the system after selected white (Caucasian) male Math faculty member's untimely death on November 28, 2022, without the Plaintiff, Dr. Barringer-Brown's knowledge or input, who was the Dean in HSB. The selected white (Caucasian) faculty member's family was paid full benefits upon his death, yet allegedly he had not fulfilled the duties of his employment contract during the last several semesters at SVCC.

106.    The Plaintiff, Dr. Barringer-Brown, had not received any notices and or reprimands, and where no requests from the SVCC Faculty Senate had been made for her to meet with them. The reasons given for termination of the Plaintiff, Dr. Barringer-Brown's employment were pretextual in nature. SVCC was aware that there was no failure of the Plaintiff, Dr. Barringer-Brown to meet with the SVCC Faculty Senate leadership. The Plaintiff, Dr. Barringer-Brown had met with Mr. Walker (SVCC Faculty Senate President) at the end of the spring 2023 semester during a scheduled one-on-one meeting in her office on the Keysville campus on sMay 5, 2023. SVCC is aware that nine-month faculty members were off contract time from May 15, 2023 through August 16, 2023, no meetings had occurred or been scheduled upon their return on August 16, 2023, through September 29, 2023. Additionally, no invitations had been extended to the Plaintiff, Dr. Barringer-Brown to attend any SVCC Faculty Senate meetings, as an administrative faculty member (Dean) prior to her termination on September 29, 2023.

107.    The Plaintiff, Dr. Barringer-Brown consistently received disparate treatment at SVCC, as a black African-American female. SVCC did not request, demand, or require any similarly situated white (Caucasian) deans to "meet with SVCC Faculty Senate leadership" in cases where far more serious offenses and conflicts allegedly existed between staff, students, and faculty were known to SVCC.

108.    SVCC used extremely character damaging, grossly false, accusatory terms, such as "DEI hire" "intimidating," "confusing," "non-compliant," "toxic", "unsatisfactory job performance," and "non-transparent." They defamed and falsely accused the Plaintiff, Dr. Barringer-Brown of breaching the confidentiality

of personnel. They stereotypically criminalized and demonized the Plaintiff, Dr. Barringer-Brown's character as a black African American female.

109.    In other words, ordinary prejudice is as much a part of the oppressive equation, that led to SVCC's intentional reporting of alleged false events that are pretext for discrimination, to discredit the Plaintiff, Dr. Barringer-Brown. SVCC retaliated against the Plaintiff, Dr. Barringer-Brown's participation in protected activities within the agency, which led to her immediate adverse action of termination from SVCC. SVCC intentionally acted in bad faith, either in retaliation for the Plaintiff, Dr. Barringer-Brown's reporting of discrimination, retaliation, and maltreatment to Dr. Johnson, and outside entities such as EEOC, OISG, VDHRM, and others.

110.    SVCC practices discriminatory methods of hiring, firing, disparate treatment, and discriminatory personnel actions of black African Americans. Mrs. Feinman's cousin Mr. Walker, racially weaponized the term "DEI" by referring to the Plaintiff, Dr. Barringer-Brown as a "DEI hire", on several occasions. Dr. Harkins threatened the use of the SVCC Faculty Senate, "Mr. Walker", to retaliate against the Plaintiff, Dr. Barringer-Brown for her complaints of discrimination at SVCC. Dr. Harkins allowed unfair and unethical treatment of her due to her race, color, and gender. Mrs. Feinman and Mr. Wollenberg remain in their positions without reprimand for their unethical, unprofessional, and abusive actions.

111.    The Plaintiff, Dr. Barringer-Brown's complaints to SVCC concerning the behavior and actions of Dr. Harkins and other selected white (Caucasian) faculty and staff were ignored.  Even though Dr. Johnson and the Plaintiff, Dr. Barringer-Brown are the same race, he condoned the actions to mask the discrimination perpetuated by Dr. Harkins, Mrs. Feinman, Mr. Wollenberg, and Mr. Walker, who are white (Caucasians). Dr. Harkins and Mrs.

Feinman are the ultimate decision makers at SVCC, Dr. Johnson has allowed the discriminatory and retaliatory actions to continue at the college against black African American females in leadership roles at SVCC.

112.    Dr. Harkins allegedly demanded preferential treatment for a selected white (Caucasian) student regarding an unwarranted student grade change. The issue of the defective evaluation was not resolved during the August 22, 2023, meeting. On August 23, 2023, things got far worse for the Plaintiff, Dr. Barringer-Brown, while at the Estes Center in Chase City, Virginia, Dr. Harkins, demanded an unwarranted grade change for the selected white (Caucasian) student a fourth time during the SVCC faculty training workshop. The Plaintiff, Dr. Barringer-Brown had organized the SVCC faculty training workshop for adjunct and full-time faculty members. The selected student, selected course instructor, and the similarly situated dean were also present. Dr. Harkins was rude and belligerent to the Plaintiff, Dr. Barringer-Brown in front of other adjunct and full-time faculty, and staff members after her refusal to engage in unlawful actions. Dr. Barringer-Brown informed Dr. Harkins that she would file a complaint of discrimination and retaliation against him with the EEOC for his continued discriminatory actions.

113.    SVCC has detailed an intentionally misleading, false, and highly inaccurate narrative as Dr. Harkins states that,

> *"Dr. Barringer-Brown's ruling was based solely on the policy governing the student's timeline for requesting an "I" grade extension and disregarded the student's valid complaint about the faculty member's prolonged unavailability, resulting in nearly a two-week period without communication".*

114.    The Plaintiff, Dr. Barringer-Brown conducted a thorough review of this course, considered the student's performance, the instructor's course communication, and the course expectations (SVCC policies) when deciding this issue. The

student earned a "F" at a fail rate of 39.76% based on unsatisfactory course performance. The instructor posted and graded the assignments as shown in the records in the SVCC CANVAS and Hawkes learning systems. The instructor had allowed the student extra time for completion of assignments. Fully online courses required only virtual office hours due to the 24/7 availability of course material and assignments.

115.    In this situation, Dr. Harkins made demands for unwarranted preferential treatment because the selected mathematics faculty member who was teaching the course is a black African American female. As evidenced in the MTH 154 course record the course instructor was attentive, knowledgeable of the course content, fulfilled her duties, followed the SVCC policies, provided extended time, as suggested, and the selected white (Caucasian) student had earned a "F" grade.

116.    Dr. Harkins was angered and demanded preferential treatment for the selected white (Caucasian) Female student because she is an instructor with SVCC in the Career and Occupational Technology unit under Cosmetology. The Plaintiff, Dr. Barringer-Brown engaged in a fair and transparent process for resolving the grade dispute by verifying the student's grade, her attendance, and logins in the CANVAS and Hawkes learning systems. SVCC Dr. Harkins is aware that there was no need to provide coverage for the online MTH 154 course where the instructor can be anywhere during the summer to teach their course. Nine-month faculty are not required to be on the campus during the summer if the course is online because they are off academic year contract. Instructors determine a schedule of availability for virtual office hours.

117.    Overall, the selected white (Caucasian) student did not

spend the time needed to complete the course activities or assignments to pass the course, which can be evidenced from a review of the course documentation. Dr. Harkins created a highly false and misleading narrative to justify the demand for an improper grade change for the student based on her race and friendship with the white (Caucasian) male Dean of Career and Occupational Technology. Dr. Harkins harassed and retaliated against the Plaintiff, Dr. Barringer-Brown. Dr. Harkins, ultimately terminated the Plaintiff, Dr. Barringer-Brown's employment for two reasons: (i) the Plaintiff, Dr. Barringer-Brown completed a thorough review of selected student's grade appeal and did not take part in workplace wrongdoing by changing the selected student's grade to satisfy his request for preferential treatment based on race on August 22, 2023 and August 23, 2023. (ii), and the Plaintiff, Dr. Barringer-Brown had reported Dr. Harkins' mistreatment, lack of support, discriminatory acts, and retaliation to Dr. Johnson on September 12, 2023.

118.   Dr. Harkins discriminated against the Plaintiff, Dr. Barringer-Brown and  provided different expectations for similarly situated former and current white (Caucasian) deans. Dr. Harkins' was purported to have set relaxed standards and disregard of adherence to program policies for the white (Caucasian) faculty, staff, and administrative faculty members over the entire five-year period of review, which began before the Plaintiff, Dr. Barringer-Brown's employment and continued after her termination from the SVCC. Dr. Harkins is responsible for the oversight of Academic Affairs. The purported lack of adherence to standards and lowered expectations shown by SVCC in the areas of Academic Affairs, regarding the five-year program review has been demonstrated through the notification of areas of weakness within their recent SACSCOC five-year review notification.

119.   The Plaintiff, Dr. Barringer-Brown inquired to Mr.

Wollenberg about the status of her supplemental contract for PHI 220, at approximately 12:30 PM, on September 26, 2023, and received no response to the inquiry from Mr. Wollenberg.

120.   In retaliation for inquiring about her supplemental pay contract on September 26, 2023, the Plaintiff, Dr. Barringer-Brown was notified that she was being placed on Administrative Leave via email at approximately 7:00 PM by Dr. Harkins on September 26, 2023.

114.   As another repercussion to the Plaintiff, Dr. Barringer-Brown's complaints of discrimination, retaliation, mistreatment, and her refusal to provide preferential treatment to the selected white (Caucasian) student, Dr. Harkins retaliated against the Plaintiff, Dr. Barringer-Brown by abruptly removing the her from her service of the PHI 220 course during the sixth week of the eight-week course.

115.   All of these acts of discrimination, retaliation, and common law defamation occurred because the Plaintiff, Dr. Barringer-Brown is a black African-American female, and she refused to engage in workplace wrongdoing. The Plaintiff, Dr. Barringer-Brown was the only black African American female administrator at SVCC. No other white (Caucasian) (administrative faculty) dean or general faculty members had experienced any such severe acts of adverse actions at SVCC under Dr. Harkins' supervision or authority. SVCC is aware that far more serious personnel issues and or situations have been noted to have allegedly occurred, yet no adverse action was taken with similarly situated white (Caucasian) deans. The Plaintiff, Dr. Barringer-Brown was denied any opportunity for success due to the discrimination, retaliation, and mistreatment that she endured from Dr. Harkins. Moreover, SVCC breached the employment contract of the Plaintiff, Dr. Barringer-Brown, as a consequence of participating making these complaints against Dr. Harkins' workplace wrongdoing at SVCC.

116. SVCC is aware they presented grossly false accusations, highly inaccurate statements, and falsified documents, as factual to EEOC, and other entries against the Plaintiff, Dr. Barringer-Brown. The Plaintiff, Dr. Barringer-Brown was shocked when she reviewed SVCC's Position Statement dated February 9, 2024, that contained a copy of "personal notes" from Mr. Wollenberg presented as fact to the EEOC. These "personal notes" of Mr. Wollenberg were written in a discriminatory and retaliatory means against the Plaintiff, Dr. Barringer-Brown with no factual basis. The Plaintiff, Dr. Barringer-Brown did not state or express any of these alleged comments nor did she participate in any of the purported actions that were falsely presented as factual by SVCC.

117. The external investigator hired by SVCC (Ms. Crystal Tyler) "Ms. Tyler" intentionally ignored the Plaintiff, Dr. Barringer-Brown's documentation and choose not address the issue that the VCCS Administrative Faculty Evaluation SVCC did not address the fact that the VCCS Administrative Faculty Evaluation policy, nor the timeframes for notification, non-renewal, and or termination of contract had not been followed.

114. Ms. Tyler purposefully omitted discussion that the Plaintiff, Dr. Barringer-Brown had made complaints via email to SVCC on May 17, 2023, and May 23, 2023,  as a follow up the Plaintiff, Dr. Barringer-Brown met with Mrs. Feinman and Mrs. Henderson on June 21, 2023, and the complaints of "immutable characteristics", "discrimination" "lack of support from immediate supervisor", "not feeling safe in the work environment", and "retaliation" were ignored by SVCC.

115. Ms. Tyler deliberately failed to mention these reports of discrimination and other situations made by the Plaintiff, Dr. Barringer-Brown to SVCC in

the SVCC Position Statement submitted to EEOC, as to build a case for SVCC in crafting an allegedly character damaging narrative against the Plaintiff, Dr. Barringer-Brown to further the deliberately false allegations that were provided by SVCC, as pretext.

116.  In SVCC's Position Statement to EEOC dated February 9, 2024, Ms. Tyler was aware that SVCC had violated the VCCS Administrative Faculty Evaluation policies and refused to address any discussion of the bogus and defective evaluation used a basis for termination of the Plaintiff, Dr. Barringer-Brown's employment.

117.  To add further insult to injury, on behalf of SVCC, Ms. Tyler presented an altered second copy of a falsified bogus and defective Administrative Faculty Evaluation that had dates changed, and a falsified Docu-sign signature that was cut and pasted into the document, false Docu-sign envelop certifications, no verifiable certificate of completion, and differing information from the previous copy bogus and defective copy emailed on August 3, 2023 to the Plaintiff, Dr. Barringer-Brown. This second copy of the falsified bogus and defective Administrative Faculty Evaluation was presented as being factual to EEOC, and others in the SVCC Position Statement dated February 9, 2024.

118.   Ms. Tyler deliberately did not provide discussion of any of the significant faults within the submission of documents that had been presented by SVCC, and forwarded them as being factual. Ms. Tyler, was aware that the purported "six-month" Administrative Faculty Evaluation would demonstrate that the documents were pretextual and there was no intention to terminate the Plaintiff, Dr. Barringer-Brown's employment until after she complained to Dr. Johnson on September 12, 2023, about Dr. Harkins' discrimination, retaliation, and maltreatment toward her.

119.    Ms. Tyler purposefully did not provide the EEOC with the VCCS Administrative Faculty Evaluation manual policies in SVCC's exhibits for their Position Statement dated February 9, 2024. The purposeful omission of the documents by Ms. Tyler on behalf of SVCC would demonstrate their knowledge that the VCCS Administrative Faculty Evaluation and VCCS Timeframe policies were violated by SVCC, in the Plaintiff, Dr. Barringer-Brown's case, as pretext.

120.    In her Response to the Intent to Terminate letter, the Plaintiff, Dr. Barringer-Brown focused primarily on four points. First, she noted the complete lack of merit to the accusations that she had not performed the duties of her job satisfactory. To prove her point, Dr. Barringer-Brown attached (i) Dr. Harkins bogus and defective evaluation, (ii) she included her VCCS Administrative Faculty Self-Evaluation to document her activities while at the SVCC, (iii) and she included email correspondence showing no collaboration took place between Dr. Harkins and the Plaintiff, Dr. Barringer-Brown and her concerns with Dr. Harkins violation of the VCCS Administrative Faculty Evaluation process (iv) and she included the selected student's course record activity with all relevant correspondence. It was through these four documents and others, that the Plaintiff, Dr. Barringer-Brown explained that without a doubt that SVCC violated policies and made grossly false allegations against her.

121. Second, the Plaintiff, Dr. Barringer-Brown noted her total surprise that Mrs. Feinman was present for the July 26, 2023, meeting that was scheduled with Dr. Harkins. The Plaintiff, Dr. Barringer- Brown explained, for example, how Dr. Harkins had not alerted her to any problems until after she complained about his

discriminatory, retaliatory, mistreatment of her on June 21, 2023, to Mrs. Feinman, who is the

SVCC EEO Coordinator.

122.   Third, the Plaintiff, Dr. Barringer-Brown emphasized

how she had *not* been given any previous reprimand or notice by SVCC.

123. Lastly, Dr. Harkins, among other things: (i) threatened

the Plaintiff, Dr. Barringer-Brown with the use of a SVCC Faculty Senate use of a "vote of no

confidence" in the absence of any reprimands and prior notices to her, after her complaints to

SVCC; *(ii)* Dr. Harkins stalled her supplemental contract approval and payment after the August

22, 2023, meeting with Mrs. Henderson; (ii) the Plaintiff, Dr. Barringer-Brown complained

in an email to Dr. Johnson on September 12, 2023, (iii) *within three days,* the Plaintiff, Dr.

Barringer-Brown was issued a "Intent to Terminate" letter from Dr. Harkins. Dr. Harkins had

deliberately excluded the Plaintiff, Dr. Barringer-Brown from the evaluation process. Dr.

Harkins created two different factually invalid bogus and defective performance

evaluations that were fraudulently presented and certified as complete in disregard and violation

to the Virginia Community College System (VCCS) Administrative Faculty Evaluation Manual

Policies and the SACSCOC Ethical standards and regulations. Drs. Harkins and Johnson, and

Mrs. Feinman were workplace wrongdoers.

124.   Dr. Harkins and Mrs. Feinman were the ultimate decision

makers at SVCC in the wrongful termination of the Plaintiff Dr. Barringer-Brown's

employment with SVCC. Dr. Johnson followed the previous actions of Dr. Harkins and chose

not to deviate from the path that Dr. Harkins and Mrs. Feinman had set for the Plaintiff, Dr.

Barringer-Brown.

125. There were other acts of discrimination committed

against the Plaintiff, Dr. Barringer-Brown over and above the discriminatory and defamatory acts described above. Due to Dr. Harkins' violation of the VCCS Administrative Faculty Evaluation timeframes for notification; (ii) and violation of VCCS Administrative Faculty Evaluation policy in the absence of a performance evaluation being conducted; (iii) the Plaintiff, Dr. Barringer-Brown suffered a breach of her employment contract and is owed for the remainder of the contract time period from September 30, 2023 through June 30, 2024, with SVCC.

126.   Finally, as result of SVCC's wrongful termination of the Plaintiff, Dr. Barringer- Brown's employment contract, she suddenly lost her income and employee benefits, which has caused a significant loss of income for her family and personal circumstances, the Plaintiff, Dr. Barringer-Brown has paid attorney's fees, medical and other expenses, to due to date that have been an undue burden to her.

## AFTERMATH

127.   Based on these and other continuing actions, the Plaintiff, Dr. Barringer-Brown has suffered, among other things, financial loss, emotional distress and reputational harm.

## COUNT I

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000c, *et seq.*

(Discrimination)

*128.* The Plaintiff, Dr. Barringer-Brown incorporates and re-asserts fully herein the allegations of paragraphs 1 through 127, *supra.*

129.   Title VII directs, "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire, to discharge any individual, or otherwise

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e- 2(a)(J) (alteration and emphasis added).

130.    Pursuant to the requirements of Title VII, an employer owes an employee a duty to maintain an employment environment that is free from color, race, and gender discrimination.

131.    Moreover, an employer may be liable not only for its own failure to maintain such an environment but also for its acquiescence and ratification of a third party's discriminatory conduct.  An employer may be liable if it knew or should have known of the conduct and failed to take appropriate and prompt remedial actions to end it.

132.    SVCC is an employer under Title VII.  At all times relevant, SVCC acted through its highest-level agents, employees, officials, and supervisors, *supra,* including Dr. Johnson.

133.    At all times, Dr. Barringer-Brown was an employee of SVCC and is protected under Title VII.

134.    Notwithstanding, for the reasons set forth, *supra,* SVCC violated its duty under Title VII by acquiescing and ratifying the racially-discriminatory, retaliatory, and defamatory conduct of Dr. Harkins' against the Plaintiff, Dr. Barringer-Brown, and by discriminating against her through its various actions and inactions.

135.    At all times relevant, SVCC knew and should have known of the extent to which Dr. Harkins was bullying, discriminating and retaliating against, and harassing the Plaintiff, Dr. Barringer-Brown, but it failed to take any appropriate and

prompt remedial action to end Dr. Harkins actions against the Plaintiff, Dr. Barringer-Brown. Indeed, SVCC repeatedly directed the Plaintiff, Dr. Barringer-Brown to "ignore" it or leave. SVCC's actions and inactions, including the adverse employment actions above, occurred because of the Plaintiff, Dr. Barringer-Brown's color, race, gender, and demonstrated animus toward her.

136.    At all times relevant, the above-referenced SVCC employees were acting in the course and scope of their employment with SVCC. Therefore, SVCC is liable for their actions under the doctrine of *respondent superior*. Their actions and inactions, which demonstrate animus toward the Plaintiff, Dr. Barringer-Brown, were committed during work hours, at their place of employment, and were in conjunction with work-related duties.

137.    As a direct and proximate cause of those actions and inactions, the Plaintiff, Dr. Barringer-Brown has suffered and will continue to suffer pecuniary loss, including lost back and front pay, emotional and physical pain, embarrassment, humiliation, mental anguish, reputational damage, shame, loss of enjoyment of life, and other non-pecuniary losses, or non-economic damages.

138.    Any reasons SVCC cites for its actions and inactions, *supra,* the Plaintiff, Dr. Barringer-Brown are pretextual. In fact, at all times, Barringer-Brown was satisfactorily performing in her position of Dean and Professor with SVCC, and no prior adverse history with previous employers. the Plaintiff, Dr. Barringer-Brown met or exceeded all of SVCC's legitimate expectations.

139.    The above-described actions and inactions, including the adverse employment actions above, by SVCC constitute discrimination in violation of Title VII, the Plaintiff, Dr. Barringer-Brown is entitled to all reasonable costs, including

attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

### (Retaliation)

140.    The Plaintiff, Dr. Barringer-Brown incorporates and re-asserts fully herein the allegations of paragraphs 1 Through 139, *supra.*

141.    Title VII's anti-retaliation provision provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because she has opposed any practice made an unlawful employment practice by this subchapter or because she has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."

142.    It is from May 2023 to September of 2023, the Plaintiff, Dr. Barringer-Brown repeatedly complained to SVCC of discrimination, retaliation, defamation, and harassment, concerning Dr. Harkins' conduct, *supra,* and SVCC's ineffective response. In so doing, the Plaintiff, Dr. Barringer-Brown not only opposed conduct in violation of Title VII but participated in proceedings concerning it.

143.    SVCC, through its agents, employees, and officers identified above, were aware of 's situation and complaints concerning the same.

144.    Shortly after and thereafter simultaneously with those complaints, SVCC subjected the Plaintiff, Dr. Barringer-Brown to the series of adverse employment actions above, which included but are not limited to, (a) terminating her employment with SVCC, (b) terminating the Plaintiff, Dr. Barringer-Brown's service in

teaching an eight-week PHI 220 course, and her supplemental pay contract for the course

(adjunct role), (c) breach of her second one-year contract employment contract dated (July

1, 2023 through June 30, 2024, by non-adherence to specified timelines for evaluation,

notification of non-renewal, and or termination.

145.    SVCC would not have taken these adverse

employment actions against the Plaintiff, Dr. Barringer-Brown but for the Plaintiff, Dr.

Barringer-Brown's protected opposition and participation activities alleged above.

146.    Any reasons SVCC cites for adverse employment

actions against the Plaintiff, Dr. Barringer-Brown are pretextual. In fact, at all times, the

Plaintiff, Dr. Barringer-Brown was satisfactorily performing in her Dean position, and met

or exceeded all of SVCC's legitimate expectations.

147.    Here, the Plaintiff, Dr. Barringer-Brown engaged in

protected activities when she reported Dr. Harkins' discrimination, mistreatment, and retaliation

toward her, and filed EEOC Charges regarding SVCC's conduct described herein. SVCC

unlawfully retaliated against the Plaintiff, Dr. Barringer-Brown for engaging in the protected

activities and terminating her employment contract.

148.    As a direct result of the SVCC's retaliation, the Plaintiff,

Dr. Barringer-Brown has been caused to suffer the loss of potential occupational opportunities.

Additionally, the Plaintiff, Dr. Barringer-Brown has been caused to suffer personal injury,

anxiety, emotional distress, personal and professional humiliation and embarrassment as a result

of the SVCC's actions.

149.    SVCC's discriminatory and retaliatory conduct has

prejudiced the Plaintiff, Dr. Barringer-Brown significantly, as she has lost compensation and

benefits, sustained other monetary losses, and suffered the loss of time from an otherwise stellar

career, as a direct result of SVCC's violation of Title VII's anti-retaliation provision.

150.   As a direct and proximate cause of SVCC's conduct, the

Plaintiff, Dr. Barringer-Brown has suffered and will continue to suffer pecuniary loss, including

lost back and front pay, emotional and physical pain, embarrassment, humiliation, mental

anguish, reputational damage, shame, loss of enjoyment of life, and other non- pecuniary loss.

151.   SVCC's actions also constitute gross, wanton, malicious,

reckless, and/or intentional violations of the Plaintiff, Dr. Barringer-Brown's rights, thus

entitling her to punitive damages.

## COUNT III DEFAMATION

The allegations of paragraphs 1-151 are realleged as if fully set forth herein.

152.   Dr. Barringer-Brown has been defamed by the alleged

and purported statements of Drs. Johnson and Harkins, Mr. Walker, and Mr. Wollenberg acting

for themselves and on behalf of SVCC, which statements were published and were made with

the intent to defame Dr. Barringer-Brown.  The statements at issue are false and purport to be

statements of fact, not statements of opinion.

153.   Importantly, SVCC's grossly false and defamatory

statements that are referenced herein were published on February 9, 2024, in the Defendant's

submission of their EEOC Position Statement and included these "Exhibits" in such a manner as

to create an entirely new publication of those statements, even though the original statements

were made in 2023. Likewise, SVCC's false, misleading, and defamatory statements were not

only published in 2023 as part of the continuing grievance process, Mr. Wollenberg and Dr.

Harkins' personally fabricated notes allegedly outlined purported comments and actions

regarding the Plaintiff, Dr. Barringer-Brown, upon information and belief, has served as the basis for rumors that were circulating as late as June 2024 around the SVCC campus that the Plaintiff, Dr. Barringer-Brown had been terminated due these deliberately false accusations and grossly misrepresented statements that had been provided regarding her "performance" and false accusations regarding selected white (Caucasian) faculty members. at SVCC.

154.   Moreover, the false statements at issue all involve defendants' efforts to demean and disparage the Plaintiff, Dr. Barringer-Brown, to falsely accuse her of unprofessional occupational activities, unfitness to perform the duties of her job, and to prejudice her in her profession and trade, as to distract from the actual workplace wrongdoing and violation of VCCS Administrative Faculty Evaluation policies and Timeframes for Notification by SVCC. Thus, they are defamatory *per se.*

155. Upon information and belief, the false and defamatory statements made by Drs. Harkins and Johnson, and Mr. Wollenberg were made on behalf of and as agents for SVCC.

156. However, to the extent that the statements were not made on behalf of and as agents for SVCC, these individual defendants are personally liable for any damages arising from these statements.

157.   As a proximate cause of the defendants' conduct, the Plaintiff, Dr. Barringer-Brown's has suffered substantial compensatory damages, including as severe mental and emotional distress, reputational harm, loss of sleep, loss of income, humiliation, embarrassment, loss of time, and other damages.

158.   In addition, the statements by these defendants were

made intentionally, willfully, and maliciously against the Plaintiff, Dr. Barringer-Brown and

with utter and conscious disregard of her rights. The animosity of Dr. Harkins is already fully

noted herein, but Dr. Johnson, Mrs. Feinman, Mr. Walker, and Mr. Wollenberg also harbored

animosity toward the Plaintiff, Dr. Barringer-Brown. Importantly, on September 12, 2023, the

Plaintiff, Dr. Barringer-Brown made a complaint of discrimination, retaliation, and maltreatment

to Dr. Johnson. The Plaintiff, Dr. Barringer-Brown then received a Letter of Intent to Terminate

(Dismiss) three days later in direct retaliation for making the complaint.

159.   September 29, 2023, Dr. Johnson allegedly told a SVCC

board member to "just let the administration handle that". This alleged statement by Dr. Johnson

referred to Dr. Harkins and Mrs. Feinman when she inquired about the situation referring to the

letter of "Intent to Terminate" the Plaintiff, Dr. Barringer-Brown's employment with SVCC.

160.   The record shows that Dr. Johnson did not conduct a full

and thorough investigation into Dr. Harkins' actions. Dr. Johnson purposefully denied any

mention of the bogus and defective evaluations that Dr. Harkins had presented as being factual

in his Consideration of the Appeal dated November 8, 2023, written to the Plaintiff, Dr.

Barringer-Brown. Dr. Johnson failed to address the grossly misrepresented documents, violation

of policies, the lack of adherence to the timeframes for notice of renewal, termination, and the

falsified evaluation that were used as the erroneous basis for the Plaintiff, Dr. Barringer-

Brown's termination from the SVCC. Dr. Johnson failed to review the disparate treatment and

lack of progressive discipline that was dispensed in the Plaintiff, Dr. Barringer-Brown' case.

161.   In Dr. Johnson's Response to Consideration of the Appeal

dated November 8, 2023, he relied heavily upon erroneous information, inaccurate verbal

statements, discriminatory actions, and faulty recommendations of his white (Caucasian)

subordinates, Dr. Harkins and Mrs. Feinman, in making the ultimate decision to terminate the

Plaintiff, Dr. Barringer-Brown's employment with SVCC. As such, no privileges attach to the

statements at issue, mid, as well, the Plaintiff, Dr. Barringer-Brown is entitled to punitive

damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, Dr. Charletta Barringer-Brown requests this Honorable

Court to render judgment and prays for the following relief against the Virginia Community

College System, and Southside Virginia Community College:

        a.      Accept jurisdiction of this case.

        b.      Declare that Plaintiff has suffered acts of discrimination and
retaliation under Title VII, at the hands of SVCC.

        c.      As to Counts I and II, award Plaintiff compensation for

loss of salary and other benefits, including all fringe benefits, to which she would have been

entitled had she not been discriminated and retaliated against as to her employment. Such damages

shall be in an amount in excess of five hundred thousand dollars ($500,000), the exact amount to

be determined at trial.

        d.      As to Counts I and II, award Plaintiff compensatory damages for

the humiliation, damage to her reputation, mental and emotional distress, occupational losses, and

pain and suffering that she has experienced and endured as a result of the unlawful actions of

SVCC. Such damages shall be in an amount in excess of one hundred fifty thousand dollars

($150,000), the exact amount to be determined at trial.

        e.      As to Counts I and II, award Plaintiff front pay and back pay in an

amount in excess of five hundred thousand dollars ($500,000), the exact amount to be determined at trial.

        f.     As to Counts I and II, award Plaintiff punitive damages in the amount of five hundred thousand dollars ($500,000).

        g.     As to Count III, award Plaintiff one million dollars ($1 million) in compensatory and presumed damages arising from SVCC's defamation;

        h.     As *to* Counts III, award Plaintiff three hundred fifty thousand dollars ($350,000) in punitive damages arising from SVCC's defamation;

        i.     Award Plaintiff pre-judgment interest;

        J.     Award Plaintiff post-judgment interest;

        k.     Award Plaintiff her costs and reasonable attorney's fees; and

        l.     Award Plaintiff all such other further and appropriate equitable relief.

## JURY DEMAND

Plaintiff, Dr. Charletta Barringer-Brown demands a trial by jury, on all issues and reserves the right to amend this Complaint to add new claims and parties as discovery may warrant.

Respectfully submitted,
CHARLETTA BARRINGER-BROWN, PH.D.

08/29/2024

Charletta Barringer-Brown, Ph.D., *Pro Se*
5818 Hereld Green Dr
Chesterfield, VA 23832-4050
(804) 909-2583 (telephone)
Email: charletta.barringer.phd@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2024, I filed the foregoing with the Clerk of the

Court, and I hereby certify that I have mailed by United States Postal Service, emailed the document, and provided process

service to the following:

Noelle L. Shaw-Bell, Associate System Counsel
Virginia Community College System
Virginia Bar Number 40195
300 Arboretum Place
Suite 200
Richmond, VA 23236

Charletta Barringer-Brown, Ph.D., *Pro Se*
5818 Hereld Green Dr
Chesterfield, VA 23832-4050
(804) 909-2583 (telephone)
Email: charletta.barringer.phd@gmail.com

Serve: Virginia Community College System

Noelle L. Shaw-Bell, Associate System Counsel

Virginia Bar No. 40195

300 Arboretum Place

Suite 200

Richmond VA 23236