IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

C. HOPE BARRINGER-BROWN, PH.D.,

    Plaintiff,

v.                                          Case No. 3:24-cv-465

VIRGINIA COMMUNITY COLLEGE
SYSTEM and SOUTHSIDE VIRGINIA
COMMUNITY COLLEGE,

    Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

The Virginia Community College System ("VCCS") hired Plaintiff, C. Hope Barringer-Brown, Ph.D., in hopes that she would serve successfully as a Dean at Southside Virginia Community College. VCCS, however, was forced to terminate its employment relationship with Plaintiff after just nine months, before her probationary term ended, because her performance did not meet their needs and expectations. Plaintiff now maintains that her termination was discriminatory and retaliatory, but the allegations in the Amended Complaint do not plausibly establish either claim. Nor does Plaintiff identify any defamatory statements that are not privileged or protected by sovereign immunity. Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice.

### ALLEGATIONS

**A.**    **VCCS hired Plaintiff in the middle of an academic year.**

On December 5, 2022, VCCS hired Plaintiff to serve as the Dean of Humanities, Social Sciences, and Business ("HSB") at Southside Virginia Community College ("SVCC"). ECF No.

7 ¶ 1. Like all new faculty hires, Plaintiff was placed on a one-year probationary period.[1] Unlike most new hires, however, Plaintiff began her tenure at SVCC in the middle of the academic year, just days before the end of the fall semester. ECF No. 7 ¶ 1. Accordingly, Plaintiff was placed on a one-year prorated contract. *Id.* ¶ 16.

As alleged in the Amended Complaint, Dr. Keith Harkins, who hired Plaintiff and was her immediate supervisor, sent Plaintiff an email on February 28, 2023. *Id.* ¶ 35. In that email, Dr. Harkins noted that there "are a few items I need some clarity on" and expressed a willingness to discuss those items with Plaintiff. Exhibit 2. Dr. Harkins listed the items, which included a plan to limit faculty hours in the summer, a mandate for the use of Cengage, an educational content and technology company, and the designation of certain faculty as "program leads." *Id.* Dr. Harkins expressed concern that each of these plans required more input from the faculty prior to their implementation. He stated, "I appreciate the movement in these areas, but our shared governance mandate requires us to include faculty input in the process. It can be frustrating, but it does provide some relief that you should not and do not have to lead every one of these efforts." *Id.* According to Plaintiff, Dr. Harkins's message was "harsh, accusatory, [ ] unfounded," and engaged in "numerous *ad hominem* and false attacks." ECF No. 7 ¶¶ 35, 36.

Two days later, on March 2, 2023, Plaintiff sent an email to all HSB faculty instructing them not to contact "others outside of the HSB such as SVCC faculty senate representatives and or senior level administration" without first speaking to her. ECF No. 7 ¶ 40; Exhibit 12. Plaintiff

---

[1] *See* VCCS Policy Section 3.04.0.0.b, defining a probationary appointment as the "first year of employment for teaching faculty"; and VCCS Policy Section 3.04.0.5.1.a, noting that "[f]aculty whose initial appointment occurs at any time other than the fall semester must still serve a two semester (fall/spring) probationary appointment." VCCS Policy Section 3.04 is attached as Exhibit 1. Policy 3.04 is a public record and is also fairly incorporated into the Amended Complaint by Plaintiff's express reliance on VCCS's and SVCC's personnel policies. *See, e.g.*, ECF No. 7 ¶¶ 62, 79, 83.

asserts that, as a result of this email, "SVCC was aware of [her] situation and the unwelcome and racially motivated treatment she was experiencing." *Id.* According to Plaintiff, Dr. Harkins and the SVCC human resources staff nonetheless continued to allow staff members to contact them in contravention of her "protocol, chain of command, and or common curtesy [*sic*]." ECF No. 7 ¶ 41.

Subsequently, on May 17, 2023, Plaintiff sent an email to Chad Wollenberg, an SVCC administrator, that was then forwarded to Shannon Feinman, SVCC's Vice-President of Finance and Administration. *Id.* ¶¶ 42, 44; *see also* Exhibit 3. In that email, Plaintiff objected to the discussions conducted during a meeting two weeks earlier among Plaintiff, Wollenberg, and an SVCC faculty member. Exhibit 3. The faculty member raised concerns about Plaintiff, specifically related to compliance with the Americans with Disabilities Act, that Wollenberg attempted to mediate. *Id.* Plaintiff asserted that addressing this human resources issue was "an attempt to defame my character."[2] *Id.* at 2. Plaintiff further stated that she believed the faculty member's "discomfort" with her "may be related to immutable factors." *Id.* Finally, Plaintiff stated that she did "not feel 'safe' or 'protected' in any way from this attempt of 'abuse,' harassment,' 'defamation of character,' and the creation of a 'hostile work environment' to avoid discussion of the actual issues of [the faculty member's] unsatisfactory work performance." *Id.* Plaintiff asserts that she emailed Feinman again on May 23, 2023 about the same issue. ECF No. 7 ¶ 49; Exhibit 4. In that email, Plaintiff complained generally "I am unsupported in my role with SVCC. I feel unsafe in my work environment due to the actions of selected faculty members and others … I demand to be able to perform the duties of my job, without threat of false, defaming,

---

[2] Plaintiff did not deny having made statements about the faculty member's medical history, but merely denied having looked at her personnel file in advance of making such statements. ECF No. 7 ¶ 44; Exhibit 3.

and otherwise slanderous accusations distracting from the tasks that must be completed." Exhibit 4 at 2. Feinman attempted to gather more information about Plaintiff's concerns. *Id.* at 1.

On June 21, 2023, Feinman met with Plaintiff in-person to discuss her concerns. ECF No. § ¶¶ 43, 49. According to Plaintiff, she told Feinman, Wollenberg and Theresa Henderson, SVCC's Director of Human Resources, that she was experiencing "racial discrimination, retaliation, and defamation." *Id.* ¶ 43.

On July 26, 2023, Dr. Harkins allegedly met with Plaintiff to discuss her job performance. *Id.* ¶¶ 61, 121. Plaintiff was allegedly surprised that Feinman also attended this meeting. *Id.* ¶ 121. Plaintiff claims that Dr. Harkins "threatened" her that he would "work with the SVCC Faculty Senate to issue a vote of 'no confidence'" against her. *Id.* ¶ 61.

### B.    Dr. Harkins provided feedback to Plaintiff through a performance evaluation.

Dr. Harkins met with Plaintiff again on August 2, 2023 to deliver and discuss her performance evaluation. *Id.* ¶ 51. The draft version of the document initially provided to Plaintiff contained a typo as to the date. *Id.*; Exhibit 5. Dr. Harkins corrected this typo after his discussion with Plaintiff before electronically signing the document. Exhibit 6.

In the performance evaluation, which was completed just under eight months after Plaintiff was hired and before the beginning of her second semester of employment, Dr. Harkins expressed concern that there had been "notable challenges in fostering a culture of success within [Plaintiff's] division." Exhibit 6 at 1. Dr. Harkins emphasized that "creating an open and approachable environment where staff feel comfortable expressing concerns and seeking input" is "essential." *Id.* Dr. Harkins stated that "staff members have expressed hesitation in approaching [Plaintiff] with problems…" *Id.* Plaintiff was informed that she needs to "exert additional effort in fostering a sense of collaboration and mutual cooperation with her faculty

members." *Id.* at 2. Dr. Harkins "highly recommend[ed] that Dr. Barringer-Brown schedule a meeting with the Faculty Senate Leadership team to address faculty concerns and discuss potential solutions." *Id.* at 2. Finally, Dr. Harkins set out two "objectives" to promote Plaintiff's success in her role, specifically that improve her "visibility, communication, and relationship-building skills," and that she "create a more positive, open, trusting and collaborative relationship with faculty." *Id.* at 3. Dr. Harkins concluded that, at the time of his evaluation, Plaintiff was not meeting expectations. *Id.* at 4.

During the August 2, 2023 meeting, Plaintiff expressed her desire to prepare a "self-evaluation." ECF No. 7 ¶ 51. Dr. Harkins facilitated that request. Exhibit 5. Plaintiff ultimately delivered a 79-page self assessment in which she addressed none of Dr. Harkins's concerns and opined that she "had demonstrated excellent proficiency" and "meets and exceeds expectations" in every performance domain. ECF No. 7 ¶ 73; Exhibit 7.[3]

Plaintiff does not allege that VCCS took any adverse employment action as a result of her performance evaluations.

### C.   Plaintiff's performance did not improve.

Following the exchanges of the performance evaluations, Plaintiff allegedly met briefly with Henderson and SVCC President Dr. Quentin Johnson on August 16, 2023. ECF No. 7 ¶ 59. Plaintiff claims she told Dr. Johnson about the "bogus and defective performance evaluation" and "other concerns regarding lack of support, racial discrimination, and retaliation." *Id.* Plaintiff claims she followed this meeting with a list of "concerns" in an email to Henderson and Dr. Harkins. *Id.* ¶ 60; Exhibit 8. In that email, Plaintiff complained that her performance evaluation

---

[3] At least portions of Plaintiff's self-evaluation appear to have been copied from other sources. *See* Exhibit 7 at 4 ("Dr. Barringer-Brown provides strategic leadership in developing and refining the College's research mission and activities **towards meeting current and future needs in the Paso del Norte region and beyond**.") (emphasis added).

5

was "discriminatory" and that she was being asked for "unreasonable communication levels with faculty." *Id.* Plaintiff did not complain about racial discrimination.

Plaintiff asserts that she next met with Henderson and Dr. Harkins on August 22, 2023. ECF No. 7 ¶ 63. According to Plaintiff, they discussed the topics identified in her August 16 email. *Id.* ¶ 64. Plaintiff states that Dr. Harkins, instead, wished to discuss a potential grade change for a student. *Id.* Plaintiff asserts that she received no written follow-up from this meeting. *Id.* ¶¶ 85, 174.

Dr. Harkins again raised the issue of the grade change in a meeting the following day on August 23, 2023. *Id.* ¶ 112. According to Plaintiff, Dr. Harkins was "rude and belligerent to the Plaintiff [ ] in front of other adjunct and full-time faculty, and staff members after her refusal to engage in unlawful actions." *Id.* Plaintiff allegedly told Dr. Harkins that she "would file a complaint of discrimination and retaliation against him with the EEOC…" *Id.*

Finally, Plaintiff asserts that she complained in an email to Dr. Johnson on September 12, 2023. ECF No. 7 ¶ 123; Exhibit 9. In that series of emails, Plaintiff asked Dr. Johnson for a professional reference. Exhibit 9. Plaintiff stated:

> I am forced to seek a professional opportunity that will serve as a compliment [*sic*] to my background, credentials, skills and level of dispositions, and years of experience. This request for a professional reference is to secure other opportunities due to the on-gong [*sic*] mistreatment, discriminatory, lack of ethical standards, gang/bullying behavior, and limited understanding and experience as an Academic Affairs Officer regarding my immediate supervisor.

Exhibit 9. Plaintiff does not allege that either she or any other person made Dr. Harkins aware of her communication with Dr. Johnson.

On September 15, 2023, Plaintiff received a Letter of Intent to Terminate. ECF No. 7 ¶ 153; Exhibit 10. Plaintiff maintains she received this letter for two reasons: (i) she declined to

engage in "workplace wrongdoing" by changing a student's grade and (ii) she reported "Dr. Harkins' [*sic*] mistreatment, lack of support, discriminatory acts, and retaliation to Dr. Johnson on September 12, 2023." *Id*. ¶ 117. The September 15 letter informed Plaintiff that her performance was unsatisfactory for six reasons:

1. Failure to following the direction of your immediate supervisor

2. Refusal to meet with faculty leadership to improve relationships

3. Failure to resolve performance issues as communicated with you doing your employment and outlined in the 6-month evaluation

4. Failure to hire faculty critical to the college mission

5. Failure to organize coverage of absent faculty and resolve student complaints

6. Failure to maintain a collegial work environment with colleagues at SVCC, leading to an extraordinary level of distrust and broken relationships among faculty and colleagues

Exhibit 10.

Plaintiff was placed on administrative leave on September 26, 2023 and terminated from her position on September 29, 2023. ECF No. 7 ¶¶ 1, 120. Plaintiff allegedly submitted a grievance through the Commonwealth's Department of Human Resource Management. *Id*. ¶ 11. Plaintiff also filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") on September 2, 2023. *Id*. ¶ 8. The EEOC updated the charge on September 29, 2023 due to her termination. *Id*. ¶ 10; Exhibit 11. In the charge, Plaintiff asserted that her termination was the result of her race and her participation in "protected activity." *Id*. at

2. The listed dates of discrimination are September 15-25, 2023. *Id.* at 1. Plaintiff received a right to sue letter on March 26, 2024. *Id.* ¶ 14.

## CLAIMS AND PROCEDURAL POSTURE

Plaintiff filed her initial complaint on June 24, 2024. ECF No. 1. The complaint named SVCC as the sole Defendant. A motion to dismiss was filed, asserting that SVCC is not a legal entity subject to suit as a matter of Virginia law. ECF Nos. 5, 6. Plaintiff responded by filing the Amended Complaint, which names both SVCC and VCCS as Defendants.

The Amended Complaint purports to state three claims. In Count I, Plaintiff claims that she was discharged in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *et seq.* In Count II, Plaintiff asserts retaliation in violation of Title VII. Finally, Plaintiff purports to state a common law claim for defamation under Virginia law. VCCS now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on behalf of both Defendants.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the complaint fails to state a claim upon which relief can be granted. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations omitted).

A court should grant a motion to dismiss where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of

misconduct. *See Iqbal,* 556 U.S. at 678–79. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See id.* at 678. To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Moreover, the law is clear that in considering a motion to dismiss pursuant to Rule 12(b)(6), "[courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).  Documents that are explicitly incorporated into the Complaint by reference and those attached to the Complaint as exhibits may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c). The Court may also consider documents integral to the Complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.* Finally, the Court may take judicial notice of matters of public record. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F. 3d 500, 508 (4th Cir. 2015) (noting that a court does not convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records). Under this exception, courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint. *B.H. Papasan v. Allain*, 478 U.S. 265, 283 (1986).

Here, Plaintiff asserts that she complained of "discrimination" is a series of emails exchanged with VCCS staff. Therefore, these emails, as well as the performance evaluations to

which Plaintiff points to support her claim, are integral to the Amended Complaint and properly considered as part of the pleadings for the purposes of evaluating a motion to dismiss.

## ARGUMENT

**I.     SVCC should be dismiss because it is not a legal entity subject to suit.**

Plaintiff purports to name both VCCS and SVCC as Defendants in this action. But SVCC is not a proper party to this litigation or any litigation because it is not subject to suit under the Virginia Code.

SVCC is one of the colleges that comprise VCCS. ECF No. 7 ¶ 2. The Code of Virginia recognizes VCCS as the operating name of the State Board of Community Colleges ("the State Board"), which is a public body corporate created by the General Assembly. Va. Code § 23.1-2901. The State Board is charged with establishing "policies providing for the creation of a local community college board for each comprehensive community college established under this chapter and the procedures and regulations under which such local boards shall operate." Va. Code § 23.1-2904(4). As the governing board of an institution of higher learning under Virginia law, the State Board has, among others, the power to "[m]ake regulations and policies concerning [VCCS]," and "[a]ppoint professors and fix their salaries." Va. Code § 23.1-1301.

In federal court, where a defendant is not an individual or corporation, the capacity to be sued is determined by state law. *Frye*, 2023WL4670332, at *2 (citing Federal Rule of Civil Procedure 17(b)(3)). And, as outlined above, Virginia law does not recognize SVCC as a separate legal entity. Instead, the Virginia Code establishes the State Board, known as VCCS, and empowers it as the body corporate to operate the Commonwealth's system of community colleges.

> The [General Assembly] created the State Board of Community Colleges to establish, control, and administer the Community

> College System. The legislature did not specifically designate the individual community colleges or grant them any powers, specifically the power to sue or be sued. Therefore, any suit against [SVCC] must be brought against the Commonwealth.

*Goff v. J. Sargeant Reynolds Cmty. Coll.*, 68 Va. Cir. 382, 383 (2005); *see also Vergès v. Va. Highlands Cmty. Coll.*, No. 1:16-CV-5, 2016 U.S. Dist. LEXIS 68546, at *10 (W.D. Va. May 25, 2016) ("A separate statute requires the creation of a local community college board for each college… There is no Virginia statute specifically creating [SVCC] or granting it the right to sue and be sued.").[4]

Similarly, a court in the Eastern District of Virginia has held that a related institution, Thomas Nelson Community College, is not an "independent legal entit[y] with the power to sue or be sued." *Brown v. Thomas Nelson Cmty. Coll.*, No. 4:20-cv-7, slip op. at *6 (E.D. Va. Jan. 13, 2021) (citing *Goff*, 68 Va. Cir. at 383; *Blevins v. Suarez*, No. 4:08-cv-14, 2008 U.S. Dist. LEXIS 80339, at *21, n.9 (W.D. Va. Oct. 10, 2008). *Accord Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (explaining that a college's board of trustees, rather than the college, was the proper defendant in a Title VII action where Maryland statutes designated the board of trustees as an employer, the board of trustees was legally identical to the college, and the board of trustees, unlike the college, was authorized to sue and be sued).

Virginia law is clear that SVCC is not a separate legal entity for purposes of Virginia law. It should be dismissed as a Defendant in this suit with prejudice.

**II.     To the extent Plaintiff advances claims for a hostile work environment or gender discrimination, she did not exhaust her remedies.**

According to Plaintiff, she submitted a charge that was "updated" by the EEOC on September 29, 2023 to reflect her termination. ECF No. 7 ¶ 10. The charge, which Plaintiff signed on

---

[4] Since *Goff* and *Vergès*, the Virginia General Assembly has repealed and re-enacted the statutory framework for community colleges. *See* Va. Code § 23.1-2900, et seq. The new statutory framework also does not create a cause of action against a community college.

October 3, 2023, asserts discrimination based on "Retaliation," with dates of discrimination between September 15, 2023 and September 25, 2023 as a "continuing action." Exhibit 11 at 1. In the charge, Plaintiff asserted that she "complained" to Dr. Johnson about discrimination "[i]n or around August of 2023" and later received a letter of "intent to terminate employment." *Id.* Plaintiff listed the reasons stated on the letter for her termination and asserted "I believe my pending discharge is due to participating in legally protected activity and my race-black…" *Id.* at 1-2.

As the Fourth Circuit affirmed in *Chacko v. Patuxent Institution*, if "'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). The Fourth Circuit's decision "make[s] clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if [her] charge alleges discrimination on one basis—such as race—and [s]he introduces another basis in formal litigation—such as sex." *Id.* (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). "A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996)).

In her charge, Plaintiff does not assert discrimination as a result of a purportedly hostile working environment or as a result of her gender. Plaintiff's allegations focused solely on her termination—namely that that she was discharged because of protected activity and because of her race. Having failed to pursue administrative relief for any claim related to a hostile work environment and gender, Plaintiff did not exhaust her administrative remedies and cannot proceed.

**III.    Plaintiff does not state a claim for discriminatory discharge.**

In Count I of the Amended Complaint, Plaintiff asserts a claim for "Discrimination" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  Here, Plaintiff's allegations do not establish that her job performance was satisfactory or that she was treated differently from similarly situated employees.

Plaintiff generally asserts that her performance exceeded expectations and, to support that assertion, she points to her own 79-page self-evaluation. But the mere volume of Plaintiff's assertions about herself do not make them any less conclusory. Dr. Harkins facilitated Plaintiff's self-evaluation at her request, but Plaintiff's submission did not even acknowledge the concerns Dr. Harkins listed in his own evaluation of her performance. Those concerns included Plaintiff's need to improve her "visibility, communication, and relationship-building skills" and to "create a more positive, open, trusting and collaborative relationship with faculty."[5] Exhibit 6 at 3. Instead, Plaintiff ignored Dr. Harkins's evaluation on the premise that it was "bogus and defective," ECF No. 7 ¶ 50, and asserted that his requests for improved communication with the

---

[5] Developing effective communication and a strong relationship with the faculty was a core responsibility of Plaintiff's position. Moreover, an employee's poor demeanor and interactions with coworkers in the workplace is a proper, nondiscriminatory consideration for employers. *See, e.g.*, *Montgomery v. Ruxton Health Care, IX, LLC*, No. 3:06-cv-024, 2007 WL 1229708, *5 (E.D. Va. Apr. 26, 2007) (finding no discrimination where the plaintiff was terminated as a result of her negative attitude, which failed to meet the employer's legitimate expectations); *Barnes v. Charles County Public Schools*, 747 Fed. Appx. 115 (4th Cir. 2018) (observing that Plaintiff only received adverse employment action after multiple reports related to work performance and negative attitude); *Brown v. Pulaski County Bd. of Educ.*, 263 Fed. App. 842, 843 (11th Cir. 2008) (observing that a discourteous attitude and demeanor were proper, nondiscriminatory reasons to terminate an employee).

faculty were "unreasonable." Exhibit 8. "[W]hether an employee has met h[er] employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker[,] . . . not the self-assessment of the plaintiff." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)); *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). The employer's opinion of the employee's performance, not the employee's own opinion, establishes this element of the *prima facie* case. *Asip v. Chesterfield County School Board*, No. 3:18-cv-261, 2019 WL 495584, at *3 (E.D. Va. Feb. 8, 2019) (citing *Blanch v. Hexagon U.S. Fed., Inc.*, No. 1:17-cv-613, 2018 WL 4997644, at *6 (E.D. Va. Oct. 15, 2018)).

In fact, Plaintiff does not allege that she made any of the improvements requested by her direct supervisor in her performance evaluation. She does not allege that she increased her efforts to improve communications with the faculty. She even acknowledges that she never met with the Faculty Senate Leadership and offers only that she had received no "invitation" to meet with faculty members who were her subordinates. ECF No. 7 ¶ 106. Accordingly, Plaintiff's allegations support—at a minimum—the first three performance-related issues listed in the September 15 Notice of Intent to Terminate. Exhibit 10. Plaintiff has not alleged sufficient facts—beyond her own conclusory opinion—to show that she was meeting VCCS's expectations at the time of her termination.

In addition, Plaintiff does not allege facts showing that she was treated differently from similarly situated employees outside her protected class. Plaintiff generally alleges that she was treated differently that "similarly situated white (Caucasian) deans." *See, e.g.*, ECF No. 7 ¶¶ 39, 107. Plaintiff does not identify these allegedly similarly situated individuals or explain how their circumstances were similarly situated to her own. As the Fourth Circuit has repeatedly observed,

14

for the purposes of Title VII, the proposed comparator must not just be similar in some respects, but rather must be similar **in all respects**." *Spencer v. Virginia State University*, 919 F.3d 199, 207 (4th Cir. 2019) (emphasis in original). *See also Tinsley v. City of Charlotte*, 854 Fed. Appx. 495, 500 (4th Cir. 2021). That is, "a plaintiff is required to allege that he is 'similar in all relevant respects to [her] comparator,' meaning that they had the 'same supervisors, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Walker v. Regan*, No. 1:21-cv-312, 2023 WL 6224635, at *7 (E.D. Va. Sept. 22, 2023).

Here, Plaintiff generally asserts treatment different from similarly situated white employees. But Plaintiff includes no additional facts—including whether those employees were on probation, began employment in the middle of an academic year, or ignored a supervisor's entreaties to meet with subordinates—to support that claim. Plaintiff's allegation is no more than a conclusory assertion of one of the legal elements of her claim and is, therefore, not sufficient to state a claim as a matter of law.

Plaintiff's allegations are not sufficient to establish either satisfactory performance or differential treatment. Plaintiff, therefore, does not state a claim for relief in Count I and it should be dismissed with prejudice.

## IV.    Plaintiff does not state a claim for retaliation.

Count II of the Complaint advances a claim for retaliation.  Title VII prohibits employers from discriminating against any of their employees because the employees have "opposed any practice made an unlawful employment practice by [Title VII]," or because the employees have "participated in any manner in an investigation" under Title VII.  "The elements of a *prima facie* retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse

employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. Plaintiff fails to meet both the first and third elements of this *prima facie* case.

First, Plaintiff does not allege facts showing that she engaged in a protected activity. Title VII's Opposition Clause "prohibits retaliation against an employee who has 'opposed any practice **made an unlawful employment practice**' by Title VII." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added). The Supreme Court has broadly defined "opposed," such that "when an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Id.* (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)).

The oppositional activity, however, "**must be directed to 'an unlawful employment practice.'**" *Id.* (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added). It is on this point that Plaintiff's allegations fail. Here, Plaintiff claims that her protected activity occurred on occurred on September 12, 2023 when she emailed Dr. Johnson requesting a professional reference.[6] ECF No. 7 ¶ 117. But Plaintiff's email to Dr. Johnson did not complain of incidents constituting racial discrimination. Instead, Plaintiff stated that she was seeking other employment opportunities "due to on-gong [*sic*] mistreatment, discriminatory, lack of ethical standards, gang/bullying behavior, and limited understanding and experience as an Academic Affairs Officer regarding my immediate supervisor." Exhibit 9. But general complaints about the working environment are

---

[6] Plaintiff also claims that she was terminated for refusing to engage in "workplace wrongdoing" by declining to change a student's grade when requested by Dr. Harkins. Plaintiff's objections to "workplace wrongdoing" are not objections to employment practices made unlawful by Title VII and, therefore, cannot form the basis of her retaliation claim. *DeMasters*, 796 F.3d at 416.

not sufficient to demonstrate opposition to an employment practice made unlawful by Title VII. *Lucas v. Intercept Youth Servs., Inc.*, No. 3:23-cv-19-RCY, 2023 WL 3437812, at *5 (E.D. Va. May 12, 2023). *Accord Mixon v. Charlotte-Mecklenburg Sch.*, 3:11-cv-228, 2011 WL 5075808 (W.D.N.C. Aug. 5, 2011) ("A mere complaint of harassment or discrimination in general, without any connection to a protected class, is insufficient."); *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general bad acts statute … and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII.").

Here, Plaintiff's objections to "mistreatment" and "discriminatory" are not sufficient to show that she engaged in protected activity on September 12, 2023. And even were the Court to consider other instances in which Plaintiff claims to have complained about her circumstances at SVCC, each constituted a general complaint about "conditions" that was insufficient to show protected activity under Title VII. *See* Exhibit 4 at 2 ("I am unsupported in my role with SVCC. I feel unsafe in my work environment due to the actions of selected faculty members and others … I demand to be able to perform the duties of my job, without threat of false, defaming, and otherwise slanderous accusations distracting from the tasks that must be completed."); Exhibit 8 (complaining that her performance evaluations was "discriminatory" and that she was being asked for "unreasonable communication levels with faculty"). None of these communications amounts to protected activity. Plaintiff's general complaints about "discrimination" did not provide notice to VCCS or its staff that Plaintiff believed she was being subjected to actions that were racially discriminatory. And having failed to allege such a communication to her supervisors at VCCS, Plaintiff does not state a claim for retaliation.

Similarly, Plaintiff does not show that her alleged protected activity caused her termination. Plaintiff does not demonstrate that Dr. Harkins—her immediate supervisor who made the decision to terminate her employment—knew she had complained to Dr. Johnson on September 12, 2023. As alleged by Plaintiff, because Dr. Harkins did not know of any "protected activity" by Plaintiff at the time he terminated her, that alleged activity could not have caused her termination. *See Conrad v. CSX Transportation, Inc.*, 824 F.3d 103 (4th Cir. 2016) (holding that an employer did not know of alleged protected activity and, therefore, could not have engaged in retaliation for that protected activity); *Barnes v. Charles County Public Schools*, 747 Fed. Appx. 115 (4th Cir. 2018) (observing that the plaintiff presented no evidence indicating her supervisor was aware of protected activity). Moreover, for the reasons outlined above, *supra* § III, Plaintiff's termination was caused by her failure to meet her employer's expectations for her job performance at the time of her termination. Plaintiff, therefore, has not stated a claim for retaliation in Count II, and it should be dismissed.

## V.     Plaintiff has not stated a claim for defamation.

Plaintiff's third cause of action purports to state a common law claim for defamation under Virgnia law. But VCCS has sovereign immunity from Plaintiff's common law tort claim. And even if it did not, the only statements attributed to VCCS or SVCC in the Amended Complaint are privileged as a matter of law. Finally, Plaintiff does not identify any alleged statement *in haec verba* sufficient to state a claim for defamation as a matter of Virginia law.

### A.     VCCS has sovereign immunity from Plaintiff's tort claim.

Sovereign immunity is alive and well in the Commonwealth of Virginia. *Messina v. Burden*, 228 Va. 301, 307 (1984). "It is an established principle of sovereignty, in all civilized nations, that a sovereign state cannot be sued in its own courts, or in any other, without its consent and permission." *Board of Public Works v. Grant,* 76 Va. 455, 461 (1882). "Sovereign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." *Moreau & Assoc.'s, Inc. v. Health Center Comm'n for the County of Chesterfield*, 283 Va. 128, 137 (2012) (quotation omitted).

"Absent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *The Rector and Visitors of the University of Virginia v. Carter*, 267 Va. 242, 244 (2004). Even the Virginia Tort Claims Act, Va. Code § 8.01-195.1, *et seq.*, contains no express waiver of the sovereign immunity of the Commonwealth's agencies. *Id.* Accordingly, agencies of the Commonwealth have sovereign immunity from any common law tort claim, including defamation. *See, e.g.*, *Campbell v. Bd. of Sup'rs of Charlotte Cnty.*, 553 F. Supp. 644, 645 (E.D. Va. 1982) (holding that a board of supervisors was immune from a claim for defamation); *Lohdi v. Fairfax Cnty. Bd. of Sup'rs*, No. 1:12-CV-1108 JCC/JFA, 2012 WL 6691539, at *4 (E.D. Va. Dec. 21, 2012) (holding that county and board of supervisors are immune from claims for defamation).

Here, the only defendants Plaintiff purports to name in this action are VCCS and SVCC. As outlined above, SVCC is not an entity subject to suit. And VCCS, in turn, has sovereign immunity from Plaintiff's tort claim. Count III should be dismissed.

**B.      Any allegedly defamatory statements are privileged as a matter of law.**

Even were Plaintiff able to sue VCCS on a theory of common law defamation, the only statements on which Plaintiff appears to rely to support her defamation claim were privileged. Specifically, Plaintiff contends that VCCS's position statement to the EEOC, as well as the attached exhibits, were "grossly false and defamatory." ECF No. 7 ¶ 153. Although VCCS denies having included any false representations in its position statement or exhibits, those statements were privileged as a matter of law and cannot be the foundation of a defamation claim.

Courts throughout the Fourth Circuit have concluded that proceedings before the EEOC are quasi-judicial in nature. *See, e.g.*, *Swindell v. Charlotte-Mecklenburg Bd. of Ed.*, No. 3:21-cv-676, 2024 WL 2855593, at *4 (W.D.N.C. June 5, 2024); *Smith v. DuPont Specialty Products USA, LLC*, No. 3:23-cv-292, 2023WL7703470, at *4 (E.D. Va. Nov. 15, 2023); *Folio v. Alorica, Inc.*, No. 1:22-cv-109, 2023 WL 3964104, at *3 (N.D.W. Va. May 16, 2023). Moreover, "'[a]bsolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body.'" *Smith*, 2023WL7703470, at *4 (quoting *Lindeman v. Lesnick*, 268 Va. 532, 537 (2004)). "A defendant may therefore claim absolute privilege over statements that are 'relevant to the subject matter of the proceedings.'" *Id.* (quoting *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 797, 803 (E.D. Va. 2003)).

In *Smith*, the court reasoned that an absolute privilege applied to a defendant's statements in an EEOC position statement:

> The defendant in this case responded, as ordered by the EEOC, to a claim of discrimination filed by the plaintiff. The defendant had an obligation to respond, as well as a right to defend itself from the charges brought against it. Thus, the defendant should be entitled to protection from a claim of defamation. Finally, the plaintiff initiated these proceedings by filing a charge of discrimination

> against the defendant. As such [s]he impliedly consented to the
> defendant's use of the evidence supporting [her] termination… The
> Court finds that the written words in [a] position statement to the
> EEOC are absolutely privileged.

*Smith*, 2023WL7703470, at *4.

The same analysis should apply here. Plaintiff appears to maintain that VCCS and its staff defamed her in defending itself before the EEOC. No VCCS employee made any false statements to the EEOC, but even if that had occurred, those statements are entitled to an absolute privilege as a matter of law. And because Plaintiff relies solely on those statement to support her defamation claim, Count III of the Amended Complaint should be dismissed.

### C.    Plaintiff's allegations do not satisfy the elements of a defamation claim.

Finally, Plaintiff's allegations do not satisfy the threshold elements of defamation claim under Virginia law. To allege defamation in Virginia, a plaintiff must show: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015). Here, Defendants are unable to analyze Plaintiff's claims as to the first and third elements because her allegations as to the second element are so insufficient. That is, the Amended Complaint does not clearly identify what statements made by VCCS or SVCC were actionable as defamation.

Plaintiff generally objects that VCCS's employees made certain "false statements … to demean and disparage [her], to falsely accuse her of unprofessional occupational activities, unfitness to perform the duties of her job, and to prejudice her in her profession and trade…" ECF No. 7 ¶ 154. Virginia law, however, requires that defamatory statements be pled with particularity. "Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba.* Indeed, the pleading must go further—that is, it must purport to

21

give the exact words." *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, (2003) (quoting

*Fed. Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 3 S.E.2d 405, 410 (1939)).

Here, Plaintiff does not allege the element of publication because she does not expressly identify the statements—other than the privileged statements made to the EEOC—on which she relies to support her claim. Nor does Plaintiff allege the requisite level of "intent," as the only statements to which she points were those made to the EEOC in defense of Plaintiff's charge of discrimination. Plaintiff's failure to expressly identify the purportedly "defamatory" statements undermines her ability to sufficiently allege any of the remaining elements of common law defamation under Virginia law.

## CONCLUSION

For the reasons outlined above, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

> **VIRGINIA COMMUNITY COLLEGE**
> **SYSTEM AND SOUTHSIDE**
> **VIRGINIA COMMUNITY COLLEGE**
>
> By Counsel

 /s/ _____
Blaire H. O'Brien (VSB No. 83961)
Counsel for Southside Virginia Community College
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
bobrien@hccw.com

# **C E R T I F I C A T E**

I hereby certify that on the 3rd day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following:

Dr. Charletta Barringer-Brown
5818 Hereld Green Dr.
Chesterfield, VA 23832
Charletta.barringer.phd@gmail.com

/s/
Blaire H. O'Brien (VSB No. 83961)
Counsel for Southside Virginia Community College
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
bobrien@hccw.com