

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

C. HOPE BARRINGER-BROWN, PH. D,

*Plaintiff*

vs.

VIRGINIA COMMUNITY COLLEGE
SYSTEM, and SOUTHSIDE VIRGINIA
COMMUNITY COLLEGE

*Defendant*

Case No. 3:24-cv-465

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff C. HOPE BARRINGER-BROWN, PH.D. (hereinafter "Plaintiff") *pro se*, files

this Response to Defendant's Motion to Dismiss Amended Complaint. Plaintiff states as follows:

### I. Response to Defendant's factual allegations

#### i.    Plaintiff was not a "teaching faculty" member

First, the Defendant states that the "Plaintiff was placed on a one-year probationary

period". The Defendant proceeds to cite VCCS Policy Section 3.04.0.0.b, which defines a

probationary appointment as the "first year of employment for "teaching faculty. The Defendant

has purposefully provided the court with false information. The Plaintiff was not a "Teaching

Faculty" member nor was she placed on a "teaching faculty" one-year probationary period. The

Defendant has also erroneously stated that the Plaintiff, "fairly incorporated VCCS's and SVCC's

---

1 See Defendants *Exhibit* 1, *VCCS Policy Section 3.04.0.0.b*, defining a probationary appointment as the "first year of employment for teaching faculty"; In their Motion, the Defendant has wrongly applied the *VCCS Policy Section 3.04.0.0.b*, to the Plaintiff. The Plaintiff was an "Administrative Faculty" (Academic Dean), not a "Teaching Faculty", see Plaintiff's *Exhibit* A and *Exhibit* B, which falls under *(VCCS Policy Section 3.04.0.0.c)* received second *One-year 12-month contract effective July 1, 2023 through June 30, 2024 (Administrative Faculty).*

3.04 "Teaching Faculty" personnel policies in her original and Amended Complaint, which is a gross misrepresentation of the facts.

Second, the Plaintiff notes that she was not hired as a "Teaching Faculty" member, as the Defendant deliberately misleads. The Plaintiff was hired as an "Administrative Faculty" member (Academic Dean) From the outset, the Defendant has purposely applied the wrong policies to the Plaintiff (*see* Exhibits A-E).

Third, the Plaintiff was issued a pro-rated one-year "Administrative Faculty" (Academic Dean) appointment contract, which commenced on December 5, 2022, effective through June 30, 2023 (*see* Exhibit A). The immediate adverse action by the Defendant against the Plaintiff was a direct violation of the VCCS 12-month "Administrative Faculty", "Non-Teaching Faculty" appointment during her second one-year "Administrative Faculty" (Academic Dean) contract, which commenced on July 1, 2023, effective through June 30, 2024 (*see* Exhibit B).

Fourth, the Defendant failed to mention the fact that the Plaintiff was issued a second one-year "Administrative Faculty" (Academic Dean) appointment contract, which commenced on July 1, 2023, effective through June 30, 2024, which falls under VCCS Policy Section 3.04.0.0.c for an "Administrative Faculty" defined as <u>One-year Appointment</u> -- A one-year appointment shall be for one (1) year and may be renewed annually., not VCCS Policy Section 3.04.0.0.b for a probationary "Teaching Faculty" as the Defendant wrongly states. (*see* Exhibit C). Lastly, the Plaintiff was terminated on September 29, 2023, during the second one-year "Administrative Faculty" (Academic Dean) appointment contract, which commenced on July 1, 2023, effective through June 30, 2024. The Plaintiff's termination violated the VCCS *Administrative Evaluation policies (3.6.1.1 through 3.6.1.9, (see* Exhibit D) and the (VCCS *Policy 3.13)* Alternative Dispute Resolution and Grievance Procedures (*see* Exhibit E).

The Defendants have knowingly provided false information through their wrongful

application of VCCS "Teaching Faculty" policies to the court. The Defendants have attempted to "cover up" their deliberate non-compliance of the 12-month "Administrative Faculty", "Non-Teaching Faculty policies. The Defendants applied an immediate adverse action against the Plaintiff in retaliation because of her complaint to the EEOC on September 2, 2023, and the SVCC President on September 12, 2023. The Defendants' exercise of an immediate adverse action in the case of the Plaintiff, while on her second issued 12-month "renewed" one-year "Administrative Faculty" "Non-Teaching Faculty" contract was a direct violation of the VCCS "Administrative Faculty" contract policy, and pretextual.

      **ii.**    **The Defendant's motion is based on false allegations**

In page 2 of Defendant's Brief in Support of the Motion, Defendant states that: "on March 2, 2023, the Plaintiff sent an email to all HSB faculty instructing them "not to contact others outside of the HSB such as SVCC faculty senate representatives and or senior level administration without first speaking to her." Plaintiff avers that at no point did she instruct HSB faculty "not to contact others outside of the HSB such as SVCC faculty senate representatives and or senior level administration without first speaking to her". As was discussed, in the original Complaint and Amended Complaint, the Plaintiff sent an email dated March 2, 2023, to all Humanities, Social Sciences, and Business (HSB) faculty with copies to Dr. Harkins and Mr. Walker. Mr. Walker also received the email as a HSB faculty member. In short, the Defendant was aware of the Plaintiff's situation and the unwelcome and racially-motivated treatment she was experiencing. The Plaintiff had advised all (HSB) faculty via email as follows: (directly quoted from email: March 2, 2023)

> *"As we strive to build transparent lines of positive communication, any issues and or concerns must be shared between you and your dean so that all parties have a clear understanding of any and all expectations that have been communicated. Building a positive working relationship with your dean will only serve to strengthen the HSB unit,*

*as a whole. To avoid circumvention of the dean, and following protocol please make sure that you have communicated with your dean and have addressed your concerns with her. Also, after addressing your questions and or concerns allow the dean time to respond to the issues that have or may be raised before contacting others outside of the HSB such as SVCC faculty senate representatives and or senior level administration".*

The email was sent to all HSB faculty members because several selected white (Caucasian) faculty members had made false claims about the Plaintiff before introducing themselves, or responding to emails or other communication from the Plaintiff regarding any concerns, who was their immediate supervisor.

In page 3 of the Brief, Defendant states that on May 17, 2023, Plaintiff sent an email objecting to the discussions where a faculty member raised concerns about Plaintiff and that Plaintiff stated that addressing that human resource issue was "an attempt to defame my character". Contrary to the Defendant's statement, the white (Caucasian) faculty member who brought unfounded claims against the Plaintiff, specifically related to compliance with the Americans with Disabilities Act. The selected faculty member falsely provided claims before ever meeting with or responding to emails from the Plaintiff regarding any concerns, who was her immediate supervisor. As was stated in the original Complaint and Amended Complaint, the allegations made by the selected white (Caucasian) faculty member were unfounded. The Plaintiff received no reprimands or notices that would serve to impede the issuance of the second one-year contract that was issued and became effective July 1, 2023, through June 30, 2024. The faculty member had neither met with the Plaintiff nor had she responded to any requests to meet to discuss any issues that were raised by her departmental colleagues. The Plaintiff received emails and phone communication regarding alleged concerns with the selected faculty member's behavior and lack of adherence to college policies and responsibilities regarding the supervision of a "work study" student from the SVCC Director of Financial Aid to the selected faculty member.

In page 4 of the Brief, the Defendant states that "On July 26, 2023, Dr. Harkins allegedly met with Plaintiff to discuss her job performance." Contrary to Defendant's statement, on July 26, 2023, Dr. Harkins had placed a calendar meeting under false pretense that stated "evaluation meeting". Dr. Harkins did not meet with Plaintiff to discuss her job performance.

Additionally, in page 4 of the Brief, the Defendant falsely states that Dr. Harkins met with the Plaintiff on August 2, 2023 to deliver and discuss her performance evaluation. The Defendant allegedly refers to the bogus, defective, and falsified VCCS *Administrative Faculty Evaluation* document that was provided to the Plaintiff via email on August 3, 2023, as containing "a typo", which is a gross misrepresentation. The Defendants violated *VCCS Administrative Faculty Evaluation Policies (3.6.1.1 through 3.6.1.9,* and the (VCCS *Policy 3.13)* Alternative Dispute Resolution and Grievance Procedures. The Defendant is aware that Dr. Harkins violated the aforementioned *VCCS Administrative Faculty Evaluation policies,* Dr. Harkins, as the Plaintiff's immediate supervisor did not collaborate or negotiate with her as an Administrative Faculty member to set up the performance domains to be evaluated. The Defendant falsely stated that, *"on August 2, 2023, Dr. Harkins met with the Plaintiff and delivered her six-month performance evaluation".* Dr. Harkins did not deliver a complete evaluation, review, nor did he work collaboratively with the Plaintiff on August 2, 2023, before, and or thereafter.

It was later brought to the Plaintiff's attention through publication of the Defendants Position Statement submitted to EEOC dated as February 9, 2024, that Dr. Harkins had fabricated notes and a second VCCS Administrative Faculty Evaluation form that had erroneous dates, missing and inaccurate information, allegations that were unfounded, and fraudulent Docu-sign information (*see Defendants* Exhibit 5-6). Dr. Harkins completed these bogus and defective documents in isolation, in non-compliance of the VCCS Administrative Faculty Evaluation

policies, procedures, and processes without any input from the Plaintiff. In addition to the intentional misrepresentation of the statements made by the Defendant's regarding a purported six-month evaluation, the policies, and VCCS Administrative Faculty Evaluation and the notification timeframes of re-appointment or non-re-appointment, would demonstrate that this is pretext for discrimination.

Dr. Harkins handed the Plaintiff an incomplete and erroneous, a two 1-sided page document on August 2, 2023. The Plaintiff emailed Dr. Harkins on August 2, 2023, to state that he had given her only two 1-sided pages in his office. Dr. Harkins purposefully did not give the Plaintiff a full document, nor did he review or collaborate any part of the document in his office, or at any time afterward. The Plaintiff informed Dr. Harkins that he handed her two pages, he then emailed a document on August 3, 2023, with the same erroneous dates, inaccurate information, allegations that were unfounded with no input or participation from the Plaintiff in the process. The Plaintiff and Dr. Harkins discussed her preparation of a self-evaluation then would work together on development of the goals for the performance domains, this was followed up with an email to Dr. Harkins.

Dr. Harkins did not follow up with the Plaintiff to complete the VCCS Administrative Faculty Evaluation process. Dr. Harkins purposely discriminated and retaliated against the Plaintiff by denying her of due process. Additionally, the policy states that the "VCCS Self-Assessment: Evaluation plans must require that evaluative input be provided by the faculty member in the form of a self-assessment". The "self-assessment must include analysis of activities within each performance domain as well as progress toward achievement of annual goals". The Defendant intentionally omitted including and or reviewing the Plaintiff's Self-Evaluation, and establishing goals and objectives as part of *the VCCS Administrative Faculty Evaluation policy,* which provides

documentation of her actual satisfactory job performance and accomplishments in each of the domains during the timeframe of December 5, 2022 through August 9, 2023. The Plaintiff submitted her self-evaluation via email to Dr. Harkins, as of August 10, 2023, and Dr. Harkins deliberately provided no follow up to complete the formal evaluation process according to the VCCS Administrative Faculty Evaluation policy, process, and or procedures.   The email communication that occurred between Dr. Harkins and the Plaintiff was documented from July 26, 2023 through August 10, 2023 (*see* Exhibit G*)*

The Plaintiff contacted the Virginia Department of Human Resource Management (VDHRM) on Friday, August 11, 2023, to question the bogus, defective, and fraudulent evaluation that Dr. Harkins sent to her via email on August 3, 2023, without her input in the evaluation process.

The Plaintiff was purposefully denied due process in the VCCS Administrative Faculty Evaluation process by SVCC. There was no investigation of the issues, or next steps provided from Mrs. Henderson or Dr. Harkins regarding the Plaintiff's stated concerns with Dr. Harkins' bogus and defective Administrative Faculty Evaluation. The Defendants' demonstrated deliberate violation and non-compliance, and refusal to follow *VCCS Administrative Faculty Evaluation policies* excluding the Plaintiff from the evaluation process (see Exhibit H).

Dr. Harkins false statements, fabricated documents, and denial of due process with the Plaintiff were not investigated by the Defendant. Dr. Harkins and SVCC had treated the Plaintiff differently based on her color, race, and gender, as a black African American female. The Plaintiff was retaliated against by the Defendant because of her complaints regarding discrimination and retaliation because of color, race, and gender. She had been denied a fair evaluation process and access to the grievance procedure by the Plaintiff. Dr. Harkins gave intentionally false statements

regarding an evaluation process and procedure that he knowingly had not conducted with the Plaintiff.

The Plaintiff was denied procedural due process relating to the termination of her employment. Dr. Harkins discriminated and retaliated against the Plaintiff by deliberately excluding her and denying her the same opportunity for input in the Administrative Faculty Evaluation process, as he provided the white (Caucasian) similarly situated "Administrative Faculty" (Academic Deans).

As demonstrated in the Defendants *Exhibit 5,* Dr. Harkins' falsely provided <u>July 31, 2020</u>, as the date of the Administrative Faculty Evaluation. The Plaintiff began her employment with SVCC on December 5, 2022. Dr. Harkins provided the Plaintiff with a document dated <u>July 31, 2020</u>, as being an evaluation date. Dr. Harkins deliberately provided a false evaluation date of <u>December 21, 2022</u>, as the first evaluation date. The Plaintiff did not complete an evaluation less than two weeks after her start date of December 5, 2022. SVCC has no documentation to support these intentional misrepresentations of the facts by Dr. Harkins. These are direct examples of some of the discriminatory and retaliatory actions that Dr. Harkins deliberately did in violation to the VCCS *Administrative Evaluation policies (3.6.1.1-3.6.1.9,* among others.

The Defendant's *Exhibit* 6, demonstrates that another copy of a fraudulent, document was created after the Plaintiff's termination that was submitted to EEOC. Dr. Harkins further altered a second copy of the bogus and defective Administrative Faculty Evaluation that he completed. Dr. Harkins included a cut and pasted Docu-sign signature, falsified and otherwise unverifiable Docu-sign envelope certification, with no time date stamp, various fonts used, and no email verification and or electronic certification to the Plaintiff. The allegedly altered Administrative Faculty Evaluation presented to the EEOC by the Defendant included the addition of a "Does Not Meet"

designation after the Plaintiff's termination. The Defendant is aware that they violated the VCCS Administrative Faculty Evaluation policy, the policy for "Administrative Faculty" (Academic Deans) is specific on the steps that must be taken. The Defendant did not adhere to the VCCS Administrative Faculty Evaluation policy, as dictated. A thorough review of the VCCS Administrative Faculty Evaluation document that the Defendant has presented demonstrates that there was no intent to terminate the employment of the Plaintiff until after she complained to the SVCC President on September 12, 2023.

It clear that the Defendant deliberately did not comply with and violated the VCCS Administrative Faculty Evaluation policies in the Plaintiff's case, as pretext. The Plaintiff received a notice of Intent to Terminate merely three days later on September 15, 2023, in retaliation, as pretext. The violation of the VCCS Administrative Faculty Evaluation Policies by the Defendant would demonstrate that the adverse action was pretextual in the case of the Plaintiff.

In page 5, the Defendant states that: "Following the exchanges of the performance evaluations, Plaintiff, Dr. Barringer-Brown allegedly met briefly with Mrs. Henderson and Dr. Johnson on August 16, 2023." Contrary to the Defendant's assertion, there were no exchanges of the performance evaluations, the Defendant has not provided any evidence that the Plaintiff was involved in the VCCS Administrative Faculty Evaluation process.

In page 6, Defendant states: "Plaintiff did not complain about racial discrimination." Plaintiff complained about racial discrimination.

### iii.    The Defendant unjustly excluded Plaintiff from the administrative faculty evaluation process

The Defendant by their own admission within their Motion to Dismiss the Plaintiff's Amended Complaint has subjected the Plaintiff to a "teaching faculty evaluation and termination as a Teaching Faculty" yet the Plaintiff was hired as an "Administrative Faculty member"

(Academic Dean). Further, the Defendant deliberately denied the Plaintiff due process according to the VCCS Administrative and Professional Faculty policy (VCCS Policy: 3.13), to appeal the results of the bogus, defective, fraudulent, and incomplete evaluation through the Faculty Grievance Procedure (VCCS Policy: 3.13), because Dr. Harkins purposefully did not include the Plaintiff in the evaluation process nor did the Defendant follow the VCCS Administrative and Professional Faculty Evaluation policy. As the VCCS Administrative and Professional Faculty Evaluation (VCCS Policy: 3.13) policy states, throughout the appeals process, it will be incumbent upon the immediate supervisor to provide documentary evidence for the evaluation given to the faculty member.

VCCS has provided no such documentation to support their clams that the Plaintiff was included in the evaluation process on any of the falsely purported dates and missing documents that are part of the VCCS Administrative Faculty Evaluation process, procedures, and policies. The Defendant denied procedural due process to the Plaintiff. There were no remedies or grievance procedure provided to her related to her termination of employment or against Dr. Harkins or of the violation of the VCCS Administrative Faculty Evaluation policy beyond the requested list of her concerns on August 16, 2023, for the incomplete, bogus, and defective evaluation that Dr. Harkins had falsely presented, as being factually valid and complete. The Plaintiff received no follow up after reporting her concerns of discrimination, retaliation, and common law defamation to the Plaintiff on August 22, 2023.

The Plaintiff also asserts that after she stated in her response to the Letter of Intent dated September 20, 2023, that Dr. Harkins provided an Administrative Faculty Evaluation document with the date of July 31, 2020, he then allegedly altered another document by changing the 07/31/2023, date to 08/02/2023, and added alleged falsified Docu-sign certifications, Docu-sign

envelop and date stamps that are fraudulent to the document. Dr. Harkins added a designation of Does Not Meet at the bottom on the second fabricated copy, while still leaving all domain areas that would need to be checked as not meeting blank on the second bogus and defective version. Dr. Harkins provided deliberately false statements that the Plaintiff, Dr. Barringer-Brown "flatly refused to sign the evaluation". Dr. Harkins was aware that this was a grossly false statement. He had not collaborated or completed the actual *3.6.1 VCCS Administrative Faculty Evaluation policies and the 3.6.1.8 Evaluation Cycle and Frequency of Evaluations*, nor had the Defendant followed or adhered to the *VCCS Timeframes for Notification of Re-Appointment or Non-Appointment* of "Administrative Faculty" (Academic Dean) process with the Plaintiff for her to refuse any such document, formal review, and or appeal.

### Argument

#### i.   **Standard of review**

When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." *Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

The question before the Court, therefore, is whether the Complaint, viewed in the light most favorable to Plaintiff and with all doubts resolved in his favor, states any valid claim for relief. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990).

#### ii.   **Plaintiff's inclusion of Southside Virginia Community College ("SVCC") in the suit is a misnomer and can be rectified**

In applying the provisions of Va. Code Ann. §8.01-6, the Supreme Court has made clear

that, "...a misnomer is a mistake in name but not person." *Rockwell v. Alman, Admr.*, et. al., 211 Va. 560 (1971).

When described in its most succinct form, "[a] misnomer is a mistake in name, but not person." *Rockwell v. Allman*, 211 Va. 560, 561, 179 S.E.2d 471 (1971), superseded by statute on other grounds, 1991 Acts ch. 693, at 1298 (codified as amended at Code § 8.01-229(B)(2)(b)); *see also Ricketts v. Strange*, 293 Va. 101, 110-11, 796 S.E.2d 182 (2017).

"Under modern practice, if the right party is before the court, although under a wrong name, an amendment to cure a misnomer of parties will be allowed." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947); *see* also *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F.Supp.2d 569, 573 (D.Md. 2008) (granting motion for leave to amend summons and complaint to correct misnomer). Amendments to correct misnomer may be allowed notwithstanding the running of the statute of limitations in the interim between the commencement of the suit and the motion for amendment, and the amendment will relate back to the institution of the suit. *A.H. Fischer Lumber Co.*, 162 F.2d at 874; see also Fed.R.Civ.P. 15(c)(1)(C) (providing that an amended pleading relates back to the date of the original pleading when the amendment changes the naming of the party against whom the claim is asserted if "the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (2) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. ".

Defendant argues that SVCC is not a separate legal entity for purposes of Virginia law and that it should be dismissed as a Defendant with prejudice. Plaintiff asserts that the alleged error is a misnomer. Plaintiff's action is against SVCC. Since SVCC cannot only be sued through its Board of Trustees, the Amended Complaint can further be amended to reflect the correct name for said

Defendant. Federal Rule of Civil Procedure 15. Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires." Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Here, there is good faith to amend the Amended Complaint to correct the misnomer. The Defendants cannot be prejudiced by said amendment.

### iii.   Plaintiff exhausted her remedies

The Defendant argues that Plaintiff failed to exhaust her remedies because her charge before the EEOC did not address her claim for a hostile work environment and discrimination based on gender.

First, Plaintiff asserts that a discriminatory allegation may still constitute relevant background evidence for valid claims. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976).

Here, although the charge only stated retaliation and discrimination based on race, the racial discrimination claim in the charge provided a basis for Plaintiff's related claim on a hostile working environment or gender. The latter claims are reasonably related to the claims specified in the charge. Further, a reasonable investigation of the facts as alleged in the Amended Complaint shows that Plaintiff is entitled to raise other claims.

### iv.   Plaintiff has stated a claim for discriminatory discharge

To establish a prima facie case of discriminatory discharge, Plaintiff must show the

following four elements: "(1) that [she] is a member of a protected class; (2) that [she] suffered an adverse employment action; (3) that at the time of the adverse employment action [she] was performing at a level  that met [her] employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class." *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999).

Plaintiff avers that she met her burden of proof showing how she was subjected to discriminatory discharge. First, the Plaintiff is a black African American female. Therefore, the Plaintiff belongs to a protected class. Second, the Plaintiff suffered an adverse employment action. Third, she was evaluated under the wrong policy as a "teaching faculty" yet she was a non-teaching faculty, an "administrative faculty" member (Academic Dean). Fourth, the Defendant argues that Dr. Harkins falsely listed in the evaluation document he created in isolation, that the Plaintiff's performance needs to improve her "visibility, communication, and relationship-building skills" and to "create a more positive, open, trusting and collaborative relationship with faculty." What Defendant fails to appreciate is that the VCCS Administrative Faculty Evaluation was violated. Lastly, the Plaintiff blatantly violated the VCCS Administrative Faculty Evaluation policy, had excluded the Plaintiff from participation, and had wrongly evaluated her, as pretext.

The Defendant grossly misleads in alleging that the Plaintiff did not make any of the improvements requested by her direct supervisor in her performance evaluation. The Defendant is making intentionally inaccurate statements in an attempt to confuse the issues. The Plaintiff met with the SVCC Faculty Senate President Mr. Stephen Walker on May 5, 2023, before the end of the spring 2023 semester without prompting (*see* Exhibit H). The Plaintiff also served as Mr. Walker's immediate supervisor, who purportedly referred to her as a "DEI Hire" before and after her termination. Mr. Walker made no attempt to meet or speak with the Plaintiff directly from

December 5, 2022, through May 1, 2023. Mr. Walker had not attended any departmental meetings, trainings, nor did he provide feedback on any other assigned faculty tasks in the HSB unit.

The Faculty Senate is composed of nine-month and 10-month "teaching faculty" members who were off contract from May 15, 2023 through August 15, 2023, there were no Faculty Senate meetings held from August 16, 2023, until after the Plaintiff's termination. The Plaintiff was an "Administrative Faculty" member (Academic Dean) not a "Teaching Faculty" member. Moreover, the Defendant did not request that any similarly situated (white) Caucasian) "Administrative Faculty" (Academic Dean) with far more serious issues, complaints, and or other disciplinary actions meet with the SVCC Faculty Senate. The Plaintiff had not received any disciplinary actions or notices and this demonstrates the disparate treatment that the Plaintiff was subjected to by the Defendant based on pretext.

### v.   Plaintiff has stated a claim for discriminatory discharge

To establish a prima facie case of discriminatory discharge, Plaintiff must show the following four elements: "(1) that [she] is a member of a protected class; (2) that [she] suffered an adverse employment action; (3) that at the time of the adverse employment action [she] was performing at a level that met [her] employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class." *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999).

The Plaintiff avers that she met her burden of proof showing how she was subjected to discriminatory discharge. First, the Plaintiff is a black African American female. The Plaintiff, therefore, belongs to a protected class. Secondly, the Plaintiff suffered an adverse employment action. The Plaintiff was evaluated under the wrong policy as a "Teaching Faculty" yet she was a "Non-Teaching Faculty, an "Administrative Faculty" member (Academic Dean). The Defendant

did not follow the VCCS Administrative Faculty policies regarding the Plaintiff and her employment contract. The Defendant argues that Dr. Harkins listed in his own evaluation of Plaintiff's performance that the Plaintiff needs to improve her "visibility, communication, and relationship-building skills" and to "create a more positive, open, trusting and collaborative relationship with faculty." What the Defendant fails to appreciate is that Dr. Harkins further discriminated and retaliated against the Plaintiff after her complaints about him to the SVCC Office of HR in June 2023, the EEOC on September 2, 2023, and to the SVCC President on September 15, 2023. The Defendant was non-complaint and violated VCCS Administration Evaluation policies in their excessively harsh immediate adverse action, which was in disregard the policies, procedures, and processes, as pretext. The Plaintiff was excluded from participation in the VCCS Administrative Faculty Evaluation process, policy, and procedures.

The Defendant, in gross misrepresentation alleges that the Plaintiff did not make any of the improvements requested by Dr. Harkins, in her performance evaluation. The Defendant is making purposefully inaccurate statements in an attempt to confuse the issues. The Plaintiff met with the SVCC Faculty Senate President (Mr. Walker) on May 5, 2023, at the end of the spring 2023 semester without prompting. The Faculty Senate is composed of nine-month and 10-month "Teaching Faculty" members who were off contract from May 15, 2023 through August 15, 2023, there were no Faculty Senate meetings held until after the Plaintiff's termination. The Plaintiff was an "Administrative Faculty" member (Academic Dean) not a "Teaching Faculty" member.

Furthermore, Dr. Harkins did not request that any similarly situated (white) Caucasian) "Administrative Faculty" (Academic Dean) with far more serious issues, complaints, and or other disciplinary actions to meet with or go before the SVCC Faculty Senate. There were no SVCC Faculty Senate meetings held between May 15, 2023 through the time of the Plaintiff's termination

on September 29, 2023. The Plaintiff had not received any disciplinary actions or notices and this serves as another example of the disparate treatment that the Plaintiff was subjected to by the Defendant based on pretext.

The Plaintiff has had no such record of any unsatisfactory work performance with any previous employer, in addition to her success as an "Administrative Faculty" "Non-Teaching Faculty" (Academic Dean), The Plaintiff's time with VCCS included other positive contributions. For example, she was widely recognized for her scholarship, leadership, and expertise in education, public policy studies, and administration particularly with respect to the development of effective data assessments, and monitoring and evaluation of academic programs that focus on student success. Among other things, while employed with SVCC from December 5, 2022 through September 29, 2023, notably in this regard as a testament to the Plaintiff's leadership and achievement in the field, she was a recipient of the State Council of Higher Education of Virginia (SCHEV) Outstanding Faculty Administrator award for 2023. The (SCHEV) Outstanding Faculty Awards are the Commonwealth's highest honor for faculty members and faculty administrators at Virginia's public and private colleges and universities. These awards recognize superior accomplishments in teaching, research, and public service. The Plaintiff was nominated for this prestigious award through her employer immediately previous (VSU) to SVCC in December 2022. This honor was awarded on December 20, 2022, and presented through SCHEV as of March 7, 2023, after the start of the Plaintiff's employment with VCCS.

The Plaintiff was recognized for her accomplishments throughout the Commonwealth of Virginia by U.S. Senator Mark R. Warner. Senator Warner stated in his correspondence dated August 1, 2023, *(excerpted text)*

> "*this honor recognizes your tremendous contributions to the Commonwealth in teaching, research, mentoring, and public service*". "*(Charletta Barringer-Brown)*

*have greatly contributed to the field of political science and the study of policy analysis through your research endeavors and by training tomorrow's leaders"* .

On July 1, 2023, the Plaintiff was appointed by Governor Glenn Youngkin to the Board of Trustees for Fort-Monroe Authority (2023-2027). The Plaintiff was elected by her committee peers to serve as the Vice Chair of the Cemetery Board for the Commonwealth of Virginia (2022-2023).

Also, as was discussed in the original complaint, during this period, the Plaintiff received awards and honors, including, but not limited to be selected to serve as a member of the National Humanities Center Teacher Advisory Council 2022-2023.

Moreover, the Plaintiff authored and published two peer-reviewed articles, and served as a reviewer for chapters in research methodology textbooks, The Plaintiff worked with the HSB faculty and cross-campus division SVCC administrators to develop and update SVCC academic integrity policies. The Plaintiff was invited to present at and attend off-campus and on-campus informational student and faculty sponsored events to promote and support SVCC academic programs. The Plaintiff was invited to present her research at conferences and workshops on four different occasions during this time frame, two of which were sponsored through the VCCS and the Virginia Community College Association (VCCA). Additionally, the Plaintiff organized and developed a successful training workshop for all SVCC adjunct and full-time faculty members held on August 23, 2023, which received positive feedback from faculty, staff, and Dr. Harkins (*see* Exhibit I). No such adjunct and full-time faculty training workshop had been organized or held at SVCC since 2016. The Defendant further violated the VCCS Administrative Faculty Evaluation policies by ignoring the Plaintiff's VCCS self-evaluation document, which is a part of the VCCS Administrative Faculty Evaluation process and policy. The Defendant is aware that the self-evaluation submitted by the Plaintiff demonstrated her satisfactory work performance in comparison to her peer similarly situated deans, and deliberately choose to disregard the document

in non-compliance and direct violation of the VCCS Administrative Faculty Evaluation policy, as pretext.

Additionally, on or about August 4, 2023, the Plaintiff was asked by Dr. Harkins to attend and serve in Drs. Harkins and Johnson's absence at a "Farms to Families" community meeting event on August 4, 2023. This event was to support SVCC programs and services in the Animal Sciences and the industry of Agriculture in Southside Virginia. Participation in this activity was documented in the Plaintiff's self-evaluation document that was submitted on or about August 10, 2023. The statements made by the Defendant were false and otherwise misleading that the Plaintiff did not make any of the improvements requested by her direct supervisor in her performance evaluation as the reason for her termination, as pretext. The Defendant wrongfully applied VCCS "Teaching Faculty" policies to the Plaintiff, who was an "Administrative Faculty" (Academic Dean). The Defendant has deliberately misinterpreted the actual VCCS policies that align with the Plaintiff as an "Administrative Faculty" to attempt to further confuse the issues. The Defendant has willfully violated, misinterpreted their own policies, and procedures, which demonstrates that the reasons provided for the Plaintiff's termination were pretextual.

vi.   **Plaintiff has stated a claim for defamation**

First, the Defendants argue that they have sovereign immunity hence cannot be subjected to a tort claim. Contrary to the Defendants' arguments, Plaintiff asserts that the defendants are not immune if the evidence establishes that (1) they committed intentional torts, irrespective of whether they acted within or without the scope of their employment, *Elder v. Holland*, 208 Va. 15, 19, 155 S.E.2d 369, 372_73 (1967), or (2) they acted outside the scope of their employment, *see Messina v. Burden*, 228 Va. 301, 311, 321 S.E.2d 657, 662 (1984). Second, the Plaintiff asserts that VCCS's position statement to the EEOC, as well as the attached exhibits, were false and

defamatory. Third, besides, the Defendants had subjected the Plaintiff to a policy that applied to teaching faculty yet Plaintiff was a non-teaching faculty. The Defendants' assessments of Plaintiff were therefore faulty *ab initio.* Fourth, the Defendants could therefore not rely on said assessments as their defense yet they were aware that they employed the Plaintiff as a member of the Non-Teaching Faculty, "Administrative Faculty" as an (Academic Dean).

Lastly, Plaintiff duly met all the elements for a claim of defamation. Defendants rightly state that to allege defamation in Virginia, a plaintiff must show: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault,* 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015). Here, the Defendants published their assessments of Plaintiff in the form of their position statement to the EEOC and the attached exhibits. As Plaintiff has already argued, the statements were actionable since they did not follow the proper assessment nor the appropriate timeframes for notification of re-appointment or non-reappointment policy. Lastly, the Defendants clearly had the intent to tarnish the Plaintiff's character. They had already retaliated against her when she filed her complaints before the President of the SVCC and the EEOC.

**WHEREFORE,** the Plaintiff requests that this Court deny Defendant's Motion to Dismiss the Amended Complaint. Plaintiff further prays this Honorable Court grant any other Order in Plaintiff's favor

Respectfully submitted:
Dated: September 17, 2024

C. HOPE BARRINGER-BROWN, PH. D
5818 Hereld Green Dr.
Chesterfield, VA 23832
charletta.barringer.phd@gmail.com
*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above and foregoing was served by regular U.S. Mail

and via email, on the Defendant:

        Blaire H. O'Brien (VSB No. 83961)
        Counsel for Southside Virginia Community College
        Harman, Claytor, Corrigan & Wellman
        P.O. Box 70280
        Richmond, Virginia  23255
        804-747-5200 - Phone
        804-747-6085 - Fax
        bobrien@hccw.com

Dated: September 17, 2024

                C. HOPE BARRINGER-BROWN, PH. D
                   5818 Hereld Green Dr.
                   Chesterfield, VA 23832
                Charletta.barringer.phd@gmail.com
                      *Plaintiff, pro se*