IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

C. HOPE BARRINGER-BROWN, PH.D.,

  Plaintiff,

v.                                            Case No. 3:24-cv-465

VIRGINIA COMMUNITY COLLEGE
SYSTEM and SOUTHSIDE VIRGINIA
COMMUNITY COLLEGE,

  Defendants.

## REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's opposition focuses on the procedures surrounding her performance evaluation and whether she received the process appropriately accorded to someone of her rank and stature within the Virginia Community College System ("VCCS"). But this is not a case about whether Plaintiff was "Administrative" or "Teaching" faculty. This is an alleged claim for racial discrimination. Yet race is essentially absent from Plaintiff's allegations and arguments and is replaced by Plaintiff's procedural focus on her performance evaluation.

Plaintiff's focus on procedure does not rebut the fundamental reality at the heart of the Amended Complaint: she received performance-related feedback from her supervisor and did not respond to those concerns. Her argument that she was at liberty to ignore her supervisor unless she agreed with him does not factually negate the concerns he expressed in her performance evaluation. And most importantly, it does not establish a racial motive for any of the treatment Plaintiff received as a VCCS employee. Plaintiff cites no facts connecting race to any action occurring during her employment, including her termination. The Amended Complaint fails to state a claim and should be dismissed.

**I.  Plaintiff does not state a claim for discriminatory discharge.**

Plaintiff supports her racial discrimination claim not with facts, but rather, with additional unsupported claims. She alleges that VCCS and its employees did not follow what Plaintiff believes was the procedure required for her performance evaluation. She asks this Court to then accept her unsupported conclusion that the only possible explanation for these alleged deficiencies is racial discrimination.

As an initial matter—and as Plaintiff herself acknowledges—there is no evidence suggesting there was any "intent to terminate the employment of the Plaintiff" at the time the performance evaluation was completed.[1] ECF No. 16 at 9. That is, the performance evaluation did not lead to any adverse employment action. If an event did not lead to an adverse employment action—as Plaintiff acknowledges is true for her performance evaluation—it cannot be the basis for a discrimination claim. *Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 429 (4th Cir. 2015) (written and verbal reprimands do not qualify as adverse employment actions because they did not lead to further discipline).

Moreover, Plaintiff's insistence that the performance evaluation was procedurally improper and that those improprieties reflected discrimination is not even well-grounded in her own alleged facts. For example, Plaintiff states that Dr. Harkins's evaluation was "fraudulent," "bogus" and "defective" because there was no chance for her "participation" in its creation. ECF No. 16 at 16. But she then acknowledges that her supervisor scheduled two meetings with her about her evaluation – one on July 26, 2023 and a second meeting on August 2, 2023. ECF No. 7 ¶¶ 51, 121. Plaintiff's claim, therefore, relies on her assumption that at least two meetings to

---

[1] This admission is consistent with Plaintiff's EEOC Charge, which claims discrimination beginning on September 15, 2023, after the date of the August 2, 2023 date of the performance evaluation.

discuss her performance did not constitute "participation."[2] "Participation" in the creation of a performance evaluation cannot give an employee the power to overrule a supervisor's assessments of job performance, as Plaintiff suggests her 79-page self-evaluation should do here.

In addition, Plaintiff's characterization of the performance evaluation and associated documents is troubling[3] and reenforces the conclusion that she was not meeting VCCS's legitimate expectations at the time she was terminated. For example, Plaintiff asserts that she was meeting VCCS's expectations after her performance evaluation because she met with Southside Virginia Community College's ("SVCC") faculty senate president on one occasion two months prior to the evaluation. ECF No. 16 at 14. Plaintiff does not, however, allege that she followed her supervisor's instructions to meet with faculty leadership after receiving her performance evaluation. Even the document she cites to support her claim that she met with the faculty senate president on May 5, 2023 does not appear to have any relationship to that allegation.[4] *See* ECF

---

[2] Relatedly, Plaintiff asserts that Defendants inaccurately characterized the July 26, 2023 meeting as one to discuss Plaintiff's "job performance." ECF No. 16 at 5. According to Plaintiff, this meeting was characterized as an "evaluation meeting." *Id.* Plaintiff does not expound on the difference between these two characterizations.

[3] Among Plaintiff's most concerning assertions is that VCCS is intentionally attempting to mislead the Court about various issues. This is not true. For example, Plaintiff asserts that she was not a probationary employee because she was "Administrative Faculty" rather than "Teaching Faculty." ECF No. 16 at 1. SVCC placed all faculty members—including Plaintiff, who held the rank of "Professor"—on probation for their first year, a status she acknowledged with a document signed on December 6, 2022, **Exhibit 1**, and that was reflected on the performance evaluation she received from Dr. Harkins. ECF No. 14-5. Plaintiff's acknowledgement of her probationary status also informed her that she would be evaluated after six months of employment and at the close of her first year, the precise process she received. Exhibit 1. Regardless, Plaintiff's observations about the difference between "Administrative Faculty" and "Teaching Faculty" is a red herring without significance to her claim of racial discrimination.

[4] Similarly concerning is Plaintiff's discussion of her March 2, 2023 email. ECF No. 16 at 3-4. According to Plaintiff, Defendants mischaracterize that email. Defendants will allow the text of her email to speak for itself. Regardless, Plaintiff's instruction to her staff "[t]o avoid

3

No. 16 at 14 (citing Exhibit H) and ECF No. 16-8 (Exhibit H). Plaintiff also improperly attempts to bolster her allegations in the Amended Complaint by adding allegations about a meeting she attended—at her supervisor's request—on August 4, 2023. ECF No. 16 at 19. Plaintiff cannot amend her allegations in a brief in opposition to a motion to dismiss. *Brooks v. Chapman*, No. 1:22cv305, 2022 WL 17852779 (E.D. Va. Dec. 22, 2022). But even if she could, a single instance in which she followed directions from a supervisor is not sufficient to allege that she was meeting all of her supervisor's legitimate expectations.

Plaintiff makes no allegations of fact connecting her performance evaluation to racial discrimination. She does not identify a single similarly situated employee of a different race who received treatment different from her own. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). And she does not connect her performance evaluation to her ultimate termination. Even if Plaintiff's arguments regarding the procedures surrounding her performance evaluation had merit—and they do not—she does not connect those procedures to race-based discrimination or an adverse employment action. She does not state a claim for racial discrimination in Count I.

## II. Plaintiff does not state a claim for retaliation under Title VII.

Plaintiff does not expressly present any arguments in favor of her retaliation claim under Title VII. And with good reason. In her narrative of the alleged facts, she states "Plaintiff complained about racial discrimination." ECF No. 16 at 9. But even Plaintiff cannot identify a single specific instance in which she did so. Her September 12, 2023 email to Dr. Johnson did not address racial discrimination. ECF No. 14-9. Her email to Dr. Harkins on August 16, 2023

---

circumvention of [her]" by addressing her first "before contacting others outside" of her supervision did not constitute notice to Defendants that Plaintiff believed she was the victim of "unwelcome and racially motivated treatment." *Id.*

4

did not either. ECF No. 14-8. Instead, Plaintiff focused on the process surrounding her performance evaluation and her hierarchical position within SVCC. ECF No. 14-8, 9.

Plaintiff has not alleged when and how she engaged in protected activity. Nor has she connected that protected activity to the ultimate decision to end her employment. To the extent Plaintiff is now relying on her alleged complaint on September 2, 2023 to the EEOC—which her Amended Complaint did not—Plaintiff nonetheless cannot succeed because she cannot show a causal connection between her complaints and her termination. For the reasons outlined above and in Defendants' Brief in Support of Motion to Dismiss, Plaintiff has not shown that she was meeting her employer's expectations at the time of her dismissal.[5] *Coleman*, 626 F.3d at 190.

### III. Plaintiff did not exhaust her administrative remedies as to her hostile work environment or gender discrimination claims.

In response to Defendants' argument that she did not exhaust her administrative remedies as to certain claims, Plaintiff responded only that those claims are proper because they are "reasonably related" to the claims she specified in her charge before the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's position is not a correct statement of law and would swallow the statutory requirement that employers receive notice of the factual basis of an employee's claim.

The Fourth Circuit's decision in *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005), is instructive. In that case, the court concluded that a plaintiff who had submitted an EEOC charge

---

[5] Plaintiff repeatedly alludes to her "retaliatory" exclusion from any grievance procedure. ECF No. 16 at 6, 10. As Plaintiff acknowledges in her Amended Complaint, she was not eligible to pursue a grievance through the Virginia Department of Human Resource Management. ECF No. 7 ¶ 11. She similarly acknowledged that she received due process in the form of a grievance procedure through SVCC following her dismissal. *Id.* ¶ 86. In fact, VCCS went so far as to retain a third-party law firm to conduct a full investigation into Plaintiff's complaints of discrimination. *Id.* ¶¶ 86, 117. Plaintiff's assertion, therefore, that VCCS did not investigate the merits of Plaintiff's complaints, ECF No. 17 at 9, is not supported by her allegations.

claiming sex and pregnancy discrimination could not also proceed on a related allegation of retaliation because she had not exhausted her administrative remedies as to that claim. *Id.* at 492. The court concluded that the facts contained in the charge would not have put the employer or the EEOC on notice that the claimant intended to pursue a retaliation claim. Here, the claims are reversed, but the result is the same. Plaintiff's EEOC charge alleged limited facts, all of which related only to Plaintiff's "pending discharge [ ] due to participating in legally protected activity…" ECF No. 14-11 at 2. Plaintiff alleged no facts evidencing discrimination caused by a hostile work environment based on either race or gender. And—having failed to do so—she, like the plaintiff in *Miles*, did not exhaust her administrative remedies. Her claims for discrimination on those bases should be dismissed.

## IV.   Plaintiff does not state a claim for defamation.

As outlined in Defendants' Brief in Support of Motion to Dismiss, governmental entities—including the Commonwealth and its agencies—have sovereign immunity from even the intentional torts of their employees.[6] *Niese v. City of Alexandria*, 264 Va. 230, 239 (2002). In *Niese*, the Supreme Court of Virginia held that a city had sovereign immunity from the intentional tort of an employee committed while performing a governmental function. *Id.* The decision in *Niese* is notable because cities, unlike counties and state agencies, do not share fully in the Commonwealth's sovereign immunity. *Massenburg v. City of Petersburg*, 298 Va. 212, 217-18 (2019). That is, cities only have sovereign immunity when their employees are engaged in governmental functions. *Id.* The Commonwealth and its agencies, however, have sovereign immunity no matter the nature of the function an employee was performing at the time the tort occurred. *Id.* Accordingly, because "the Commonwealth [is] immune from liability for torts

---

[6] Plaintiff's reliance on *Elder v. Holland*, 208 Va. 15, 19 (1967) is inapposite, as that case did not address sovereign immunity or a claim against a governmental entity.

committed by its officers, employees, and agents," *Doud v. Commonwealth*, 282 Va. 317, 320 (2011), and because VCCS is an agency of the Commonwealth, Va. Code § 23.1-2901, VCCS has sovereign immunity from Plaintiff's tort claim.

Even if Plaintiff could maintain an action for defamation against VCCS, she does not address Defendants' arguments that their submission of statements to the EEOC was privileged. And Plaintiff now makes clear that the only alleged "publication" on which she relies is the position statement VCCS submitted to the EEOC. Accordingly, because Defendants' defensive submission to the EEOC was privileged as a matter of law, she has not identified any statements that were publicized for purposes of stating a defamation claim. *Smith v. DuPont Specialty Products USA, LLC*, No. 3:23-cv-292, 2023 WL 7703470, at *4 (E.D. Va. Nov. 15, 2023). Nor does she identify any specific statement she believes was false, other than her allegation that proper evaluation processes were not followed. Plaintiff, therefore, has not alleged facts to support any of the three elements of a defamation claim in Virginia. *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) ((1) publication, (2) an actionable statement, and (3) the requisite intent). She has not stated a claim, and Count III should be dismissed.

## CONCLUSION

For the reasons stated above and in Defendants' Brief in Support of Motion to Dismiss, the Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

**VIRGINIA COMMUNITY COLLEGE SYSTEM AND SOUTHSIDE VIRGINIA COMMUNITY COLLEGE**

By Counsel

/s/ Blaire H. O'Brien
Blaire H. O'Brien (VSB No. 83961)
Counsel for Virginia Community College System
and Southside Virginia Community College
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
bobrien@hccw.com

## C E R T I F I C A T E

I hereby certify that on the 7th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have emailed the document to the following:

charletta.barringer.phd@gmail.com

/s/ Blaire H. O'Brien
Blaire H. O'Brien (VSB No. 83961)
Counsel for Virginia Community College System
and Southside Virginia Community College
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
bobrien@hccw.com