IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLETTA BARRINGER-BROWN,  )
        Plaintiff,  )
        )
      v.  )         Civil Action No. 3:24CV465 (RCY)
        )
VIRGINIA COMMUNITY COLLEGE  )
SYSTEM and SOUTHSIDE VIRGINIA  )
COMMUNITY COLLEGE,  )
        Defendants.  )
        )

## MEMORANDUM OPINION

This is a Title VII employment action brought by *pro se* Plaintiff Dr. Charletta Barringer-Brown against Defendants Virginia Community College System ("VCCS") and Southside Virginia Community College ("SVCC") (collectively, "Defendants") following the termination of her employment as a Professor and Dean at SVCC. This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant in part and deny in part Defendants' motion.

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff filed her *pro se* Complaint on June 24, 2024. Compl., ECF No. 1. Plaintiff initially named Southside Virginia Community College ("SVCC") as the sole Defendant. *See id.* SVCC timely filed a Motion to Dismiss on July 31, 2024. Mtn. Dismiss Compl., ECF No. 5, Br. Supp. Mtn. Dismiss Compl., ECF No. 6. Plaintiff opted to file an Amended Complaint, ECF No. 7, rather than a response to the Motion to Dismiss; because she timely amended, the Court

denied the Motion to Dismiss as moot, *see* Order, ECF No. 11.  Plaintiff's Amended Complaint names two Defendants—SVCC and VCCS.  *See* Am. Compl.

Defendants filed their Motion to Dismiss the Amended Complaint on September 3, 2024. Mtn. Dismiss Am. Compl., ECF No. 13, Br. Supp. Mtn. Dismiss Am. Compl., ECF No. 14, properly accompanied by a *Roseboro* notice.  Plaintiff filed her Response, ECF No. 16, on September 18, 2024, followed by an Amended Response, ECF No. 17, on September 23, 2024. Defendants filed a Reply, ECF No. 18, on September 24, 2024.  On September 26, 2024, Plaintiff belatedly filed a Motion for Leave to Amend Plaintiff's Response to the Motion to Dismiss, ECF No. 20, which the Court granted, *see* Order, ECF No. 22, rendering the Amended Response the controlling document for purposes of stating Plaintiff's opposition to the Motion to Dismiss.  In so doing, the Court also granted Defendants leave to file any amended Reply they deemed necessary to respond to the Amended Response.  *Id.*  On October 7, 2024, Defendants indeed filed a new Reply, ECF No. 23.  Plaintiff then filed a Response to Defendant's Reply (hereinafter "Sur-Reply"), ECF No. 24, but the Court declines to consider this document, as it was filed without leave of court.[1]

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting

---

[1] In addition to the fact that Plaintiff failed to seek leave of court to file the Sur-Reply, nothing in Defendants' Reply raised new arguments or material that would otherwise warrant the filing of such a document.  *See* E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court."); *Trs. of Columbia Univ. v. Symantec Corp.*, 2019 WL 13189619, at *2 (E.D. Va. Oct. 10, 2019) ("Sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on the matter."); *Dillard v. Kolongo*, 2017 WL 2312988, at *6 (E.D. Va. May 25, 2017) ("Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply.").  Although the Court recognizes Plaintiff's *pro se* status, Plaintiff is nevertheless obligated to abide by the Local Rules.

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil

Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level," "detailed factual

allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).

*Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the

complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7

F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic

recitation of the elements," and "naked assertions," without factual enhancement, are

insufficient. *Id.*

      In considering a motion to dismiss pursuant to Rule 12(b)(6), "[courts] are not confined

to the four corners of the Complaint." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ.*

*Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). Documents that are explicitly

incorporated into the complaint by reference and those attached to the complaint as exhibits may

be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c). The Court may also consider documents integral to the complaint. *Goines v. Valley Community Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.* Therefore, at the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). [2]

Finally, a *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett*

---

[2] The Court considers the following documents in addition to Plaintiff's Amended Complaint: (1) Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge; (2) Plaintiff's termination letter; (3) Plaintiff's performance evaluations; and (4) the series of emails between Plaintiff and SVCC staff. Plaintiff did not include these materials in her Complaint or Amended Complaint, *see generally* Compl., ECF No. 4; Am. Compl., ECF No. 7; but Defendants did include these materials in their responsive pleadings, *see* Br. Supp. Mtn. Dismiss ECF Nos. 14-1–14-10; EEOC Charge, ECF No. 14-11.

The Court considers the EEOC Charge integral to Plaintiff's workplace discrimination claims, and Plaintiff has not challenged the EEOC Charge's authenticity. The Court also finds that the EEOC Charge is a matter of public record and is therefore subject to judicial notice. *See Bland v. Fairfax Cnty.*, 2011 U.S. Dist. LEXIS 70204, at *15–16 (E.D. Va. June 29, 2011). Thus, the Court is satisfied that either rationale supports consideration of the facts therein at this stage, notwithstanding its omission from Plaintiff's Amended Complaint.

Separately, the Court further concludes that Plaintiff's termination letter, performance evaluations, and her email correspondence with SVCC staff are integral to her claims: Plaintiff's Amended Complaint repeatedly references these emails in connection with her allegations of discrimination and challenges discrimination and retaliation arising from the performance evaluation process. For that reason, the Court considers these materials—along with the EEOC Charge and the Amended Complaint—when assessing the instant motion.

*v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

### III. FACTUAL ALLEGATIONS

Because the scope of the EEOC Charge limits those factual allegations in the Amended Complaint that are eligible for consideration, the Court focuses exclusively on the portions of the Amended Complaint that are "like or reasonably related to" the complaints of the EEOC Charge. *Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019).  Accepting Plaintiff's well-pleaded allegations as true[3] and taking into account the materials identified as integral to Plaintiff's claims, *see supra* footnote 2, the Court determines the relevant facts to be as follows:

Plaintiff Charletta Barringer-Brown is a black, African American woman who was hired by SVCC in December 2022 to serve as the school's Dean of Humanities, Social Sciences, and Business.  Am. Compl. ¶ 1.  Plaintiff has a long-standing career in higher education, having served as a tenured professor and in various leadership roles at other state educational institutions.  *Id.* ¶ 20.  Plaintiff began her tenure at SVCC in the middle of the academic year, just days before the end of the fall semester, *id.* ¶ 1; thus, SVCC placed Plaintiff on a one-year, prorated contract.  *Id.* ¶ 16.

Plaintiff began having difficulty with other SVCC faculty members shortly after her employment began.  The chronology of Plaintiff's allegations begins on February 28, 2023, when Plaintiff received what she categorizes as a "harsh, accusatory, and unfounded email" from

---

[3]  When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.*

Dr. Keith Harkins, who hired and directly supervised Plaintiff. *Id.* ¶ 35. In his email, Dr. Harkins "falsely accused" Plaintiff of not incorporating faculty input into her efforts to limit faculty hours during the summer, mandate the use of a specific educational technology system, and designate faculty members to serve as program leaders. *Id.* ¶ 35. Plaintiff asserts that Dr. Harkins was wrong for sending this email "without first speaking to her about any of the false allegations at issue … which would have been a matter of both protocol and professional courtesy particularly for an employee that had been with SVCC less than 60 working days…." *Id.* ¶ 37.

On March 2, 2023, just days after she received the above email, Plaintiff sent an email to all Humanities, Social Sciences and Business ("HSB") faculty at SVCC and copied Dr. Harkins. *Id.* ¶ 40. In the email, Plaintiff instructed her HSB colleagues that "any issues and or concerns must be shared between you and your dean …. To avoid circumvention of the dean, and following protocol[,] please make sure that you have communicated with your dean and have addressed your concerns with her." *Id.* Plaintiff also requested that faculty allow her time to respond to issues "before contacting others outside of the HSB such as SVCC faculty senate representatives and or senior level administration." *Id.* In response to Plaintiff's email, Dr. Harkins advised faculty members that "if they did not feel comfortable with [Plaintiff] to come to him or the Office of HR." *Id.* ¶ 41. Plaintiff viewed this instruction as a deviation from "protocol, chain of command, and or common courtesy…." *Id.*

Plaintiff's troubles with fellow faculty members persisted. On May 17, 2023, Plaintiff sent an email to SVCC administrators regarding accusations of misconduct made against her by a white faculty member. *Id.* ¶ 44. Plaintiff vehemently denied these accusations, which concerned her alleged failure to comply with the Americans with Disabilities Act ("ADA"). *Id.* Plaintiff

viewed the accusations against her as "an attempt to defame [her] character" and believed the claims "may be related to immutable factors." *Id.* ¶ 42. Later, Plaintiff contends, these "false statements and fabricated events" became pretext for discrimination by SVCC. *Id.* ¶ 48.

Plaintiff specifically discussed her immutable characteristics, which she identifies as her color, race, and gender, with SVCC administrators during a meeting that took place on June 21, 2023. *Id.* ¶ 43. In the meeting, Plaintiff voiced that she was experiencing racial discrimination, retaliation, and defamation due to these characteristics. *Id.*

Plaintiff's allegations in the Amended Complaint then turn to SVCC's purported violations of VCCS policy for faculty evaluations. *Id.* ¶ 50. On August 2, 2023, Plaintiff and Dr. Harkins met about her performance evaluation, but Dr. Harkins purposefully "did not deliver a complete evaluation review, nor did he work collaboratively with [Plaintiff]." *Id.* ¶ 51. Later, Plaintiff became aware that Dr. Harkins "fabricated notes and a second Administrative Faculty Evaluation form [for Plaintiff] that had erroneous dates, missing and inaccurate information, and allegations that were unfounded." *Id.*

Displeased with the information contained in her performance evaluation, Plaintiff discussed her desire to prepare a self-evaluation with Dr. Harkins at some point on or around this August 2, 2023 meeting. *Id.* ¶ 51. Shortly thereafter, on August 10, 2023, Plaintiff submitted a seventy-nine-page self-evaluation, which outlines her accomplishments and responds to Dr. Harkins' concerns. *Id.* ¶ 73. Plaintiff claims Dr. Harkins purposefully chose not to follow-up with her to complete the evaluation process and did not include her self-evaluation as part of her overall performance evaluation, i*d.* ¶ 51, though other administrative faculty members— specifically white deans—were given opportunities to provide input in their evaluation processes. *Id.* ¶¶ 56, 65, 71.

Following Dr. Harkins' evaluation and Plaintiff's self-evaluation, Plaintiff met briefly with SVCC President Dr. Quentin Johnson on August 16, 2023. *Id.* ¶ 59. There, she told Dr. Johnson about the "bogus and defective performance evaluation" and expressed concerns about a lack of support, racial discrimination, and retaliation. *Id.* Following this interaction with Dr. Johnson, Plaintiff emailed a list of concerns to Dr. Harkins and Ms. Henderson, who worked in Human Resources at SVCC. *Id.* ¶ 60. This led to a meeting between Plaintiff, Dr. Harkins and Ms. Henderson on August 22, 2023. *Id.* ¶ 63. Plaintiff wished to discuss her performance evaluation and the mistreatment she was receiving at this meeting; however, Dr. Harkins "did not address" her evaluation and instead "attempt[ed] to divert attention" from these issues by requesting a grade change for a white student. *Id.* ¶ 64. Plaintiff felt the grade change was unwarranted, *id.*, and "refus[ed] to engage in unlawful actions," which caused Dr. Harkins to be "rude and belligerent" to her in front of other faculty members at a faculty meeting that took place the following day. *Id.* ¶ 112. At that time, Plaintiff informed Dr. Harkins that she would be filing an administrative complaint with the Equal Employment Opportunity Commission ("EEOC Charge")[4] due to his continued discriminatory and retaliatory actions. *Id.*

On September 12, 2023, Plaintiff emailed Dr. Johnson complaining of the discrimination, retaliation, and mistreatment she was experiencing from Dr. Harkins. *Id.* ¶ 92. Plaintiff received no response from Dr. Johnson. *Id.*

On September 15, 2023, three days after sending the above email to Dr. Johnson, Plaintiff received a Letter of Intent to Terminate from Dr. Harkins. *Id.* ¶¶ 123, 158. Plaintiff states that she was terminated for two reasons: (1) she completed a thorough review of the student's grade

---

[4] An EEOC Charge is a formal complaint filed with the Equal Employment Opportunity Commission. Filing such a charge is ordinarily a prerequisite to bringing suit under Title VII and related federal statutes. *See* 42 U.S.C. § 2000e-5(e)(1).

appeal and refused to engage in "workplace wrongdoing" or "preferential treatment" by changing the student's grade, and (2) she reported Dr. Harkins' "mistreatment, lack of support, discriminatory acts, and retaliation to Dr. Johnson on September 12, 2023." *Id.* ¶ 117. Plaintiff was ultimately terminated from her position on September 29, 2023. *Id.* ¶¶ 70, 75.

Plaintiff filed her EEOC Charge on September 2, 2023 for Title VII discrimination and retaliation. *Id.* ¶ 8. Plaintiff's EEOC Charge was updated on September 29, 2023 to reflect her termination from SVCC. *Id.* ¶ 10. On March 26, 2024, the EEOC issued Plaintiff her right to sue letter. *Id.* ¶ 14.

## IV. ANALYSIS

In her Amended Complaint, Plaintiff advances three claims against both VCCS and SVCC: unlawful discharge in violation of Title VII, (Count I), retaliation in violation of Title VII (Count II), and defamation under Virginia common law (Count III). Defendants move to dismiss the case on several grounds. First, Defendants contend that, because SVCC is not a legal entity that can be sued as a matter of Virginia law, SVCC should be dismissed from the suit entirely. Br. Supp. Mtn. Dismiss An. Compl. 10. Further, Defendants argue that Plaintiff's claims for hostile work environment and gender discrimination, to the extent she asserts them, should be dismissed due to Plaintiff's failure to exhaust her remedies with the EEOC. *Id.* at 11-12. In addressing the merits of Plaintiff's claims, Defendants maintain that the allegations in the Amended Complaint do not plausibly establish a discriminatory discharge or retaliation claim, *id.* at 13-18, nor does Plaintiff identify any defamatory statements that are not protected by sovereign immunity or otherwise privileged. *Id.* at 18-21.

In her Response in Opposition, Plaintiff devotes considerable time to clarifying that she was hired as an administrative, rather than teaching, faculty member, and further elaborates on

how her termination violated VCCS's administrative evaluation policies. Resp. Opp'n 1-2. In addressing Defendants' argument that SVCC should be dismissed entirely, Plaintiff requests a constructive amendment to correct SVCC's name in her complaint and preserve her claims against SVCC. *Id.* at 4. Plaintiff also refutes Defendants' arguments regarding her exhaustion of EEOC remedies by arguing that her hostile work environment and gender discrimination claims are reasonably related to the other claims advanced in her EEOC Charge. *Id.* at 14. Finally, Plaintiff insists that her allegations do support claims for discrimination and retaliation, and that Defendants are not entitled to sovereign immunity on her defamation claim, because the tortious conduct was intentional. *Id.* at 15-21.

The Court first addresses whether SVCC, as a matter of law, is a legal entity that can be sued, as this is dispositive of Plaintiff's claims against SVCC. The Court will then turn to Defendants' argument that Plaintiff has not exhausted her administrative remedies regarding her hostile work environment and gender discrimination claims. Finally, the Court will analyze whether Plaintiff's allegations are sufficient to state claims for Title VII discrimination, Title VII retaliation, and common law defamation.

### A. SVCC Is Not a Proper Party to This Lawsuit and Must Be Dismissed

Defendants argue that SVCC is not a proper party to this lawsuit because SVCC is not a separate legal entity that can sue or be sued. Br. Supp. Mtn. Dismiss Am. Compl. 10-11. In response, Plaintiff states that naming SVCC is misnomer and asks that the Court grant her leave to amend to correct this misnomer, if needed. Resp. Opp'n 14.

The Court agrees with Defendants and finds that individual community colleges in Virginia, like SVCC, are not separate legal entities that can sue or be sued. Virginia Code § 23.1-2901 establishes the State Board for Community Colleges as the corporation that is

responsible for establishing, controlling, and administering the statewide system of publicly supported community colleges. The statute clearly identifies that the State Board "shall be known as the Virginia Community College System." *Id.* The legislature did not specifically designate Virginia's individual community colleges or grant them any powers, specifically the power to sue or be sued. *Goff v. J. Sargeant Reynolds Cmty. College*, 68 Va. Cir. 382, 383 (2005) (finding that J. Sargeant Reynolds Community College was not an "independent legal entity"). Other federal district courts in Virginia have come to the same conclusion when considering this precise issue. *See Blevins v. Suarez*, 2008 WL 4560627 (W.D. Va. Oct. 10, 2008), *aff'd*, 322 F. App'x 284 (4th Cir. 2009); *Brown v. Thomas Nelson Cmty. Coll.*, No. 4:20-cv-7, ECF No. 20, slip op. at *6 (E.D. Va. Jan. 13, 2021). Accordingly, the Court finds that SVCC is not a proper party this action and therefore will be dismissed from the action.

### B.  Plaintiff Did Not Exhaust her Administrative Remedies With Respect To Hostile Work Environment or Gender Discrimination Claims

The Court now proceeds to its analysis of the sufficiency of Plaintiff's allegations with respect to the remaining defendant, VCCS. Plaintiff's Amended Complaint asserts claims for Title VII discriminatory discharge, Title VII retaliation, and common law defamation. However, spackled throughout her Amended Complaint and briefing on the instant motion are allegations of a hostile work environment and gender discrimination. VCCS argues that, to the extent Plaintiff wishes to pursue such claims, she may not do so because her EEOC Charge does not address these issues, and thus, she has failed to exhaust her administrative remedies. Br. Supp. Mtn. Dismiss Am. Compl. 11-12. Plaintiff concedes that her EEOC Charge only states retaliation and discrimination based on race but insists that her hostile work environment and gender discrimination claims are properly exhausted because they are reasonably related to the racial discrimination stated in her EEOC Charge. Resp. Opp'n 15.

In the context of a Title VII case, the scope of a complaint is generally limited by the preceding EEOC Charge, since "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). "If the claims raised under Title VII exceed the scope of the EEOC [C]harge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation modified).

> For example, the plaintiff's claim generally will be barred if [her] charge alleges discrimination on one basis—such as race—and [she] introduces another basis in formal litigation—such as sex. A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits. Similarly, we have held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct. By the same token, if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred.

*Id.*

On the other hand, a plaintiff may properly pursue claims based on conduct that is "like or reasonably related to" conduct described in the EEOC Charge, even when it was not expressly described therein. *Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019); *see also Hill v. Western Electric Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982).

In the instant matter, Plaintiff's hostile work environment and gender discrimination claims exceed the scope of her EEOC Charge—meaning she is procedurally barred from asserting these claims. Plaintiff's EEOC Charge is confined to allegations of retaliation and race discrimination, which coincides with the claims set forth in her Amended Complaint. In fact, Plaintiff concedes that her EEOC Charge is limited to racial discrimination, Resp. Opp'n 15, and

12

her charge plainly reads that she was terminated "due to participating in legally protected activity and [her] *race-black*…"  EEOC Charge, ECF No. 14-11 (emphasis added).  While Plaintiff argues that her hostile work environment and gender discrimination claims are reasonably related to her EEOC Charge, the Fourth Circuit has explicitly stated that introducing a different basis for discrimination in litigation that is not presented in an EEOC Charge is impermissible.  *Chacko*, 429 F.3d at 509. Thus, to the extent she wishes to do so, Plaintiff may not pursue claims based on a hostile work environment and gender discrimination due to a failure to exhaust her administrative remedies.

### C.  Plaintiff's Discriminatory Discharge Claim (Count I) Fails to State a Claim and Must Be Dismissed

The Court now proceeds to an analysis of Plaintiff's three asserted claims, the first of which is her claim for Title VII discriminatory discharge.  For the reasons that follow, the Court finds that Plaintiff's allegations do not state a claim for discriminatory discharge, and therefore, this claim will be dismissed.

Title VII provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

VCCS contends that Plaintiff's claim fails because her allegations do not establish that her job performance was satisfactory at the time of her termination or that she received different treatment from similarly situated employees outside of her protected class.  Br. Supp. Mtn. Dismiss Am. Compl. 13-15.  Plaintiff, on the other hand, insists that she has stated a claim for discriminatory discharge.  Resp. Opp'n 15-17.  Plaintiff argues that her alleged performance issues are attributable to Dr. Harkins' "intentionally inaccurate statements" about her, as well as his decision to evaluate her under the wrong VCCS policy. [5]  *Id.* at 16.  Further, while Plaintiff does not specifically identify any comparators, she claims that "similarly situated white (Caucasian) deans" at SVCC did not receive the same disciplinary actions that she did for far more serious misconduct.  *Id.*

 The Court finds that Plaintiff's discriminatory discharge claim fails because Plaintiff has not established that her job performance was satisfactory at the time of her discharge.  To satisfy this second element of her Title VII discrimination claim, Plaintiff need not "show that [s]he was a perfect or model employee," only "that [s]he was qualified for the job and that [s]he was meeting [her] employer's legitimate expectations." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022).   The allegations presented in the Amended Complaint do not meet this threshold, and, in fact, support VCCS's contention that her performance did not meet their expectations.

Plaintiff's troubles at SVCC began at the outset of her employment, when Plaintiff received the February 2023 email from Dr. Harkins instructing her to incorporate faculty input

---

[5] Plaintiff devotes considerable time in her Brief in Opposition to addressing how she was inappropriately considered "Teaching Faculty" at SVCC rather than "Administrative Faculty," *see* Resp. Opp'n 1-4, arguing that she was not afforded the appropriate evaluation processes for a faculty member with her title.  Even if Plaintiff is correct, this issue is irrelevant for the Court's analysis for two reasons: (1) it does not speak to the purported racial discrimination Plaintiff experienced, which must be adequately alleged to sustain her Title VII claims, and (2) it does not move the needle in demonstrating that Plaintiff's performance met SVCC's expectations and thus was satisfactory at the time of her termination.

into her decision-making.  Am. Compl. ¶¶ 35-38.  The Amended Complaint notes that faculty

members were directed to speak to Dr. Harkins or SVCC's human resources office if they did

not feel comfortable speaking to Plaintiff, *id.* ¶ 41, which is indicative of the difficulties Plaintiff

had communicating and working effectively with other faculty members.  Plaintiff's issues at

SVCC continued into May 2023, when SVCC administrators brought forth serious allegations

raised by a faculty member pertaining to Plaintiff's purported ADA non-compliance, which she

denied.  *Id.* ¶¶ 42-48.

These issues were ultimately reflected in Plaintiff's performance evaluation, which

VCCS submits with its briefing on the instant motion.  Br. Supp. Mtn. Dismiss Am. Compl.,

ECF No. 14-6.   The performance evaluation, which covers Plaintiff's employment at SVCC

from December 2022 to June 2023, clearly states that Plaintiff was not meeting expectations, *id.*

at 4, and notes "challenges in fostering a culture of success within [Plaintiff's] division."  *Id*. at

1.  Dr. Harkins wrote that "staff members have expressed hesitation in approaching [Plaintiff]"

and reiterated the importance of "creating an open and approachable environment where staff

feel comfortable expressing concerns and seeking input."  *Id.*  To address these concerns, Dr.

Harkins set objectives for Plaintiff to improve relationship-building skills and create a more

positive and collaborative environment with faculty.  *Id.* at 3.

Plaintiff's termination letter, also referenced in the Amended Complaint and submitted

with VCCS's briefing, further reflects that these issues persisted following the issuance of

Plaintiff's  performance evaluation and ultimately became a basis for her termination.  Br. Supp.

Mtn. Dismiss Am. Compl., ECF No. 14-10.  Dr. Harkins' termination letter clearly states that

Plaintiff was terminated, among other reasons, for "failure to follow the direction of your

immediate supervisor, refusal to meet with faculty leadership to improve relationships, and

failure to resolve performance issues as communicated with you during your employment and outlined in the 6-month evaluation ….” *Id.*  Given the allegations in the Amended Complaint and the supporting documentation related to these allegations, it is reasonable for the Court to infer that Plaintiff's performance at SVCC was not satisfactory at the time of her termination.

Throughout her Amended Complaint, Plaintiff repeatedly refutes the validity of Dr. Harkins' performance evaluation, characterizing it as “bogus and defective,” Am. Compl. ¶ 75, as well as “intentionally subpar, incomplete, and factually invalid,” *id.* ¶ 73.  While Plaintiff has a long-standing career in higher education and has been recognized for achievements in prior roles, *id.* ¶ 21-25, the only evidence to support that Plaintiff's performance was satisfactory is her own lengthy self-evaluation.  *Id.* ¶ 73, Br. Supp. Mtn. Dismiss Am. Compl., ECF No. 14-7. Therein, Plaintiff lists her various accomplishments at SVCC and attests that she “has strived to foster a culture of success within her division” and “meets and exceed expectations” in the various categories of her performance evaluation.  *See* Br. Supp. Mtn. Dismiss Am. Compl., ECF No. 14-7.

Plaintiff bears the burden of demonstrating that she was meeting VCCS's legitimate employment expectations at the time of her termination.  *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515–16 (4th Cir.2006)).  However, the Fourth Circuit has made clear that whether the employee was meeting the employer's legitimate expectations is dictated by the “perception of the decision maker ..., not the self-assessment of the plaintiff.” *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir.2000).  Therefore, “[the employer]'s opinion of [the employee]'s performance, not [the employee]'s own opinion,” establishes this element of the prima facie case. *Blanch v. Hexagon U.S. Fed., Inc.*, No. 1:17-cv-613, 2018 WL 4997644, at *6 (E.D. Va.

16

Oct. 15, 2018).

Plaintiff's Amended Complaint and the documentation provided in support of VCCS's Motion to Dismiss demonstrate Plaintiff's difficulty working effectively with other faculty members throughout her employment at SVCC. Despite attempts to provide feedback and address these issues, Plaintiff's performance did not improve and resulted in her termination. Thus, Plaintiff has not met her burden in establishing that her performance was satisfactory at the time SVCC terminated her, and thus, her claim for Title VII discrimination fails.

Even if Plaintiff had established satisfactory job performance, her claim also falters due to her failure to identify any adequate comparator—that is, a similarly situated dean outside of the protected class who received different treatment than Plaintiff.

In the Title VII context, "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff repeatedly contends that she was treated differently from "similarly situated white (Caucasian) deans" in how her performance was evaluated, *see* Am. Compl. ¶¶ 56, 72, 115, but she does not specifically identify a single similarly situated white dean. Further, Plaintiff does not detail exactly how this white dean is a valid comparator, nor how this white dean was treated differently than she was under similar circumstances. Given that Plaintiff has only made vague and conclusory allegations regarding her comparators, Plaintiff has also failed to satisfy the fourth element of a *prima facie* case for Title VII discriminatory discharge.

**D. Plaintiff's Retaliation Claim (Count II) Survives VCCS's Motion to Dismiss**

Count II of Plaintiff's Amended Complaint asserts a claim for Title VII retaliation. Plaintiff alleges that from May 2023 to September 2023, she "repeatedly complained to SVCC of discrimination, retaliation, defamation, and harassment, concerning Dr. Harkins' conduct … and SVCC's ineffective response." Am. Compl. ¶ 141. As a result of these complaints, Plaintiff was terminated. *Id.* ¶ 144. Elsewhere in her Amended Complaint, Plaintiff identifies more specific protected activity—she states she was terminated for her "refusal to engage in workplace wrongdoing" in declining to change the student's grade and for "reporting Dr. Harkins' discrimination and mistreatment to Dr. Johnson in the September 12, 2023 email." *Id.* ¶ 117.

VCCS contends Plaintiff has not stated a claim for retaliation. Br. Supp. Mtn. Dismiss Am. Compl. 15-18. First, VCCS argues that Plaintiff has not alleged facts to demonstrate that she engaged in any protected activity. Br. Supp. Mtn. Dismiss Am. Compl. 16. VCCS contends that the complaints Plaintiff made to Dr. Johnson in the September 2023 email generally complained of her working conditions at SVCC, but do not specify that she was experiencing racial discrimination. *Id.* This, and all other instances of generalized complaints about discrimination or harassment found throughout the Amended Complaint, do not suffice for Title VII protected activity. *Id.* at 17. Furthermore, VCCS contends that Plaintiff has failed to establish the causal link between her alleged protected activity and her termination. *Id.* at 18.

In her Response in Opposition, Plaintiff clarifies that she was retaliated against for filing her EEOC Charge on September 2, 2023 and for her September 12, 2023 email to Dr. Johnson. Resp. Opp'n 3.

Title VII makes it unlawful for an employer to discriminate against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this

subchapter." 42 U.S.C. § 2000e–3(a).  Employees engage in protected oppositional activity when, *inter alia*, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir.2003).  To establish a *prima facie* case of retaliation under Title VII, plaintiff must demonstrate "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).

Beginning with the first element of her Title VII retaliation claim, Plaintiff's alleges three instances in which she engaged in protected activity: (1) the filing of her EEOC Charge on September 2, 2023, (2) her refusal to change a student's grade, and (3) her September 12, 2023 email to Dr. Johnson wherein she complains of ongoing mistreatment.

The Court begins with the September 12, 2023 email to Dr. Johnson.  Again, though Plaintiff references this email in her Amended Complaint, neither the email's contents, nor a copy of the email itself, were included in her Amended Complaint.  VCCS does, however, submit a copy of the September 12 email, *see* Br. Supp. Mtn. Dismiss Am. Compl., ECF No. 14-9, which sets forth what Plaintiff specifically complained of to Dr. Johnson.  For one, the email's subject line reads "Request for Professional Reference."  *Id.*  Plaintiff states she is "forced to seek" a professional opportunity elsewhere due to "on-going mistreatment, discriminatory, lack of ethical standards, gang/bullying behavior, and limited understanding and experience as an Academic Affairs Officer regarding my immediate supervisor."  *Id.* (spelling corrected).  Though Plaintiff complains of "discriminatory" treatment, she does not identify on what basis she is being discriminated against.

The Court finds that Plaintiff's complaints about the conditions of her employment in the

September 12, 2023 email to Dr. Johnson—which does not make any explicit mention of racial discrimination—is not sufficient protected activity for Title VII purposes. [6]  To constitute protected activity, Plaintiff must have "opposed any practice made an unlawful employment practice" as set forth in Title VII.  *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)).  District courts in the Fourth Circuit have similarly found that complaints about conditions of employment that are not linked directly to Title VII prohibited conduct are insufficient to sustain a retaliation claim.  *See Lucas v. Intercept Youth Servs., Inc.*, 2023 WL 3437812, at *5 (E.D. Va. May 12, 2023) (find that although the plaintiff opposed certain practices and conditions of employment to her employer, the plaintiff failed to oppose an unlawful employment practice under Title VII); *see Mixon v. Charlotte-Mecklenburg Sch.*, 2011 WL 5075808, at * 6 (W.D.N.C. Aug. 5, 2011) ("A mere complaint of harassment or discrimination in general, without any connection to a protected class, is insufficient.").

The Court likewise finds, in turning to Plaintiff's refusal to engage in "workplace wrongdoing" in changing a student's grade, that this too has no connection whatsoever to challenging conduct prohibited by Title VII.  *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general bad acts statute…").  For the same reasons the September 12, 2023 email is insufficient, this refusal to change a student's grade is likewise not considered Title VII

---

[6] The Court recognizes that Plaintiff alleges, prior to this September 12, 2023 email, she had a conversation with Dr. Johnson regarding racial discrimination. Plaintiff contends that she "had a brief meeting during the opening SVCC Convocation on August 16, 2023, with Dr. Johnson and Mrs. Henderson to discuss the bogus and defective performance evaluation emailed and absence of a formal evaluation, in addition to other concerns regarding lack of support, racial discrimination. and retaliation from Dr. Harkins and others." Am. Compl. ¶ 59.  This, taken in context with the September 12, 2023 email, may permit an inference that "discriminatory" as stated in the email is connected to these claims of racial discrimination. However, the Court notes that, as a follow-up to this conversation with Dr. Johnson on August 16, 2023, Plaintiff sent a list of concerns to Dr. Harkins and Ms. Henderson via email. *Id.* ¶ 60.  Plaintiff does not include this email with her Amended Complaint or briefing on the instant motion; however, VCCS does submit a copy of this August 16, 2023 email, which Plaintiff does not dispute the authenticity of. *See* Br. Supp. Mtn. Dismiss, ECF No. 14-8.  There, Plaintiff lists several issues and instances of misconduct but, importantly, does not mention racial discrimination whatsoever as one of her concerns. *See id.*  Regardless of this discrepancy, the Court finds, *infra*, that Plaintiff's retaliation claim may proceed based on the filing of her EEOC Charge.

protected activity.

However, the Court finds that Plaintiff's filing of her EEOC charge does constitute Title VII protected activity. *See U.S. E.E.O.C. v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414, 417 (D. Md. 2006) (citing *EEOC v. Bd. of Governors of State Colleges and Univs.*, 957 F.2d 424 (7th Cir.1992)).  Plaintiff's EEOC Charge plainly opposes racial discrimination, which is Title VII prohibited conduct.  Further, SVCC's decision to terminate Plaintiff's employment is a sufficient adverse employment action, thus satisfying the second element of her retaliation claim.  The Court turns to the third element of Plaintiff's *prima facie* retaliation claim, which connects the protected activity to the adverse action.

At the *prima facie* stage, establishing a causal connection "is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) ("[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation.").  Temporal proximity between the protected activity and the employer's adverse action may establish causation. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). However, an employer cannot take action based on something of which it was unaware. *See Baquir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006). Thus, the plaintiff must also establish that the relevant decision-makers had knowledge of the protected activity at the time of the alleged retaliation. *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 410–11 (4th Cir. 2013); *Baquir*, 434 F.3d at 748; *Causey v. Balog,* 162 F.3d 795, 803-04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim").

Thus, this element turns on Dr. Harkins' knowledge of Plaintiff's protected activity—the filing of her EEOC Charge—when he made the decision to terminate Plaintiff and notified her of that decision.  Plaintiff filed her EEOC Charge on September 2, 2023, and received her

termination letter from Dr. Harkins roughly two weeks later, on September 15, 2023. Though the chronology of Plaintiff's allegations is at times difficult to construct, the Amended Complaint alleges that Dr. Harkins was in fact aware of Plaintiff's EEOC Charge, though it does not specify when or exactly how Dr. Harkins was made aware. *See* Am. Compl. ¶ 76. Plaintiff asserts later in the Amended Complaint that she informed Dr. Harkins, on or around the August 22, 2023 meeting, that she would be filing a complaint of discrimination and retaliation against him for his ongoing discriminatory actions. *Id.* ¶ 112.

Given the low burden of establishing causation for purposes of establishing a *prima facie* case at this juncture, and in deference to Plaintiff's *pro se* status, the Court concludes that Plaintiff's allegations are sufficient to sustain her retaliation claim. Plaintiff allegations support a reasonable inference that Dr. Harkins, and others at SVCC, were aware of Plaintiff's complaints of racial discrimination as early May of 2023. *See* Am. Compl. ¶ 42 (May 2023 email to SVCC Human Resources officer); ¶ 44 (June 2023 meeting with SVCC administrators where Plaintiff addressed her "immutable characteristics"); ¶ 59 (first discussion with Dr. Johnson about perceived racial discrimination); ¶ 112 ("[Plaintiff] informed Dr. Harkins that she would file a complaint of discrimination and retaliation against him with the EEOC for his continued discriminatory actions"). Further, the Court emphasizes that Plaintiff alleges she put Dr. Harkins specifically on notice that she would be filing an EEOC Charge for racial discrimination. *Id.* ¶¶ 76, 112. This, coupled with the timing of the EEOC Charge and her subsequent firing, creates a reasonable inference that Plaintiff's termination occurred with knowledge of the protected activity. Therefore, Plaintiff's retaliation claim withstands 12(b)(6) scrutiny.

**E. Plaintiff's Defamation Claim (Count III) Fails to State a Claim and Must Be Dismissed**

Count III of Plaintiff's Amended Complaint asserts a claim for defamation in violation of Virginia law. Here, Plaintiff argues that several SVCC administrators, including Dr. Harkins and Dr. Johnson, defamed Plaintiff through statements published in their EEOC position statement. Am. Compl. ¶¶ 152-153. VCCS argues that this claim should be dismissed for two reasons: first, sovereign immunity protects VCCS, a state agency, from tort liability, and second, even if sovereign immunity did not apply, the alleged defamatory statements are privileged as a matter of law. Br. Supp. Mtn. Dismiss Am. Compl. 18-19. Plaintiff insists sovereign immunity does not protect VCCS because its tortious acts were intentional. Resp. Opp'n 21. The Court will first assess VCCS's sovereign immunity argument, as this is dispositive of Plaintiff's defamation claim.

The Court finds that Count III is in fact barred by sovereign immunity. Tort actions may not be brought against the Commonwealth unless it consents, *Virginia Electric & Power Co. v. Hampton Redevelopment & Housing Authority*, 217 Va. 30, 32 (1976), or a statute exists that grants the necessary consent, *Sayers v. Bullar*, 180 Va. 222, 225 (1942). State agencies are also "clothed with the Commonwealth's immunity from tort liability," *Virginia Electric*, 217 Va. at 32, and absent "an express statutory or constitutional provision waiving sovereign immunity, [Virginia's state agencies] are immune from liability for the tortious acts or omissions of their agents and employees." *The Rector and Visitors of the University of Virginia v. Carter*, 267 Va. 242, 244 (2004). The Virginia Supreme Court has made clear that Virginia's state agencies are immune from intentional tort liability, though this immunity may not extend to individual employees. *Newport News Sch. Bd.* v. *Z.M.*, 915 S.E. 2d 56, 59 (2025) ("Although government *employees* are not immune from claims of gross negligence . . . the School Board

itself benefits from immunity from suit, whether the claims involve simple negligence, gross negligence, or even intentional torts.") (emphasis in original); *see also Tomlin v. McKenzie*, 251 Va. 478, 481 (1996) ("First, where sovereign immunity is claimed by an agent of the state, rather than by the state as an entity, it will not be extended to acts which constitute a wanton and intentional deviation from the duties the agent has been assigned to undertake.") (collecting cases).

VCCS, as stated above, is a state agency charged with establishing and operating the Commonwealth's public community colleges.  Plaintiff has not pointed to, nor is the Court aware of, any express waiver of sovereign immunity by VCCS for tort actions.  Plaintiff's argument that immunity does not extend to intentional torts misapprehends the doctrine: while an individual state employee may not be shielded from liability for intentional misconduct, the Commonwealth and its agencies retain immunity regardless of the nature of the tort alleged. *Newport News Sch. Bd.*, 915 S.E. 2d at 59.

Therefore, VCCS's sovereign immunity insulates it from Plaintiff's common law defamation claim.  The Court will thus dismiss Count III.[7]

---

[7] Finding that VCCS has sovereign immunity against Plaintiff's defamation claim, the Court need not address VCCS's arguments concerning whether the alleged defamatory statements are privileged as a matter of law.

## V. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendants'

Motion to Dismiss.  Because Defendant SVCC cannot be sued as a matter of Virginia law,

SVCC will be dismissed from the lawsuit.  Plaintiff's discriminatory discharge claim (Count I)

and defamation claim (Count III) will be dismissed for failure to state a claim.  Plaintiff's lawsuit

will proceed only as to the retaliation claim (Count II) against VCCS.

An appropriate order will issue.

_____/s/_____
Roderick C. Young
United States District Judge

Date: September 24, 2025
Richmond, Virginia